**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

ALEXANDRIA RUDOLPH, individually
and on behalf of all others similarly situated,

                Plaintiff,

      v.

HUDSON'S BAY COMPANY, a Canadian
corporation; SAKS FIFTH AVENUE LLC,
a Massachusetts limited liability company;
SAKS & COMPANY LLC, a Delaware
limited liability company; SAKS
INCORPORATED, a Tennessee
corporation; and LORD & TAYLOR LLC, a
Delaware limited liability company,

                Defendants.

------------------------------------------------------- X

No. 18-cv-8472 (PKC)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Kenneth I. Schacter
Jawad B. Muaddi
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

-and-

Gregory T. Parks (admitted *pro hac vice*)
Ezra D. Church (admitted *pro hac vice*)
Kristin M. Hadgis (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

*Attorneys for Defendants Hudson's Bay Company,*
*Saks Fifth Avenue LLC, Saks & Company LLC,*
*Saks Incorporated, and Lord & Taylor LLC*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................ 1

II. STATEMENT OF FACTS ..................................................................... 3

III. PLEADING STANDARDS ..................................................................... 5
 A. Rule 12(b)(1) ................................................................................. 5
 B. Rule 12(b)(6) ................................................................................. 5

IV. ARGUMENT ......................................................................................... 6
 A. Plaintiff Has Not Alleged An Injury In Fact Necessary To Satisfy The Standing Requirements Of Article III ................................................. 6
  1. No Actual Harm Exists Because Plaintiff Fails To Allege That She Actually Paid For Fraudulent Charges. ......................................... 7
  2. Plaintiff's Allegations Of The Time And Expenses Spent After Her Account Was Frozen Also Fail To Establish Article III Standing ............ 8
  3. An Alleged Loss Of Access To Account Funds Is Insufficient To Establish Article III Standing. ........................................................ 10
  4. An Alleged "Deprivation In Value in Plaintiff's Personal Information" Is Not An Injury-In-Fact. ........................................... 11
 B. Plaintiff's Common Law Claims Fail To State A Claim Upon Which Relief Can Be Granted. ................................................................. 11
  1. Plaintiff Fails To State A Claim For Negligence. ......................... 12
  2. Plaintiff Fails to State a Claim for Negligence Per Se. ................. 14
  3. Plaintiffs Claim For Breach Of Implied Contract Fails. .............. 14
  4. Plaintiff's Unjust Enrichment Claim Fails. ................................ 16
 C. Plaintiff's Statutory Claims Also Require Dismissal. ......................... 19
  1. Plaintiff Cannot Establish A Private Right Of Action Under the Mississippi Consumer Protection Act. ......................................... 19
  2. Plaintiff Fails To Allege A Cognizable Injury Sufficient To State A Claim For Violation Of The California Customer Records Act. ............ 20
  3. Plaintiff's UCL Claim Fails Because She Does Not Allege A Cognizable Injury. ................................................................... 22
 D. Plaintiff's "Claim" For Declaratory Judgment and Injunctive Relief Must Be Dismissed. ............................................................................ 24

V. CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambac Assurance Corp. v. U.S. Bank Nat'l Assoc.*,
   328 F. Supp. 3d 141 (S.D.N.Y. 2018)........................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................5, 11

*Brumfield v. Trader Joe's Co.*,
   No. 17 Civ. 3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ..........................18

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
   238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) ........................................................16

*Carlsen v. GameStop, Inc.*,
   833 F.3d 903 (8th Cir. 2016) ..................................................................................17

*Castillo v. Seagate Tech., LLC*,
   No. 16-cv-1958, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016).......................12, 13

*Castle v. United States*,
   No. 15-0197, 2017 WL 6459514 (N.D.N.Y. Dec. 18, 2017) ..................................14

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
   580 F. Supp. 2d 273 (S.D.N.Y. 2008)......................................................................12

*Chambliss v. Carefirst, Inc.*,
   189 F. Supp. 3d 564 (D. Md. 2016) ..........................................................................9

*Chiste v. Hotels.com L.P.*,
   756 F. Supp. 2d 382 (S.D.N.Y. 2010).....................................................................24

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)............................................................................................7, 9

*Cole v. Chevron USA, Inc.*,
   554 F. Supp. 2d 655 (S.D. Miss. 2007)................................................................19, 20

*Corsello v. Verizon N.Y. Inc.*,
   18 N.Y.3d 777 (2012) ..............................................................................................18

## TABLE OF AUTHORITIES
### (continued)

Page(s)

CASES

*De Jesus v. Sears, Roebuck & Co., Inc.*,
  87 F.3d 65 (2d Cir. 1996).............................................................................24

*Digizip.com, Inc. v. Verizon Servs. Corp.*,
  139 F. Supp. 3d 670 (S.D.N.Y. 2015)..........................................................18

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.*,
  No. 15-cv-02129, 2016 WL 8578096 (D. Colo. June 20, 2016) ...............9, 10, 23

*First Commercial Mortg. Co. v. Reece*,
  89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23 (2001)......................................16

*Gilot v. Equivity*,
  No. 18-CV-3492, 2018 WL 3653150 (E.D.N.Y. July 31, 2018)..................7, 9

*Giordano v. Thomson*,
  564 F.3d 163 (2d Cir. 2009)..........................................................................17

*Graham v. VCA Animal Hosp., Inc.*,
  729 F. App'x 537 (9th Cir. 2017) .................................................................22

*Hollingsworth v. Perry*,
  133 S. Ct. 2652 (2013)....................................................................................6

*Humphrey v. Citibank NA*,
  No. 2:12CV148, 2013 WL 5407195 (N.D. Miss. Sept. 25, 2013) ...............20

*In re Adobe Sys., Inc. Priv. Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2013) .....................................................20, 22

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005)......................................................................19

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012)...........................................................23

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014)...........................................................13

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
  No. 14-MD-2586 ADM/TNL, 2018 WL 118327 (D. Minn. Mar. 7, 2018) ...........12

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  266 F. Supp. 3d 1 (D.D.C. 2017) ...................................................................7

# TABLE OF AUTHORITIES
### (continued)

Page(s)

CASES

*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015) ............................................................11, 23

*Jensen v. Quality Loan Serv. Corp.*,
  702 F. Supp. 2d 1183 (E.D. Cal. 2010) ..............................................................24

*John v. Whole Foods Mkt. Grp.*,
  858 F.3d 732 (2d Cir. 2017) ..................................................................................6

*Khan v. Children's Nat'l Health Sys.*,
  188 F. Supp. 3d 524 (D. Md. 2016) ....................................................................11

*Lazebnik v. Apple, Inc.*,
  No. 5:13-cv-4145, 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) .......................22

*Leonov v. JPMorgan Chase Bank, et al.*,
  No. 2:16-CV-02483-AB-AS, 2016 WL 10956509 (C.D. Cal. Sept. 16, 2016) ......17

*Longenecker-Wells v. BeneCard Servs., Inc.*,
  1:15-CV-00422, 2015 WL 5576753 (M.D. Pa. Sept. 22, 2015) ...........................16

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 560-61 (1992) .................................................................................6

*Maas v. Cornell Univ.*,
  94 N.Y.2d 87 (1999) ...........................................................................................15

*Marakova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ..................................................................................5

*Menowitz v. Brown*,
  991 F.2d 36, 40 (2d Cir. 1993) ..............................................................................6

*Murray v. Northrop Grumman Info. Tech., Inc.*,
  444 F.3d 169 (2d Cir. 2006) ................................................................................16

*Myers-Armstrong v. Actavis Totowa, LLC*,
  382 F. App'x. 545 (9th Cir. 2010) ......................................................................17

*Naughright v. Weiss*,
  826 F. Supp. 2d 676 (S.D.N.Y. 2011) .................................................................13

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

CASES

*Northstar Fin. Adv. Inc. v. Schwab Investments*,
  779 F.3d 1036 (9th Cir. 2015) ........................................................................................15

*Phillips v. Uber Techs., Inc.*,
  No. 16 Civ. 295, 2017 WL 2782036 (S.D.N.Y. June 14, 2017) ......................................6

*Price v. L'Oréal USA, Inc.*,
  No. 17 Civ. 0614, 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017) .....................................18

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) .......................................................................................6

*Quiroz v. Seventh Ave. Ctr.*,
  140 Cal. App. 4th 1256, 1285 (2006) .............................................................................14

*Razuki v. Caliber Home Loans, Inc.*,
  No. 17-1718, 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .........................................22

*Roth v. Isomed, Inc.*,
  746 F. Supp. 316 (S.D.N.Y. 1990) .................................................................................15

*Ruiz v. Gap, Inc.*,
  No. 07-5739, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) .............................................23

*Sackin v. TransPerfect Global, Inc.*,
  278 F. Supp. 3d 739 (S.D.N.Y. 2017) ..............................................................................7

*Shafran v. Harley-Davidson, Inc.*,
  07-1365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) ..................................................12

*Smith v. Chase Manhattan Bank, USA, N.A.*,
  741 N.Y.S.2d 100 (2d Dep't 2002) .................................................................................17

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ......................................................................................................6

*Start v. Apple Computer, Inc.*,
  No. C95-20149, 1996 WL 161630 (N.D. Cal. Mar. 29, 1996) ......................................15

*Susan B. Anthony List v. Driehaus*,
  134 S. Ct. 2334 (2014) ......................................................................................................7

*Travelers Cas. & Sur. Co. v. Dormitory Authority-State of N.Y.*,
  734 F. Supp. 2d 368 (S.D.N.Y. 2010) ............................................................................14

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

CASES

*Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*,
No. 16-4254, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017)..................................24

*US Ecology, Inc. v. State of Cal.*,
92 Cal. App. 4th 113 (2001) .................................................................................15

*Waldo v. Eli Lilly & Co.*,
No. CIV. S-13-0789, 2013 WL 5554623 (E.D. Cal. Oct. 8, 2013) ........................14

*Welborn v. Internal Revenue Service*,
218 F. Supp. 3d 64 (D.D.C. 2016)........................................................................11

*Whalen v. Michael Stores, Inc.*,
153 F. Supp. 3d 577 (E.D.N.Y. 2015) ...............................................1, 7, 8, 10, 11

*Whitmore v. Arkansas*,
495 U.S. 149, 155 (1990).......................................................................................6

STATUTES

28 U.S.C. § 1404(a) ..................................................................................................4, 6

Cal. Civ. Code § 1798.81.5.............................................................................3, 15, 20, 21

Cal. Civ. Code § 1798.82.............................................................................................3, 20, 21

Cal. Civ. Code § 1798.82(j)(3)(B) ................................................................................21

California Customer Records Act ................................................................................20, 21, 22

2nd Miss. Code Ann. § 75-24-15................................................................................3, 19, 20

1st Miss. Code Ann. § 75-24-5(2) ..............................................................................19, 20

OTHER AUTHORITIES

Federal Rule of Civil Procedure 8(a) ..........................................................................2

Federal Rule of Civil Procedure 12(b)........................................................................1, 2, 5

*Williston on Contracts* §1:5 at 37-38 (4th ed. 2007) ...................................................15

Defendants Hudson's Bay Company, Saks Fifth Avenue LLC, Saks & Company LLC, Saks Incorporated, and Lord & Taylor LLC (together, "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing sufficient to confer subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.     PRELIMINARY STATEMENT

Hudson's Bay Company ("HBC") owns world class retail brands like Saks Fifth Avenue, Saks OFF 5TH, and Lord & Taylor.  On April 1, 2018, HBC announced that it had become aware of a data security issue involving customer payment card data at certain Saks Fifth Avenue, Saks OFF 5TH, and Lord & Taylor stores in North America.  Two months after that announcement, Plaintiff instituted this suit.  She alleges she shopped at a Saks OFF 5TH store in November of 2017.  She then claims that approximately six months later, her bank notified her of "suspected fraudulent activity" on her Visa debit card and froze her bank account.  Plaintiff does not allege that she was asked to pay, or did pay, any fraudulent charges or that her identity was stolen.  Instead, she claims to have used 1.2 gallons of gasoline—costing less than $5.00—to travel to a Bank of America branch to obtain a new debit card and spent time and effort to "resolve the issue."  These allegations are insufficient to establish Article III standing.

The Second Circuit in *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017), addressed Article III standing in the context of a payment card incident at a retailer, and held that a plaintiff does not suffer a "particularized and concrete injury" where the plaintiff was not required to pay any resulting fraudulent charges, and there is no risk of future harm where a payment card was cancelled and no other personal information had been stolen.  *Id.* at 90.  The

Second Circuit therefore held that the plaintiff lacked Article III standing and affirmed dismissal of the complaint. *Id.* at 91. The same result is required here. Plaintiff does not allege that she was forced to pay any fraudulent charges. Indeed, the Complaint confirms that Plaintiff's bank identified the suspected fraudulent charge and cancelled her card. Anything Plaintiff did after that was not in furtherance of preventing fraud, because the account was cancelled and no further fraud was imminent. Any time and expenses she incurred after the account was cancelled were based on her own choice and cannot confer Article III standing.

Moreover, even if the Court determines that constitutional standing, and thus subject-matter jurisdiction, exists in this matter—and it does not—Plaintiff's various claims are also legally insufficient and must be dismissed because, *inter alia*, Plaintiff fails to plead sufficient facts supporting each claim, as required by Rules 8(a) and 12(b)(6).

***First***, Plaintiff's state law claims for negligence and negligence *per se* require an allegation of actual injury or actual damages stemming from the alleged payment card incident. Plaintiff has not alleged an out-of-pocket loss as a result of the payment card incident and, even if she had, her claims for negligence and negligence *per se* are barred by the economic loss doctrine.

***Second,*** to the extent California law applies to Plaintiff's claim for negligence *per se*, it also should be dismissed because California does not recognize a separate cause of action for negligence *per se*.

***Third***, Plaintiff's claim for breach of implied contract fails because there is no implied contract here, and she is unable to adequately plead that she has suffered any monetary damages as a result of the purported breach, which is required to state a claim for breach of implied contract.

2

**Fourth,** Plaintiff's claim for unjust enrichment should be dismissed because she cannot and does not allege that she did not receive what she intended to purchase or that she paid more than an item's true value. Accordingly, Plaintiff cannot allege that Defendants were **inequitably** enriched by Plaintiff's purchases at Defendants' stores. Additionally, her claim for unjust enrichment must be dismissed as it merely duplicates her breach of implied contract claim.

**Fifth**, Plaintiff's claim for violation of Mississippi's Consumer Protection Act ("MCPA"), Miss. Code Ann. § 75-24-5(2), on behalf of a nationwide class, fails because the statute expressly prohibits class actions. In addition, Plaintiff's failure to engage in a statutorily-mandated informal dispute resolution process prior to filing suit is fatal to any claim under the MCPA.

**Sixth,** Plaintiff's claims under California's Customer Records Act ("CRA"), Cal. Civ. Code §§ 1798.81.5, 1798.82 and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, must be dismissed because she has not alleged a cognizable injury.

**Finally,** Plaintiff's separate cause of action for "declaratory judgment" and an injunction must be dismissed because it seeks a remedy that Plaintiff has miscast as an independent cause of action. The separate count styled as a "claim" fails as a consequence.

For these reasons, the Second Amended Complaint ("SAC") should be dismissed in its entirety.

## II.    STATEMENT OF FACTS[1]

This action arises out of a data security issue, announced on April 1, 2018, involving customer payment card data at certain Saks Fifth Avenue, Saks OFF 5TH and Lord & Taylor

---

[1] The allegations of the SAC are taken as true solely for purposes of this motion.

stores in North America.  SAC ¶¶ 1, 6 n.7.  This action was originally filed in the Central District

of California and was transferred to this Court upon stipulation of the Parties under 28 U.S.C. §

1404(a).  ECF No. 45.  After the case was transferred, Plaintiff filed an Amended Complaint on

behalf of a putative nationwide class and a putative California sub-class of Saks Fifth Avenue,

Saks OFF 5TH and Lord & Taylor customers.  ECF No. 55.  On November 12, 2018, Plaintiff

filed the SAC.  ECF No. 75.

Plaintiff Alexandria Rudolph is a California citizen residing in Los Angeles.  SAC ¶ 21.

She alleges that she shopped at a Saks OFF 5TH store in Beverly Hills on November 23, 2017

and paid with a Visa debit card.  *Id.*  Roughly six months later, Plaintiff alleges that she received

a notification from Bank of America, informing her of "suspected fraudulent activity" on the

bank account associated with her Visa debit card.  *Id.* ¶ 22.  Plaintiff does not allege any facts

establishing a connection between the suspected fraud and her shopping trip to Saks OFF 5TH

six months earlier.  At the time of the notice of suspected fraud, Bank of America froze her

account.  *Id.*  On May 18, 2018, Plaintiff allegedly spent 20 minutes on the phone attempting to

resolve the freeze.  *Id.*  Plaintiff does not allege that she was unable to resolve the freeze over the

phone.  Nevertheless, Plaintiff alleges that she decided to drive approximately 25 miles to visit a

Bank of America branch to "discuss[ ] the account freeze with a banker" in person, and to

"request[ ] and obtain[ ] a new debit card."  Plaintiff does not explain why this trip was necessary

or how it related to preventing fraud.  Plaintiff asserts she used "approximately 1.20 gallons" of

gas on her trip to the bank, at a cost of $4.68.  *Id.*

Plaintiff proposes to represent a nationwide class of "all persons residing in the United

States who made a credit or debit card purchase at a Saks Fifth Avenue, Saks OFF 5TH or Lord

& Taylor U.S. store from May 2017 to March 2018[.]"  *Id.* ¶ 103.  Using the same definition,

Plaintiff also seeks to represent a statewide class of California residents. *Id.* ¶ 104. Plaintiff seeks damages, equitable relief, restitution, injunctive relief, attorneys' fees and costs. *Id.*, Request for Relief.

## III.   PLEADING STANDARDS

### A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Marakova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

### B.   Rule 12(b)(6)

On a motion to dismiss a complaint under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Indeed, a claim is only facially plausible when its actual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *See id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555-56. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

# IV.   ARGUMENT

## A.   Plaintiff Has Not Alleged An Injury In Fact Necessary To Satisfy The Standing Requirements Of Article III.

As a threshold matter, Plaintiff lacks Article III standing to assert her claims because she does not adequately allege that she suffered an injury in fact as a result of Defendants' alleged conduct. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016).  In order for an Article III court to consider the merits of a case, the "party invoking the power of the court" must "have 'standing.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013).  The "irreducible constitutional minimum" of standing in federal court includes the following three requirements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury in fact is "fairly traceable" to the challenged conduct of the defendant; and (3) the injury is "likely to be redressed" by a favorable judicial decision.  *Spokeo*, 136 S. Ct. at 1547 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Plaintiff bears the burden of alleging facts satisfying each of these elements.

To satisfy the injury-in-fact requirement, a plaintiff must allege an invasion of a legally protected interest that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736 (2d Cir. 2017) (citation omitted).[2]  The requirement that an injury be "actual or imminent"—the component of the injury-in-fact element that is at issue in this case—is understood in "temporal terms." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1298 (D.C. Cir. 2007) (*citing Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  Unlike an "actual" injury, an

---

[2] Where a case has been transferred pursuant to 28 U.S.C. § 1404(a), the transferee court "applies its own case law on federal questions." *Phillips v. Uber Techs., Inc.*, No. 16 Civ. 295, 2017 WL 2782036, at *3 n.1 (S.D.N.Y. June 14, 2017) (*citing Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("We have previously held that a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit.")).  The Second Circuit's case law on constitutional questions—including Article III jurisdiction—controls in this case.

"imminent" injury is one that has not yet happened, but is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.").

      **1.**      **No Actual Harm Exists Because Plaintiff Fails To Allege That She Actually Paid For Fraudulent Charges.**

Last year, the Second Circuit set forth the standard for "actual harm" that must be pled for standing to exist in the context of a payment card data security incident at a retailer.  In *Whalen v. Michaels Stores*, 689 F. App'x 89, 90 (2d Cir. 2017),[3] the Second Circuit affirmed the District Court's dismissal of claims arising out of a data security incident that exposed credit and debit card information, and rejected the plaintiff's attempt to establish standing based on attempted and future fraudulent purchases.  *Id.* at 90-91.  The plaintiff alleged that she made purchases at a Michaels store using a credit card and, after learning of attempted fraudulent charges on the card, cancelled it.  *Id.* a 90.  Ten days after the attempted fraudulent charges, Michaels issued a press release announcing a possible data breach of its system, apparently involving theft of customers' credit card and debit card data.  *Id.*  In addressing whether the plaintiff suffered an injury-in-fact, the Second Circuit held:

> Whalen does not allege a particularized and concrete injury suffered from the attempted fraudulent purchases…; she never was either asked to pay, nor did pay, any fraudulent charge.  And she does not allege how she can plausibly face a threat

---

[3] *Whalen* is a ruling by summary order and, as such, was not selected for publication in West's Federal Reporter. Although Second Circuit rulings by summary order do not have precedential effect, such decisions offer valuable guidance about how the Court of Appeals views particular issues.  As such, District Courts in this Circuit—and across the country—have relied on *Whalen* as authority for the proposition that no Article III injury exists where a plaintiff never paid a fraudulent charge, nor faces a plausible risk of future harm and where a payment card is promptly cancelled and no other personal information was stolen.  *See, e.g.*, *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017); *Gilot v. Equity*, No. 18-CV-3492, 2018 WL 3653150, at *2 (E.D.N.Y. July 31, 2018); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 27-28 (D.D.C. 2017) (describing *Whalen* as "persuasive," and concluding that "it is inclined to agree that a plaintiff must allege unreimbursed out-of-pocket expenses from the alleged identity thefts to state an injury in fact").

> of future fraud, because her stolen credit card was promptly canceled after the breach and no other personally identifying information—such as her birth date or Social Security number—is alleged to have been stolen.

*Id.* at 90-91.  As in *Whalen*, Plaintiff here does not allege that she was asked to pay or actually paid any fraudulent charge.  In fact, it is clear from the face of the Complaint that Plaintiff's bank stopped any fraudulent charge before she even knew about it.  SAC ¶ 22.  Plaintiff also does not allege any facts indicating that any suspected fraud was connected to her Saks Off 5TH purchase over six months earlier.  For these reasons, her allegations are insufficient to establish Article III standing under the Second Circuit's *Whalen* standard.

### 2. Plaintiff's Allegations Of The Time And Expenses Spent After Her Account Was Frozen Also Fail To Establish Article III Standing.

Plaintiff's only effort to address *Whalen* is her claim that she spent time and money contacting and traveling to a Bank of America branch to get a new debit card.  *Id.*  In *Whalen*, the plaintiff also alleged that she was injured because "she ha[d] lost time and money resolving the attempted fraudulent charges and monitoring her credit."  *Whalen*, 689 F. App'x at 90.  The Second Circuit affirmed the District Court's decision that the plaintiff failed to allege "with any specificity, that she had spent time or money ***monitoring her credit***."  *Id.* (emphasis added).  The Second Circuit further held that an allegation that plaintiff "suffered additional damages based on the opportunity cost and value of time that [she] and the Class have been forced to expend to monitor their financial and bank accounts" was not specific or personal enough to confer standing.  *Id.* at 91.

Here, Plaintiff does not allege any actual fraud as a result of her purchase at Saks OFF 5TH.  Based on the notification from Bank of America about suspected fraud six months after her purchase, however, she alleges that she "needed a new card immediately" and therefore drove "approximately 25 miles, which took her one and a half hours, to visit a Bank of America

branch in person to get a new card" which cost her approximately $4.68 in gasoline.  SAC ¶ 22. But Plaintiff fails to allege any specifics about *why* she elected to drive to her branch "immediately" or *why* her bank could not send her a new debit card in the mail.  The SAC, therefore, fails to plead the "specifics" required by *Whalen*.

Moreover, these allegations are insufficient to confer Article III standing because, at the time Plaintiff chose to drive to her bank, she no longer faced any "imminent" or "impending" harm.  *Id.*  This was not part of an effort by Plaintiff to "monitor her credit" as *Whalen* suggests or to otherwise prevent future harm.  Indeed, only when harm is "imminent" and "certainly impending" may a plaintiff's mitigation costs establish an Article III injury.  *Clapper*, 133 S. Ct. at 1153.  A plaintiff "cannot manufacture standing merely by inflicting harm" upon herself in contemplation of a possible future harm that is not "certainly impending."  *Id.* at 1151.  *See also Gilot*, 2018 WL 3653150, at *2; *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 571-72 (D. Md. 2016); *Engl v. Nat. Grocers by Vitamin College, Inc.*, No. 15-cv-02129, 2016 WL 8578252, at *6-7 (D. Colo. Sept. 21, 2016) (*report and recommendation adopted at* 2016 WL 8578252).

*Engl v. Nat. Grocers by Vitamin Cottage, Inc.* is also persuasive.  2016 WL 8578096, at *1.  In *Engl*, the plaintiff alleged that hackers penetrated a retailer's electronic payment system and obtained customer payment card data.  Days after the incident was announced, Engl's Visa card was declined at a gas station.  *Id.*  He contacted Visa and learned that his card was cancelled due to suspected fraudulent activity.  *Id.* at *2.  Engl alleged that he and his wife expended time and money cancelling other payment cards and making arrangements to obtain replacement cards.  *Id.*[4]  Addressing the allegations, the court found that "[t]he operative inquiry to determine

---

[4] Like Plaintiff here, Engl did "not specify whether [the] fraudulent activity included any fraudulent charges, nor does he allege that his credit card company refused to reverse those charges or that he was held ultimately financial

whether Mr. Engl has satisfied the injury in fact requirement, therefore, centers on whether Mr. Engl's time and money expended due to his concerns about future identity theft and fraudulent activity as a result of the Cyberattack are 'concrete, particularized, and actual or imminent.'" *Id.* at *6. The court recognized that "apprehension and inconvenience … is associated with any breach of an individual's personal and financial information," but distinguished such inconvenience from an injury in fact upon which Article III standing may be established. *Id.* at *7. Engl's expenditures after cancellation of his card did not constitute an injury in fact because there was no threat of future injury once the card was cancelled. *Id.* at *7.

Here, as *Whalen* and *Engl*, the threat of future harm ended once Plaintiff's account was frozen. Any time and money Plaintiff expended after that point are not actual injuries. *See Whalen*, 689 F. App'x at 90. At most, Plaintiff has alleged that she was inconvenienced, which is insufficient to establish Article III standing.

### 3.    An Alleged Loss Of Access To Account Funds Is Insufficient To Establish Article III Standing.

Plaintiff also alleges vaguely that she suffered from a "loss of use of and access to . . . account funds[.]" SAC ¶ 17(e). However, she fails to articulate any harm associated with a supposed deprivation of access to these funds. For example, she does not allege that she was prevented from paying a bill or making a purchase. Without any identifiable harm flowing from an alleged interruption in access to her account, no actual injury exists. *See Engl*, 2016 WL 8578096 at *6-7 (rejecting plaintiff's attempt to establish an actual injury based on the inability

---

liable for them. Mr. Engl did not identify any fraudulent charges in any of his other accounts or allege non-conclusory facts that would establish that his identity was stolen or that anyone actually attempted to steal his identity following the Cyberattack." *Id.* at *6.

to access payment cards for failure to "articulate any harm associated with the deprivation of such cards").

### 4.    An Alleged "Deprivation In Value in Plaintiff's Personal Information" Is Not An Injury-In-Fact.

Plaintiff also claims that she suffered from "diminution in value of [her] Customer Data[.]"  SAC ¶ 17(h).  Courts across the country, however, have squarely rejected this theory. *See, e.g.*, *Whalen v. Michael Stores, Inc.*, 153 F. Supp. 3d 577, 582 (E.D.N.Y. 2015), *aff'd* 689 F. App'x 89 (2d Cir. 2017) ("[W]ithout allegations about how her cancelled card information lost value, [plaintiff] does not have standing on this ground."); *Welborn v. Internal Revenue Service*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting claim based on the diminution in value of personally identifiable information because plaintiff cannot "explain how the hackers' possession of that information has diminished its value"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015) ("Plaintiffs do not allege any facts explaining how their personal information became less valuable as a result of the breach or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the security breach.").  Thus, these allegations also are insufficient to establish Article III standing.

### B.    Plaintiff's Common Law Claims Fail To  State A Claim Upon Which Relief Can Be Granted.

Even if Plaintiff could establish standing, which she cannot, her conclusory allegations do not contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Accordingly, each of Plaintiff's common law claims require dismissal.

As an initial matter, although there are differences in California and New York law as applied to data breach incidents, the Court need not determine which law applies here because,

given the nature of Plaintiff's allegations, the result is the same:  Plaintiff fails to state a claim under either state's laws.

### 1.    Plaintiff Fails To State A Claim For Negligence.

Both California and New York law require an allegation of actual injury to state a claim for negligence.  *See, e.g.*, *Castillo v. Seagate Tech., LLC*, No. 16-cv-1958, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) ("Negligence claims also require plaintiffs to connect the defendant's allegedly negligent conduct to a cognizable, nonspeculative harm."); *Shafran v. Harley-Davidson, Inc.*, 07-1365, 2008 WL 763177, at *2 n.2 (S.D.N.Y. Mar. 20, 2008) ("Actual injury is an element of negligence.").    To establish cognizable harm under a negligence theory, a plaintiff must demonstrate that she suffered an out-of-pocket loss.  *See, e.g.*, *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, at *11 (D. Minn. Mar. 7, 2018) ("[D]ata breach cases in Illinois and elsewhere have repeatedly held that a cardholder's mere allegation of an unauthorized charge, unaccompanied by an out-of-pocket loss, is not sufficient to state an actionable injury.").

In a case involving allegations of stolen data resulting from the theft of laptops, this Court dismissed a claim for negligence where there was "no evidence that this plaintiff's data has been accessed or used by anyone as a result of the theft nor is there any evidence that the data of any similarly situated person has been accesse[d] or used."  *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 282 (S.D.N.Y. 2008) (Castel, J.).  Similarly, here, Plaintiff does not identify "unauthorized charges" that appeared on her account, much less contend that she had to pay for those charges out of pocket.  Plaintiff's only alleged "out-of-pocket" loss is the cost of 1.2 gallons of gas to drive to a Bank of America branch.  SAC ¶ 22.  However, as discussed in section IV.A.2, *supra*, Plaintiff incurred this cost when she did not face the risk of any imminent harm.  Without factual allegations supporting the need to drive to her bank, her

out-of-pocket costs are too attenuated to be attributable to the payment card incident.

Moreover, even if Plaintiff had alleged actual harm resulting from the payment card incident, that harm would be entirely economic because Plaintiff alleges no physical injury or property damage.  Under both California and New York law, the economic loss doctrine bars tort claims for purely economic loss unless a "special relationship" exists between the parties. *Castillo*, 2016 WL 9280242, at *5 ("[P]laintiffs asserting negligence claims ordinarily may not recover purely economic damages unconnected to physical injury or property damage."); *Ambac Assurance Corp. v. U.S. Bank Nat'l Assoc.*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018) ("Under the economic loss doctrine, a defendant is not liable in tort for purely economic loss unless the plaintiff demonstrates that the defendant owed a duty, which 'may arise from a special relationship[,] . . . to protect against the risk of harm to plaintiff.'") (citation omitted).  Plaintiff offers only a single, conclusory allegation to support her contention that a "special relationship" existed between Defendants and their customers.  SAC ¶ 133.

However, to allege a "special relationship" under New York law, a plaintiff must "establish something beyond an ordinary arm's length transaction[.]"  *Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011).  Similarly, under California law, where a plaintiff's relationship with a defendant does not go "beyond those envisioned in everyday consumer transactions," no special relationship exists.  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014).  Shopping at a Saks OFF 5TH store does not create the requisite "special relationship."  As a result, the economic loss doctrine applies and bars Plaintiff's claims for negligence.[5]

---

[5] For the same reasons, Plaintiff's claim for negligence *per se* also is barred.  *See, e.g., Travelers Cas. & Sur. Co. v. Dormitory Authority-State of N.Y.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010) ("New York's economic loss doctrine

2.      **Plaintiff Fails to State a Claim for Negligence *Per Se*.**

Plaintiff's claim for negligence *per se* should be dismissed because she failed to adequately plead the requisite element of injury or damages.  *See, e.g.*, *Castle v. United States*, No. 15-0197, 2017 WL 6459514, at *10 (N.D.N.Y. Dec. 18, 2017) ("[A] finding of negligence per se does not make a party liable, as it still must be established that the action giving rise to the negligence per se finding was the proximate cause of the alleged injury.").  In the event that California law applies, Plaintiff's claim for negligence *per se* fails because California does not recognize a separate cause of action for negligence *per se*.  *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006).  Negligence *per se* is only an "evidentiary doctrine" in California, and "does not provide a private right of action for violation of a statute."  *Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789, 2013 WL 5554623, at *8 (E.D. Cal. Oct. 8, 2013).  "While [plaintiff] is free to allege the facts necessary to entitle her to the evidentiary presumption, she may not plead negligence *per se* as an independent cause of action."  *Id.*

3.      **Plaintiffs Claim For Breach Of Implied Contract Fails.**

Plaintiff's breach of implied contract theory rests solely on the allegation that she provided Defendants with "Customer Data."  SAC ¶¶ 117-23.  According to Plaintiff, that transaction, in and of itself, established a contract "pursuant to which Defendants agreed to safeguard and protect such information and to timely detect any breaches of their Customer Data."  *Id.* at ¶ 119.

To plead a claim for breach of implied contract, a plaintiff must first establish that an implied-in-fact contract existed.  An implied contract "requires proof of the same elements

---

is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence.").

necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Northstar Fin. Adv. Inc. v. Schwab Investments*, 779 F.3d 1036, 1050-51 (9th Cir. 2015) (*citing Williston on Contracts* §1:5 at 37-38 (4th ed. 2007)); *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93-94 (1999) (*citing Williston* for same proposition). Plaintiff does not plead facts supporting any of these elements, and her claim accordingly fails.

Plaintiff cannot show that an implied-in-fact contract existed. First, she cannot establish the element of consideration. Under both California and New York law, a "promise to perform a preexisting legal duty is not supported by consideration." *US Ecology, Inc. v. State of Cal.*, 92 Cal. App. 4th 113, 129 (2001); *see also Roth v. Isomed, Inc.*, 746 F. Supp. 316, 319 (S.D.N.Y. 1990) (holding that, under New York law, a promise to perform a pre-existing duty is not adequate consideration to support a contract). Here, Plaintiff alleges that Defendants were obligated by California law to "implement and maintain reasonable security procedures." SAC ¶¶ 148, 151 (*citing* Cal. Civ. Code § 1798.81.5(b)). This is the very duty Plaintiff claims Defendants promised to perform in the "implied" contract. *Id.* at ¶ 119 ("Plaintiff and Class members entered into implied contracts with Defendants pursuant to which Defendants agreed to safeguard and protect such information and to timely detect any breaches of their Customer Data.").

Doing what one is already bound to do cannot be consideration. Without consideration, no contract could have been formed, and Plaintiff's claim must be dismissed. *See Start v. Apple Computer, Inc.*, No. C95-20149, 1996 WL 161630, at *3 (N.D. Cal. Mar. 29, 1996) ("Apple's promise to perform its preexisting duty is not legal consideration, and Start's breach of contract claim under her first theory fails."); *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006) (affirming dismissal of breach of contract claim under New York law

15

where defendant's obligations were based on preexisting legal duty because "[a] promise to perform a pre-existing legal obligation does not amount to consideration") (citation omitted).

Second, Plaintiff cannot allege a claim for breach of implied contract because she alleges no facts giving rise to the inference that Defendants tacitly agreed to protect her personal information in exchange for remuneration. *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017) (dismissing plaintiff's breach of implied contract claim because "[n]othing in the … [c]omplaint gives rise to a factual inference that the [d]efendants tacitly agreed to secure her personal data in exchange for remuneration"); *see also Longenecker-Wells v. BeneCard Servs., Inc.*, 1:15-CV-00422, 2015 WL 5576753, at *7 (M.D. Pa. Sept. 22, 2015), *aff'd* 658 F. App'x. 659 (3d Cir. 2016) (dismissing breach of implied contract claim because "it is implausible that [defendants] would ever agree to allow others to bring private actions against them for data breaches committed by unknown third parties").

Even if Plaintiff established the existence of an implied contract, this claim must be dismissed for failure to show a cognizable injury. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). To establish contractual damages, a Plaintiff must establish "appreciable and actual damage." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (internal quotations omitted). "Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury." *Id.* As explained *supra*, Plaintiff has failed to allege a legally cognizable injury. Accordingly, her claim for breach of implied contract must be dismissed.

### 4.    Plaintiff's Unjust Enrichment Claim Fails.

Plaintiff fails to state a viable claim for unjust enrichment for two reasons: (1) she does not allege that she did not receive what she paid for at the Saks OFF 5TH store; and (2) should this

Court allow Plaintiff's claim for breach of implied contract to proceed, neither California nor New York law permits a claim for unjust enrichment where it is duplicative of a contract claim.

To state a cause of action for unjust enrichment under the laws of New York or California, "a plaintiff must allege that [she] conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." *See Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (2d Dep't 2002) (citation omitted); *see also Leonov v. JPMorgan Chase Bank, et al.*, No. 2:16-CV-02483-AB-AS, 2016 WL 10956509, at *7 (C.D. Cal. Sept. 16, 2016). Plaintiff alleges that Defendants "failed to secure Plaintiff's and Class members' Customer Data and, therefore, did not provide full compensation for the benefit the Plaintiff's and Class members' Customer Data provided." SAC ¶ 173. These conclusory assertions fall far short of the required allegations showing that Plaintiff somehow received less than she paid for. Plaintiff does not allege that the items she purchased from Defendants were defective, that Defendants charged her a price different from what she expected to pay, or that the items were worth less than the price paid. *See Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x. 545, 548 (9th Cir. 2010) (affirming dismissal of unjust enrichment claim because plaintiff failed to plead that the drugs she received were of any lesser value than those for which she paid); *see also Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (affirming dismissal of unjust enrichment claim because plaintiff did not show that he was paid less than the value of the services he provided); *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) ("[Plaintiff] has alleged neither a benefit conferred in exchange for protection of his [personal information], nor has he shown how [defendant's] retention of his subscription fee would be inequitable. He thus has not alleged a claim for unjust enrichment[.]")

(internal citation omitted).  Without allegations to support this claim, Plaintiff's cause of action for unjust enrichment should be dismissed.

Additionally, because Plaintiff's claim for unjust enrichment is based on the same core allegations as her claim for breach of implied contract, both California and New York require its dismissal.  Under New York law, unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 790 (2012).  Where a claim for unjust enrichment "simply duplicates" a "conventional contract or tort claim," it must be dismissed.  *Price v. L'Oréal USA, Inc.*, No. 17 Civ. 0614, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017); *see also Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) (dismissing unjust enrichment claim because it was "premised on the same alleged misrepresentation" as other statutory and tort claims); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 683 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim because "there [was] nothing to distinguish [plaintiff's] unjust enrichment claim from its breach of contract claim").

California law is similar: where a contract covers the same subject matter, no standalone cause of action for unjust enrichment may be asserted.  *Price*, 2017 WL 4480887, at *5 (collecting California cases).  An unjust enrichment claim may survive as a quasi-contract claim seeking restitution, but only where the plaintiff alleges that the contract is "void, rescinded or unenforceable."  *Id.* (holding that plaintiffs' "breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or

18

enforceability of that agreement" and, as a result, the claim for unjust enrichment had to be dismissed) (citation omitted).

Here, Plaintiff's unjust enrichment claim is based on the same underlying facts as her claim for breach of implied contract: that Defendants promised to safeguard and protect customer data, but failed to do so. *See* SAC ¶¶ 117-23, 170-78. Although Defendants dispute that an implied contract existed, to the extent the claim survives, California and New York law require dismissal of the unjust enrichment claim.

### C.     Plaintiff's Statutory Claims Also Require Dismissal.

#### 1.     Plaintiff Cannot Establish A Private Right Of Action Under the Mississippi Consumer Protection Act.

On behalf of herself and the putative nationwide class, Plaintiff asserts that Defendants violated the MCPA, Miss. Code § 75-24-5(2).[6] However, as a matter of substantive law, the MCPA expressly bars class action suits. Miss. Code Ann. § 75-24-15, the section of the MCPA that creates private rights of action, expressly precludes class claims: "Nothing in [the CPA] shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person." *Id.* § 75-24-15(4). In other words, "[u]nder the laws of . . . Mississippi . . ., there is no right to bring a class action to enforce the consumer protection statutes." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005). Thus, a claim arising under the MCPA on behalf of a class will not survive and may, in fact, be stricken. *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 671 (S.D. Miss.

---

[6] Plaintiff's sole basis for invoking the laws of Mississippi is her contention that Defendants maintain a "support operation center" in Jackson, Mississippi, which "tracks every point-of-sale transaction for Saks OFF 5TH locations." SAC ¶ 31.

2007) ("Thus, the defendants' Motion to Strike the plaintiffs' class action claims, in the event the Complaint survived the other fatal flaws, would be granted.").

In addition, Plaintiff's failure to allege that she attempted to engage in a statutorily-mandated informal dispute resolution process prior to filing suit is fatal to her claim.  To assert a MCPA claim, the plaintiff must "have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General."  Miss. Code Ann. § 75-24-15(2).   No MCPA private action may be brought if the plaintiff has not satisfied the "prerequisite of an attempt at informal dispute resolution[.]"  *Humphrey v. Citibank NA*, No. 12-CV-148, 2013 WL 5407195, at *6 (N.D. Miss. Sept. 25, 2013); *Cole*, 554 F. Supp. 2d at 668 ("[T]he court finds that the plaintiffs have failed to make a reasonable attempt to resolve their Mississippi CPA claims through an informal dispute settlement program as required under Section 75-24-15(2) and this failure is fatal to Count I of the Complaint.").

### 2. Plaintiff Fails To Allege A Cognizable Injury Sufficient To State A Claim For Violation Of The California Customer Records Act.

Plaintiff alleges that Defendants violated the California Customer Records Act ("CRA") by allegedly (1) failing to "implement and maintain reasonable security procedures and practices" under Cal. Civ. Code § 1798.81.5 (SAC ¶ 151), and (2) failing to provide written notice of the payment card security incident in violation of Cal. Civ. Code § 1798.82 (*id.* ¶ 154). As a threshold matter, the CRA contains a "statutory standing" requirement, which requires that a plaintiff allege a "cognizable injury."  *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2013) ("Although Section 1798.84 does not define what qualifies as an injury under the statute, other courts in the Ninth Circuit have found that an injury that satisfies Article III's injury-in-fact standard suffices to establish statutory injury under the CRA.") (collecting cases).  As the CRA's cognizable injury requirement is commensurate with the Article III injury-

in-fact requirement, *id.*, Plaintiff cannot establish "statutory standing" to bring an action under Section 1798.81.5 or 1798.82 for the reasons set forth above.

Plaintiff's claim under § 1798.82 relating to Defendants' alleged failure to notify her of the payment card incident fails for two additional reasons.  *First,* Plaintiff fails to plead any facts supporting her allegation that Defendants "failed to provide written notifications to California residents as required" under the CRA.  SAC ¶ 154; *see also id.* ¶ 1 (Defendants "fail[ed] to provide timely, accurate and adequate notice to Plaintiff and Class members that their Customer Data had been stolen, as well as precisely what types of information were stolen.").  To the contrary, Plaintiff actually acknowledges that Defendants notified customers of the incident on their websites, which is expressly allowed by the CRA.  *See* Cal. Civ. Code § 1798.82(j)(3)(B) ("substitute notice" of a breach may be provided to affected California residents by "conspicuous[ly] posting, for a minimum of 30 days . . . the notice on the Internet Web site page of the person or business."); SAC ¶ 80 (acknowledging that "HBC initially disclosed the data breach on the Saks OFF 5TH, Saks Fifth Avenue, and Lord & Taylor websites").  In fact, Plaintiff directs the Court to a copy of the Defendants' notice to customers about the incident on the California Attorney General's website.  *See* SAC ¶ 7, n.8.  Plaintiff does not allege any facts suggesting that this notice is insufficient or that it was not posted for the 30-day time period required by the CRA.  For this reason, Plaintiff fails to state a claim for relief under the CRA.

*Second*, the CRA claim fails because Plaintiff cannot allege any injury resulting from Defendants' purported failure to notify her about payment card security incident.  Courts have expressly rejected this theory of liability where the Plaintiff does not allege any "incremental harm" suffered from the failure to notify or delay in notification.  "[A] Plaintiff alleging a violation of 1798.82 must show that the delay in notification led to incremental harm."  *See*

*Razuki v. Caliber Home Loans, Inc.*, No. 17-1718, 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (dismissing CRA claim based on failure to provide timely notice of a breach because plaintiff failed to allege the delay led to incremental harm); *In re Adobe*, 66 F. Supp. 3d at 1218 (holding that plaintiffs failed to allege any incremental harm resulting from defendant's failure to notify them about the data breach).  The SAC plainly does not—and cannot—allege any "incremental harm" caused by Defendants' purported failure to notify Plaintiff because her bank notified her of suspected fraudulent activity and took immediate action to freeze her account. *See* SAC ¶ 22 ("On May 18, 2018, Bank of America notified Plaintiff of suspected fraudulent activity on the Visa debit card . . . . [a]s a result, Bank of America froze Plaintiff's account associated with the payment card.").  Accordingly, Plaintiff's CRA claim should be dismissed.

### 3.     Plaintiff's UCL Claim Fails Because She Does Not Allege A Cognizable Injury.

The California UCL requires *more than* an Article III injury.  To satisfy the UCL, a Plaintiff must show that she suffered an "economic injury."  *Lazebnik v. Apple, Inc.*, No. 5:13-cv-4145, 2014 WL 4275008, at *2 (N.D. Cal. Aug. 29, 2014) ("In addition to Article III standing, a plaintiff must establish statutory standing to bring claims under the UCL or CLRA.  These statutes require the plaintiff to show that he or she has suffered an 'economic injury.'  The economic injury requirement is 'substantially narrower than federal standing . . . which may be predicated on a broader range of injuries.'") (internal citations omitted); *Graham v. VCA Animal Hosp., Inc.*, 729 F. App'x 537, 539 (9th Cir. 2017) ("A plaintiff may challenge a business practice under the UCL only if she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'") (citation omitted).

To the extent that Plaintiff argues that she suffered injuries in the form of transportation and other costs related to her dealing with her debit card, courts in the Ninth Circuit have held

that mitigation expenses are not the type of monetary injury necessary to establish standing under the UCL.  *See In re Sony*, 903 F. Supp. 2d at 966 (holding that allegations of "time and money spent on mitigation of [a heightened risk of identity theft] does "not suffice as injury under the UCL"); *Ruiz v. Gap, Inc.*, No. 07-5739, 2009 WL 250481, at *3-4 (N.D. Cal. Feb. 3, 2009), *aff'd*, 380 Fed. App'x at 692 (time and money spent to monitor and repair credit is not the "kind of loss of money or property necessary for standing to assert a claim under section 17200").  The time and money Plaintiff spent mitigating any risk of future harm after her account was frozen, therefore, are insufficient to state a claim under the UCL.

To the extent Plaintiff claims, as suggested in prior correspondence with the Court, that she "would not have purchased items from HBC's stores" had Defendants disclosed their allegedly "inadequate security measures," courts have also rejected this theory of liability where plaintiffs fail to allege that the value of the product purchased was diminished as a result of the data breach.  *See, e.g., Engl*, 2016 WL 8578096, at *9 (rejecting theory because Plaintiff failed to "allege facts showing that both he and Defendants understood that the value of products he purchased from Defendants included a portion earmarked for data security"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d at 962 n.5 (rejecting theory where "Plaintiffs do not explain how the data breach impacted the value of the goods they purchased from Zappos. Nor do Plaintiffs allege facts showing how the price they paid for such goods incorporated some particular sum that was understood by both parties to be allocated towards the protection of customer data.").  Plaintiff here fails to identify what she purchased at the Saks OFF 5TH store—let alone that she was dissatisfied with the product or that it was worth less than what she paid.  For this reason, her "overpayment" theory of recovery under the UCL claim should be dismissed.

**D.**     **Plaintiff's "Claim" For Declaratory Judgment and Injunctive Relief Must Be Dismissed.**

Finally, Plaintiff styles a request for a declaratory judgment and for injunctive relief as a separate claim.  SAC ¶¶ 179-190.  Declaratory judgments and injunctive relief are legal remedies.  It is well settled that neither constitutes an independent cause of action.  *Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, No. 16-4254, 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) ("Plaintiff cannot sustain an independent cause of action for a declaratory judgment. A declaratory judgment is a remedy, not a cause of action."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) ("Declaratory judgment and injunctions are remedies, not causes of action.") (citations omitted); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").  Therefore, Count VI should be dismissed.

**V.     CONCLUSION**

Where a plaintiff has had ample opportunity to allege a claim, courts in the Second Circuit routinely dismiss complaints without leave to amend.  *See, e.g.*, *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996).  Here, Plaintiff has twice amended her complaint, and has "stated unequivocally that she does not wish to amend the complaint in response to defendants' pre-motion letters[.]"  ECF No. 77.  Plaintiff should be bound by the representations made in response to Defendants' pre-motion letter.  *See* Individual Practices of Judge P. Kevin Castel, at 3(A)(v) ("The pre-motion letter and response will be taken into account in deciding whether further leave to amend will be granted in the event the motion to dismiss is granted.").  For these reasons and those set forth above, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated:  December 21, 2018                    Respectfully submitted,

                                             MORGAN, LEWIS & BOCKIUS LLP


                                             */s/ Kenneth I. Schacter*
                                             Kenneth I. Schacter
                                             Jawad B. Muaddi
                                             101 Park Avenue
                                             New York, NY 10178
                                             212.309.6000
                                             kenneth.schacter@morganlewis.com
                                             jawad.muaddi@morganlewis.com

                                             -and-

                                             Gregory T. Parks (admitted *pro hac vice*)
                                             Ezra D. Church (admitted *pro hac vice*)
                                             Kristin M. Hadgis (admitted *pro hac vice*)
                                             1701 Market Street
                                             Philadelphia, PA 19103-2921
                                             215.963.5000
                                             gregory.parks@morganlewis.com
                                             ezra.church@morganlewis.com
                                             kristin.hadgis@morganlewis.com


                                             *Attorneys for Defendants Hudson's Bay Company,*
                                             *Saks Fifth Avenue LLC, Saks & Company LLC,*
                                             *Saks Incorporated, and Lord & Taylor LLC*