**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

ALEXANDRIA RUDOLPH, individually
and on behalf of all others similarly situated,

              Plaintiff,

      v.

HUDSON'S BAY COMPANY, a Canadian
corporation; SAKS FIFTH AVENUE LLC,
a Massachusetts limited liability company;
SAKS & COMPANY LLC, a Delaware
limited liability company; SAKS
INCORPORATED, a Tennessee
corporation; and LORD & TAYLOR LLC, a
Delaware limited liability company,

              Defendants.

------------------------------------------------------- X

No. 18-cv-8472 (PKC)

 

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Kenneth I. Schacter
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

-and-

Gregory T. Parks (admitted *pro hac vice*)
Ezra D. Church (admitted *pro hac vice*)
Kristin M. Hadgis (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

*Attorneys for Defendants Hudson's Bay Company,*
*Saks Fifth Avenue LLC, Saks & Company LLC,*
*Saks Incorporated, and Lord & Taylor LLC*

## TABLE OF CONTENTS

**Page**

I.  PLAINTIFF LACKS ARTICLE III STANDING ............................................................ 1

    A.  There Is No "Certainly Impending" Risk Of Future Identity Theft Because Plaintiff's Debit Card Was Promptly Canceled ...................................... 1

    B.  Because Plaintiff Faced No Impending Risk of Future Harm, The Time and Expenses Spent After Her Account Was Frozen Cannot Create Standing ............................................................................................................ 4

    C.  Plaintiff's Other Theories Of Injury Do Not Confer Article III Standing ............ 6

II.  PLAINTIFF'S COMMON LAW AND STATUTORY CLAIMS FAIL UNDER RULE 12(B)(6) .................................................................................................... 6

    A.  Plaintiff Fails To State A Claim For Negligence ................................................. 6

    B.  Plaintiff's Claim For Breach Of Implied Contract Fails ...................................... 7

    C.  Plaintiff's Unjust Enrichment Claim Fails .......................................................... 8

    D.  Plaintiff's MCPA Claim Must Be Dismissed ...................................................... 9

    E.  Plaintiff Fails To Allege An Injury Sufficient Under The California CRA ......... 9

    F.  Plaintiff's UCL Claim Fails Because She Does Not Allege An Injury ............... 10

    G.  The Declaratory Judgment "Claim" Must Be Dismissed ................................... 10

Plaintiff's Opposition asks this Court to simply ignore, and reach a decision that is at odds with, the Second Circuit's decision in *Whalen v. Michaels Stores*, 689 F. App'x 89 (2d Cir. 2017).  The *Whalen* decision provides valuable insight as to how the Second Circuit addressed Article III standing under the same facts here—a payment card incident at a retailer where the plaintiff did not pay for any fraudulent charges, her compromised payment card was promptly canceled, and no other personal information was disclosed.  Under these facts, the Second Circuit held that there is no actual injury or risk of future injury sufficient to confer standing. The same result is required here.

Plaintiff's speculation that she still faces a risk of future harm because thieves can use her *canceled* debit card number to open new accounts or commit identity theft defies logic and is contrary to other federal court decisions holding that the risk of future injury based on a canceled payment card number is "nonexistent."  The moment Plaintiff's bank froze her account and canceled her debit card, she no longer faced any risk of future harm.  That concededly occurred before she filed this Complaint, which is when the Court must test standing.  Any time and expenses she claims to have incurred *after* her card was canceled were not in furtherance of fraud-prevention, were her own choice, and cannot confer Article III standing.  The Second Amended Complaint ("SAC") should therefore be dismissed for lack of subject matter jurisdiction or for the independent reason that it fails to plead facts sufficient to support her common law and statutory claims.

I.     **Plaintiff Lacks Article III Standing.**

   A.     **There Is No "Certainly Impending" Risk Of Future Identity Theft Because Plaintiff's Debit Card Was Promptly Canceled.**

Plaintiff's claim that she somehow continues to be at risk for future identity fraud— despite alleging that her bank promptly froze her account and issued a new debit card—is

unavailing.  Opp. at 4-5.  The Second Circuit in *Whalen* held that the plaintiff there did not face a plausible threat of future harm "because her stolen credit card was promptly canceled after the breach and no other personally identifiable information—such as her birth date or Social Security number—is alleged to have been stolen."  *Whalen*, 689 F. App'x at 90-91.

Plaintiff's only response to *Whalen* is to ask this Court to ignore it because it is a "non-binding" decision.  Opp. at 4.  Plaintiff instead asks this Court to look outside this Circuit to find cases that, on different facts, have held that the risk of future identity theft alone is sufficient for Article III standing.  Opp. at 4 (citing cases).  The relevant inquiry, however, is how the ***Second Circuit*** would decide the issue, and *Whalen* not only provides valuable insight into how the Second Circuit understands the Supreme Court's standard for the risk of future injury as stated in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013), but decides the very issue before this Court under remarkably similar facts.

In fact, it is well-recognized that a summary or non-precedential decision by a Circuit Court should not be disregarded in the manner Plaintiff suggests.  *See United States v. Tejeda*, 824 F. Supp. 2d 473, 474-75 (S.D.N.Y. 2010) ("The Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order"; such "decisions … constitute valuable appellate guidance") (citing *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) ("[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases[.]")).  As the Second Circuit in *Whalen* considered the issue of Article III standing in the

context of a payment card incident at a retailer, including where the plaintiff's card was subsequently canceled—exactly the fact pattern here—its decision is instructive and persuasive.[1]

Moreover, other courts have held in the context of payment card incidents that a canceled card cannot logically pose a future risk of injury. *See, e.g.*, *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, No. 15-cv-02129, 2016 WL 8578252, at *6 (D. Colo. Sept. 21, 2016) (holding that plaintiff's "exposure to future harm was decisively extinguished upon the unilateral cancelation of his Visa account"); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 864 (S.D. Ind. 2016) ("Plaintiffs' credit cards were canceled before any fraudulent transactions occurred, ***and because the cards have been canceled, future risk of injury is essentially nonexistent*****.")** (emphasis added); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1073 (C.D. Ill. 2016) (where plaintiff canceled and received a new credit card ***"there is no risk to her if a thief were to attempt to use that information now*****.")** (emphasis added).

Plaintiff nonetheless speculates that criminals might use data from a canceled payment card to engage in unspecified "other identity theft." Opp. at 9.[2] Neither Plaintiff's SAC nor her Opposition explains how that is possible. The Eighth Circuit, relying on a report from the Government Accountability Office ("GAO Report") on data breaches, has stated that "compromised credit or debit card information, like the Card Information here, 'generally cannot

---

[1] Plaintiff cites to a single decision by a California court that declined to follow *Whalen* because it is a summary order. Opp. at 4. That case, however, involved an alleged compromise of social security numbers and other still-relevant banking information. Moreover, District Courts in this Circuit—and across the country—have cited to and relied on *Whalen* as authority for issues relating to Article III standing. *See, e.g.*, *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017); *Gilot v. Equivity*, No. 18-CV-3492, 2018 WL 3653150, at *2 (E.D.N.Y. July 31, 2018); *In re U.S. OPM Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 27-28 (D.D.C. 2017); *Stapleton ex. rel. C.P. v. Tampa Bay Surgery Ctr., Inc.*, No. 8:17-cv-1540, 2017 WL 3732102 (M.D. Fla. Aug. 30, 2017); *Savidge v. Pharm-Save, Inc.*, 3:17-cv-00186, 2017 WL 5986972 (W.D. Ky. Dec. 1, 2017).

[2] Plaintiff relies on *Lewert v. P.F. Chang's China Bistro*, 819 F.3d 963 (7th Cir. 2016), but the court's statement that the plaintiff was "still at risk of identity theft" even though he had canceled his debit card is not supported by any authority and is contrary to decisions by other federal courts. *Id.* at 967. Plaintiff also cites *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 693 (7th Cir. 2015), but that case did not involve canceled credit or debit cards.

be used alone to open unauthorized new accounts.'" *In re Super Valu, Inc.*, 870 F.3d 763, 770 (8th Cir. 2017) (*quoting* GAO Report at 30).  Like Plaintiff here, the *Super Valu* plaintiff noticed a fraudulent charge on his statement and "immediately cancelled his credit card, which took two weeks to replace." *Id.* at 767.  In holding that the plaintiff failed to allege the risk of future harm necessary to establish Article III standing, the Eighth Circuit, like the Second Circuit in *Whalen*, reasoned:

> [W]e note that the allegedly stolen Card Information does not include any personally identifying information, such as social security numbers, birth dates, or driver's license numbers. . . .  As such, . . . there is little to no risk that anyone will use the Card Information stolen in these data breaches to open unauthorized accounts in the plaintiffs' names, which is "the type of identity theft generally considered to have a more harmful direct effect on consumers."

*Id.* at 770 (*quoting* GAO Report at 30).  Like the plaintiff in *Super Valu*, Plaintiff's debit card was the only data alleged to have been stolen and that card was promptly canceled.  Plaintiff, therefore, cannot plausibly allege there is an impending risk of future harm or identity theft.

> **B.     Because Plaintiff Faced No Impending Risk of Future Harm, The Time and Expenses Spent After Her Account Was Frozen Cannot Create Standing.**

Plaintiff concedes that she expended $4.68 on gas to drive to her bank for a new debit card and spent several hours monitoring her accounts "to prevent further injury."  Opp. at 6.  However, this was *after* she froze her account and canceled her card, so Plaintiff no longer faced any "imminent" or "impending" harm.  The Supreme Court was clear in *Clapper* that a plaintiff "cannot manufacture standing merely by inflicting harm" upon herself in contemplation of a possible future harm that is not "certainly impending."  *See* 133 S. Ct. at 1151.  Consistent with that principle, courts in data breach cases have held that mitigation costs do not constitute a cognizable injury if there is no risk of future identity theft.  *See, e.g.*, *In re Super Valu*, 870 F.3d at 770 (because plaintiffs failed to allege a substantial risk of future identity theft, "the time they spent protecting themselves against this speculative threat," such as reviewing information about

the breach and monitoring their account information, cannot create an injury); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) ("That a plaintiff has willingly incurred costs to protect against an alleged increased risk of identity theft is not enough to demonstrate a 'concrete and particularized' or 'actual or imminent' injury."); *see also* Mot. at 9 (citing cases). The cases cited by Plaintiff are inapposite because they either (a) involved the disclosure of additional personal information, such as Social Security numbers, that ***could*** be used to perpetrate future harm (and are not capable of being canceled) or (b) did not involve a canceled payment card at all. Opp. at 7 (citing cases).

Plaintiff relies on *Gordon v. Chipotle Mexican Grill, Inc.*, in which a Magistrate Judge recommended finding that the plaintiff plausibly alleged actual harm for standing purposes because he paid a $45 to expedite delivery of a new debit card from his bank "in an attempt not to lose the cash back rewards he expected on his [upcoming] travel expenses." Opp. at 8 (citing No. 17-cv-1415, 2018 WL 3653173, at *7 (D. Colo. Aug. 1, 2018), *rep't & rec. adopted in part, rejected in part*, 344 F. Supp. 3d 1231 (D. Colo. 2018)). But the recommendation in *Gordon* is contrary to *Whalen*'s holding that time and effort spent when a Plaintiff does not plausibly allege future harm is insufficient. *Whalen*, 689 F. App'x at 90. In addition, unlike the allegations in *Gordon*, which at least explained the need for a debit card in advance of a trip, Plaintiff here generically alleges that she "needed a new debit card immediately" without explaining why. SAC ¶ 22. As *Gordon* recognized, there is a difference between not having a debit card for a few days and the potential loss of cash rewards. *Id.* at *6; *see also Engl*, 2016 WL 8578096, at *6 (no Article III standing because plaintiff failed to "articulate any harm associated with the deprivation of [his credit and debit cards] . . . [and] identifies no other repercussions of the Cyberattack, other than his own remedial efforts"). Here, the threat of future harm ended once

Plaintiff's account was frozen. Any time and resources she chose to later spend cannot create standing. *See Whalen*, 689 F. App'x at 90; *see also* Mot. 8-10.

### C.   Plaintiff's Other Theories Of Injury Do Not Confer Article III Standing.

Plaintiff's argument that an alleged "diminution in value" of her personal information constitutes an Article III injury is contrary to holdings of courts across the country, including in this District. *See* Mot. at 11. Most of Plaintiff's cases involved disclosure of a rich data set that **could** have monetary value, not merely a name and canceled debit card number. *See e.g.*, *Yahoo!*, 2017 WL 3727318, at *2 (breach involved "records involving credit cards, retail accounts, banking, account passwords, IRS documents, and social security numbers from transactions conducted by email, in addition to other confidential and sensitive information…."); *In re Experian Data Breach Litig.*, No. 15-1592, 2016 WL 7973595, at *1 (C.D. Cal. Dec. 29, 2016) (breach involved "alleged theft of data, including names, addresses, and social security numbers"). Plaintiff's other cases address the diminution of value theory in other contexts—not in a data breach. *See Svenson v. Google, Inc.*, No. 13-cv-4080, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015) ("diminution in value" as a theory of contract damages); *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) (contract breach and fraud claims). Nor does Plaintiff explain what "value" could possibly exist in a canceled debit card number.[3]

## II.   Plaintiff's Common Law And Statutory Claims Fail Under Rule 12(b)(6).

### A.   Plaintiff Fails To State A Claim For Negligence.

Plaintiff attempts to rebut the argument that her claims for negligence and negligence *per*

---

[3] Plaintiff also incorrectly contends that Defendants have "waived" any argument that her alleged loss of the benefit does not constitute a viable Article III injury. Opp. at 11. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") clearly asserted that in the context of a payment card incident at a retailer, under *Whalen*, Article III standing does not exist based on the facts alleged here. Mot. at 1.

*se*[4] are foreclosed by the economic loss rule by arguing that the rule does not apply because a "special relationship" existed between her and Defendants.  Opp. at 14-15.  Plaintiff incorrectly contends that Defendants "fail to point to any authorities in the context of a data breach,"[5] and argues that the Court should instead be guided by *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018).  *Id.* at 15.  That case, however, instructs that no "special relationship" can exist where parties are in privity of contract for goods, as opposed to services.  *Id.* at 1131 (citation omitted).  Defendants sell clothing and accessories, and Plaintiff alleges that she "paid for goods purchased at Defendants' HBC stores."  *See* SAC ¶ 151(g).  Plaintiff nowhere alleges that she purchased "services."  As such, no "special relationship" exists, and Plaintiff's claims for negligence and negligence *per se* are foreclosed by the economic loss doctrine.

### B.     Plaintiff's Claim For Breach Of Implied Contract Fails.

The Motion established that the breach of implied contract claim must be dismissed because Defendants had a preexisting legal duty to safeguard and protect Plaintiff's customer data.  Mot. at 15-16.  It is well-established in California that the promise to perform an act which the promisor is already duty-bound to perform cannot constitute consideration.  *Janda v. Madera Comm. Hosp.*, 16 F. Supp. 2d 1181, 1187-88 (E.D. Cal. 1998).[6]  Plaintiff points to language from

---

[4] In her Opposition, Plaintiff concedes that that negligence *per se* "is only an evidentiary doctrine" in California, and "does not provide a private right of action for violation of a statute."  Opp. at 14.  As such, Plaintiff's independent cause of action for negligence *per se* must be dismissed.

[5] To the contrary, Defendants cited *In re Sony Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 969 (S.D. Cal. 2014), a case involving customer card data, which held that no special relationship exists where a plaintiff's relationship with a defendant does not go "beyond those envisioned in everyday consumer transactions."  *See* Mot. at 13.

[6] *Janda* is the foundation of the case cited in the Opposition, *Walters v. Kimpton Hotel & Rest. Grp., LLC*, No. 16-cv-5387, 2017 WL 1398660 (N.D. Cal. Apr. 13, 2017).  In *Walters*, the defendant allegedly promised to safeguard customer data in its privacy policy; without explanation, the Court summarily concluded that this promise was "a voluntary duty not imposed by law[.]"  *Id.* at *2.  Although *Walters* cites to *Janda*, the *Walters* court failed to follow *Janda*'s instruction to determine whether the allegedly promised performance differed from what the defendant was already bound to do.  *Janda*, 16 F. Supp. 3d at 1188.  Thus, *Walters* is of limited value.

Defendants' privacy policy stating, "we will take reasonable precautions to secure and protect the information on our systems" and claims that this is a "voluntary promise, independent from any legal obligation."  Opp. at 17.  But Plaintiff herself alleges elsewhere that Defendants were under a legal obligation to secure and protect the customer data on its systems.  *See, e.g.*, SAC ¶ 148 (quoting the portion of Cal. Civ. Code § 1798.81.5(b) which provides that businesses have an obligation to "implement and maintain reasonable security procedures and practices appropriate . . . to protect the personal information from unauthorized access, destruction, use, modification, or disclosure").  As the language from Defendants' privacy policy does no more than mirror the language of the statute, Plaintiff cannot plausibly allege that Defendants' promised performance differed from what was required by a pre-existing duty.

### C.      Plaintiff's Unjust Enrichment Claim Fails.

Plaintiff argues that Defendants were unjustly enriched because "Plaintiff and Class members should have received from Defendants the goods and services that were the subject of the transaction and should have been entitled to have Defendants protect their Customer Data with adequate data security."  SAC ¶ 171.  Plaintiff cites cases—*Anthem I*, *Target*, and *Sackin*— which do not address California law, which she contends applies here.  Opp. at 12 n.7, 19.  Rather, in California, an unjust enrichment claim cannot survive where a Plaintiff received the particular goods or services for which she paid, and does not allege that she paid more than their reasonable value.  *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  Plaintiff does not dispute that her unjust enrichment claim is duplicative of her contract claim (Mot. at 18-19), but asserts that she should be allowed to plead in the alternative under Rule 8.  Opp. at 19.  But for an unjust enrichment claim to proceed under California law, the plaintiff must allege that the contract at issue is void, rescinded, or unenforceable, which is not

alleged here.  *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 0614, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017); *Daniel v. Wayans*, 213 Cal. Rptr. 3d 865, 892 (Cal. Ct. App. 2017).

### D.     Plaintiff's MCPA Claim Must Be Dismissed.

Plaintiff attempts to avoid dismissal of her claim under the MCPA by arguing that the MCPA's pre-suit dispute resolution requirement "would require Plaintiff to plead her claim in a heightened fashion, which conflicts with Rule 8's notice pleading standard."  Opp. at 21.  But the SAC does not include *any* allegation that she complied with this prerequisite, requiring dismissal.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Litig.*, No. MDL 2672 CRB, 2018 WL 4777134, at *30 (N.D. Cal. Oct. 3, 2018).

### E.     Plaintiff Fails To Allege An Injury Sufficient Under The California CRA.

Plaintiff attempts to "clarify" that Defendants' notice of the incident posted on their websites was "insufficient" because California law required Defendants to "provide specific information to California residents."  Opp. at 22.  The SAC, however, not only does not identify what "specific information" was missing from the notice but identifies the specific title and headings that California law requires, all of which *are* included in the notice.  SAC ¶ 155; *see also* Notice of Data Breach, Ex. 1 to Schacter Decl. (title and headings Plaintiff alleges are required).[7]  For this reason and because Plaintiff lacks statutory standing to assert her claim under the CRA (Mot. 20-21), Plaintiff has not stated a claim for economic damages or injunctive relief under the CRA.

---

[7] Plaintiff contends that Defendants "provide no argument or authority demonstrating that the content of their notice met the requirements of" the CRA.  Opp. at 22.  But it is Plaintiff's burden to allege a violation of the CRA.

**F.     Plaintiff's UCL Claim Fails Because She Does Not Allege An Injury.**

Plaintiff's Opposition fails to address the cases holding that mitigation expenses, like the time and gas money Plaintiff claims she spent after her account was frozen, are not the type of monetary injury sufficient to establish standing under the UCL. *See* Mot. at 22-23. Moreover, for the reasons set forth in Defendants' Motion, Plaintiff's "benefit of the bargain" theory of injury fails because she does not allege how the security attack on Defendants' stores diminished the value of the merchandise she purchased. Mot. at 23-24. The cases Plaintiff cites in her Opposition are inapposite because they addressed website purchases or other transactions expressly subject to agreement to a Privacy Policy promising to protect personal information. *See, e.g.*, *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (users required to accept privacy policy before creating account or providing personal data).

**G.     The Declaratory Judgment "Claim" Must Be Dismissed.**

Plaintiff cites cases from the Northern District of Georgia in support of her contention that it is "well-established that a plaintiff may seek declaratory relief under the Declaratory Judgment Act ["DJA"], and use it as a basis for injunctive relief." Opp. at 25. Plaintiff, however, fails to acknowledge controlling Second Circuit precedent holding that "Courts generally reject a DJA claim when other claims in the suit will resolve the same issues." *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016). Here, Plaintiff seeks injunctive relief in connection with her CRA claim (SAC ¶¶ 155(a)-(j)), and her request for injunctive relief under the DJA makes an ***identical*** request for the same ten items of injunctive relief. *Id.* at ¶¶ 187(a)-(j). As Plaintiff's DJA claim is entirely duplicative of her claim under the CRA, the DJA claim "will serve no useful purpose," will not "serve to offer relief from uncertainty." *City of Perry, Iowa*, 188 F. Supp. 3d at 286.

Dated:  February 15, 2019                Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP

                                          /s/ *Kenneth I. Schacter*
                                          Kenneth I. Schacter
                                          Jawad B. Muaddi
                                          101 Park Avenue
                                          New York, NY 10178
                                          212.309.6000
                                          kenneth.schacter@morganlewis.com
                                          jawad.muaddi@morganlewis.com

                                          -and-

                                          Gregory T. Parks (admitted *pro hac vice*)
                                          Ezra D. Church (admitted *pro hac vice*)
                                          Kristin M. Hadgis (admitted *pro hac vice*)
                                          1701 Market Street
                                          Philadelphia, PA 19103
                                          215.963.5000
                                          gregory.parks@morganlewis.com
                                          ezra.church@morganlewis.com
                                          kristin.hadgis@morganlewis.com

                                          *Attorneys for Defendants Hudson's Bay Company,*
                                          *Saks Fifth Avenue LLC, Saks & Company LLC,*
                                          *Saks Incorporated, and Lord & Taylor LLC*

11