**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

IN RE HUDSON'S BAY COMPANY
DATA SECURITY INCIDENT
CONSUMER LITIGATION

    :
    :
    :
    :
    :
    :
    :
    :

No. 1:18-cv-08472 (PKC)
[rel. 1:19-cv-04492 (PKC)]

------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Kenneth I. Schacter
Jawad Muaddi
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

-and-

Gregory T. Parks (admitted *pro hac vice*)
Ezra D. Church (admitted *pro hac vice*)
Kristin M. Hadgis (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

*Attorneys for Defendants Hudson's Bay Company,*
*Saks Fifth Avenue LLC, Saks & Company LLC,*
*Saks Incorporated, and Lord & Taylor LLC*

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  STATEMENT OF FACTS ....................................................................... 2

III.  RELEVANT PROCEDURAL BACKGROUND ........................................... 4

IV.  STANDARD OF REVIEW ..................................................................... 5

    A.  Rule 12(b)(1) ............................................................................... 5

    B.  Rule 12(b)(6) ............................................................................... 5

    C.  Choice of Law .............................................................................. 5

V.  ARGUMENT ........................................................................................ 7

    A.  Plaintiffs' Allegations Deemed Inadequate in *Rudolph* Require Dismissal Pursuant to Rule 12(b)(1) .................................................................. 7

        1.  This Court Previously Rejected Plaintiffs' Benefit of the Bargain Theory. ............................................................. 10

        2.  This Court Previously Rejected Certain Plaintiffs' Requests to Recover for Future Harm on Cancelled Cards. ................................. 11

        3.  All Plaintiffs Fail to Allege Substantial Risk of Future Harm as Required by this Court. ................................................. 12

        4.  Plaintiffs Who Fail to Plead Any Attempted Fraudulent Charges Lack Standing. ....................................................... 13

        5.  All Plaintiffs Other than Rudolph Fail to Allege Past Harm with the Specificity Required by the *Rudolph* Opinion. ........................ 14

    B.  Many Plaintiffs Fail to Plausibly Allege Causation and Damages Under *Twombly* and the Second Consolidated Complaint Must Be Dismissed Pursuant to Rule 12(b)(6) ................................................................. 16

        1.  Certain Plaintiffs Fail to Plausibly Allege Any Injury Caused by the Hudson's Bay Payment Card Security Incident. ........................ 18

        2.  Plaintiffs Carthan and Wade Cannot Plausibly Allege They Suffered Harm Where They Experienced Fraud on Payment Cards Not Used at Hudson's Bay's Stores. ........................................... 19

        3.  Plaintiff Levitt-Raschella Attempts to Recover For Fraud That Could Not Possibly Have Been Caused by the Hudson's Bay Incident. ........................................................................ 20

        4.  Certain Plaintiffs Cannot Plausibly Allege They Suffered Harm Due to Receipt of Fraudulent Emails. ............................................ 21

    C.  Three of Plaintiffs' Statutory Causes of Action Must Be Dismissed Pursuant to Rule 12(b)(6) ................................................................. 22

i

## TABLE OF CONTENTS
(continued)

Page

1.  The New Jersey Data Breach Notification Statute and Nevada Deceptive Trade Practices Act Do Not Permit a Private Right of Action and Should Be Dismissed Under Rule 12(b)(6)........................... 22

2.  The Georgia Fair Business Practices Act Invoked by Plaintiffs Bars Class Actions and Should Be Dismissed Under Rule 12(b)(6). ...... 23

VI.  CONCLUSION............................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. Shah*,
   No. 01-13-00995-CV, 2015 WL 222171 (Tex. App. Jan. 15, 2015)......................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................5, 21

*Bayer Healthcare Pharm. Inc. v. Watson Pharm., Inc.*,
   No. 2:07-CV-01472-KJD-GWF, 2011 WL 13247564 (D. Nev. Mar. 31, 2011) ...................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................... *passim*

*Calhoun v. Holloway*,
   No. 4:17-CV-1248, 2017 WL 4124830 (S.D. Tex. Sept. 18, 2017).......................................16

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009).....................................................................................21

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013).................................................................................................8, 13, 16

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) .....................................................................................23

*Damiano v. Sony Music Entm't, Inc.*,
   975 F. Supp. 623 (D.N.J. 1996) ...............................................................................................17

*Della Ratta v. Della Ratta*,
   927 So. 2d 1055 (Fla. 4th DCA 2006) .....................................................................................17

*EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*,
   113 A.3d 775 (N.J. Super. Ct. App. Div. 2015).......................................................................17

*Fedell v. Wierzbieniec*,
   127 Misc. 2d 124, 485 N.Y.S.2d 460 (Sup. Ct. 1985), *aff'd*, 116 A.D.2d 990,
   498 N.Y.S.2d 1013 (1986).......................................................................................................17

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)......................................................................................................17

*Grodzitsky v. Am. Honda Motor Co. Inc.*,
   No. 2:12-CV-01142-SVW, 2014 WL 718431 (C.D. Cal. Feb. 19, 2014) .................................6

iii

# TABLE OF AUTHORITIES
## (continued)

Page(s)

CASES

*Gardner v. N.J. State Police,*
   No. 15-8982, 2016 WL 6138240, at *4 (D.N.J. Oct. 21, 2016) ...............................................17

*Hammond v. Bank of N.Y. Mellon Corp.,*
   No. 08-6060, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) ......................................17

*Holeva v. M & Z Assocs., Inc.,*
   No. CVNH 97098403, 1998 WL 956359 (Conn. Super. Ct. Nov. 9, 1998)...........................17

*Hollingsworth v. Perry,*
   133 S. Ct. 2652 (2013).............................................................................................................7

*Holmes v. Countrywide Fin. Corp.,*
   No. 5:08-cv-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ..............................16, 22

*Honig v. Comcast of Georgia I, LLC,*
   537 F. Supp. 2d 1277 (N.D. Ga. 2008) ..................................................................................23

*John v. Whole Foods Mkt. Grp.,*
   858 F.3d 732 (2d Cir. 2017).....................................................................................................7

*Khan v. Children's Nat'l Health Sys.,*
   188 F. Supp. 3d 524 (D. Md. 2016) .......................................................................................10

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,*
   150 F. Supp. 143 (E.D. Tex. 1956), *aff'd*, 259 F.2d 398 (5th Cir. 1958) ..............................17

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992).................................................................................................................7

*Marakova v. United States,*
   201 F.3d 110 (2d Cir. 2000).....................................................................................................5

*Martin v. Home Depot U.S.A., Inc.,*
   369 F. Supp. 2d 887 (W.D. Tex. 2005)...................................................................................17

*Matanky v. Gen. Motors LLC,*
   370 F. Supp. 3d 772 (E.D. Mich. 2019)..................................................................................23

*Menowitz v. Brown,*
   991 F.2d 36 (2d Cir. 1993).......................................................................................................8

*Montgomery v. Wyeth,*
   540 F. Supp. 2d 933 (E.D. Tenn. 2008), *aff'd*, 580 F.3d 455 (6th Cir. 2009) .........................6

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**CASES**

*Nwachukwu v. Liberty Bank,*
 257 F. Supp. 3d 280 (D. Conn. 2017) ....................................................................17

*Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.,*
 710 F. Supp. 2d 458 (D. Del. 2010) ........................................................................6

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
 489 F.3d 1279 (D.C. Cir. 2007) ..............................................................................8

*In re Rezulin Prod. Liab. Litig.,*
 390 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................................6

*Rollins, Inc. v. Butland,*
 951 So. 2d 860 (Fla. 2d DCA 2006) ......................................................................17

*Royal Indem. Co. v. King,*
 512 F. Supp. 2d 117, 132 (D. Conn. 2007) ............................................................16

*Sackin v. TransPerfect Glob., Inc.,*
 278 F. Supp. 3d 739 (S.D.N.Y. 2017) ............................................................3, 8, 13

*Shafran v. Harley-Davidson, Inc.,*
 No. 07-1365, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .................16, 18, 19, 20

*Sissel v. Rehwaldt,*
 519 F. App'x 13 (2d Cir. 2013) ..............................................................................6

*Smith v. Chase Manhattan Bank, USA, N.A.,*
 293 A.D.2d 598 (2d Dep't 2002) ..........................................................................17

*Smith v. Wells Fargo Bank, N.A.,*
 158 F. Supp. 3d 91 (D. Conn.), *aff'd,* 666 F. App'x 84 (2d Cir. 2016) ................17

*Stutman v. Chem. Bank,*
 95 N.Y.2d 24 (2000) ..............................................................................................17

*Susan B. Anthony List v. Driehaus,*
 573 U.S. 149 (2014) ..........................................................................................8, 12

*Thymes v. Gillman Companies,*
 No. CV H-17-2834, 2018 WL 1281852 (S.D. Tex. Mar. 9, 2018) ........................17

*Torres v. Wendy's Int'l, LLC,*
 No. 6:16-CV-210-ORL-40DCI, 2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ....22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

CASES

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ...........................................................17

*Vigil v. Take-Two Interactive Software, Inc.*,
  235 F. Supp. 3d 499 (S.D.N.Y.), *vacated in part on other grounds*, 717 F.
  App'x 12 (2d Cir. 2017)..........................................................................10

*Whalen v. Michael Stores, Inc.*,
  153 F. Supp. 3d. 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017).............. *passim*

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)..................................................................................8

*Whritenour v. Thompson*,
  145 So. 3d 870 (Fla. Ct. App. 2014)......................................................16

*Willey v. J.P. Morgan Chase, N.A.*,
  No. 09–CV-1397 (CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009) ...................................18

*In re Zappos.com, Inc.*,
  108 F. Supp. 3d 949 (D. Nev. 2015).......................................................10

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) .................................................................3

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................2, 7

Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. .........................................2, 23

Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0903, et seq. ...................2, 22

New Jersey's Consumer Security Breach Disclosure Act, N.J. Stat. Ann. § 56:8-
  163, et seq. .........................................................................................2, 22

O.C.G.A. § 10-1-399...................................................................................23

**Other Authorities**

Alan B. Vickery, Breach of Confidence: An Emerging Tort, 82 Colum. L. Rev.
  1426 (1982)..............................................................................................17

Fed. R. Civ. P. 12(b)(1)..............................................................................1, 5, 7

Fed. R. Civ. P. 12(b)(6)............................................................................ *passim*

Defendants Hudson's Bay Company, Saks Fifth Avenue LLC, Saks & Company LLC, Saks Incorporated, and Lord & Taylor LLC (together, "Hudson's Bay") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Second Consolidated Amended Class Action Complaint (the "Second Consolidated Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing sufficient to confer subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.    PRELIMINARY STATEMENT

Six months ago, this Court issued its opinion granting in part Hudson's Bay's previous motion to dismiss, addressing the requirements for standing where a Plaintiff seeks to recover following an alleged data breach. *See* Opinion in *Rudolph v. Hudson's Bay Co.*, et al., No. 1:18-cv-8472 (PKC), May 7, 2019, Dkt. No. 96 ("*Rudolph* Opinion").  The principles laid out in the *Rudolph* Opinion require the Court to dismiss effectively all of the Second Consolidated Complaint, leaving only named Plaintiff Rudolph with standing to pursue claims.  In the *Rudolph* Opinion, the Court dismissed allegations of future harm and rejected claims based on theories of benefit of the bargain or diminution in value.  Furthermore, the Court held that named Plaintiff Rudolph had standing only because she alleged a unique set of facts including her need to drive to a bank branch to replace a frozen debit card, incurring a gas cost of $4.68.  In reaching those rulings, this Court adopted and relied significantly on the Second Circuit's decision in *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017).  *Whalen* found a lack of standing in a data breach case absent plausible allegations of fraudulent charges or any specifics of time or expense dealing with that fraudulent charge.  *See Rudolph* Opinion at 7-8 (citing *Whalen*, 689 F. App'x at 90-91).  Thus, even where a data security incident allegedly exposed credit and debit card information, plaintiffs who fail to plausibly allege that they were asked to pay, or did pay, any

fraudulent charge, and who fail to plausibly allege specific facts concerning time spent dealing with the attempted fraudulent charge, lack standing.  *Whalen* at 90-91.

Since the Court's ruling in the *Rudolph* Opinion, new Plaintiffs have come to this Court by way of transfer under 28 U.S.C. § 1404(a).  These new Plaintiffs joined Rudolph in a Consolidated Complaint that inexplicably attempts to revive claims this Court has previously dismissed, including claims for future harm, for diminution in value of their personal information, and for loss of benefit of the bargain.  Plaintiffs offer no additional allegations that would justify changing the Court's previous decision and the Court should once again dismiss those claims.  Moreover, although the new named Plaintiffs present a myriad of circumstances, only Plaintiff Whitaker attempts to claim to have paid a fraudulent charge, and even that claim is not plausible.  No Plaintiff other than Rudolph alleges the specifics of time or money spent addressing alleged fraudulent charges plausibly linked to the incident involved here.   The Court should therefore dismiss Plaintiffs' claims other than Rudolph's for lack of standing.

Even if the Court determines that Plaintiffs other than Rudolph have standing, their claims fail as a matter of law because they have not pled any facts supporting the injury or damage elements as required by Rule 8 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As an example, many named Plaintiffs only identify fraudulent charges on cards they do not claim to have used at a Hudson's Bay store.  In addition, two of the breach notification statutes that certain Plaintiffs attempt to invoke—the New Jersey Consumer Security Breach Disclosure Act and the Nevada Deceptive Trade Practices Act—do not allow a private right of action, and the Georgia Fair Business Practices Act bars class actions, also requiring dismissal under Rule 12(b)(6).

## II.     STATEMENT OF FACTS

As outlined in the Court's previous opinion, on April 1, 2018, Hudson's Bay announced that it had become aware of a data security issue involving customer payment card data at certain

of its Saks Fifth Avenue, Saks OFF 5TH, and Lord & Taylor stores in North America.  *Rudolph Opinion* at 3; Second Consolidated Complaint ("SCC") ¶ 3.  Plaintiffs allege that "Private Information"—defined as "credit and debit card records including cardholder name, card number, expiration date, and internal verification code"—used at these stores between May 2017 and March 2018 was exposed to hackers as a result of the payment card security incident.  *Id.* ¶¶ 1-2, 5.  Plaintiffs *do not* allege that their home addresses, e-mail addresses, social security numbers, online passwords, or any other type of information was compromised.  *Id.* ¶¶ 1-2, 41, 79.  As the Court's *Rudolph* Opinion recognized, the compromise of payment card information entails less risk than that of more sensitive personal information such as social security numbers.  *Rudolph Opinion* at 6-8 (*citing Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017); *In re Zappos.com, Inc.*, 888 F.3d 1020, 2013, 1027-28 (9th Cir. 2018); *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017) (Schofield, J.)).

Each of the 15 named Plaintiffs claims to have used a credit or debit card at a Saks Fifth Avenue, Saks OFF 5TH, or Lord & Taylor store between May 2017 and March 2018.  SCC ¶¶ 12-26.  The similarities among them end there.  Only Plaintiff Whitaker attempts to claim a fraudulent charge that was "not reimbursed."  *Id.* ¶ 19.  She does not squarely allege that she paid the charge.  She also does not say why she did not contact her credit card company to dispute the charge, which would have resulted in it being reimbursed.  *Id.*  Others fail to allege any fraudulent charges were even attempted.  *Id.* ¶¶ 14, 17, 20, 21, 24, 25.  Still others claim attempted fraudulent charges on the card they used at the relevant store, but do not allege they had to pay those charges.  *Id.* ¶¶ 12, 13, 15-19, 22.  Some Plaintiffs fail to allege that the attempted fraudulent charges were on the same card they used at Saks Fifth Avenue, Saks OFF 5TH or Lord & Taylor.  *Id.* ¶¶ 12, 26.  They

are therefore attempting to assert a claim for a fraudulent charge on a card they *never* used at the stores involved in this incident.

Moreover, certain named Plaintiffs include allegations regarding an alleged diminution in the value of their Private Information and a claimed "lost benefit of the bargain"—theories this Court squarely rejected in *Rudolph*. *Id.* ¶¶ 12-26. Others allege consequences that could not possibly be related to this incident, including compromises of their Amazon.com accounts, use of their social security numbers to establish fraudulent bank accounts, the receipt of unwanted emails, or even intrusions into their Instagram social media accounts. *Id.* ¶¶ 12, 18, 26. Finally, still other named Plaintiffs allege vaguely that the Hudson's Bay data security incident caused them to spend time or effort to address the situation, but fail to include the specificity that the Court required in the *Rudolph* Opinion in order to claim standing under *Whalen*. *Id.* ¶¶ 12-18, 20-26.

## III.     RELEVANT PROCEDURAL BACKGROUND

Plaintiffs have had multiple opportunities to plead their claims. For many, this Second Consolidated Complaint actually represents the fourth or fifth time they attempted to assert claims against Hudson's Bay. Most recently, and after the Court's decision in *Rudolph*, Plaintiffs' counsel represented to the Court that the forthcoming consolidated complaint would "not include anything that had been dismissed" in *Rudolph*. Transcript of August 1, 2019 Conference, at 7. After Plaintiffs filed their Consolidated Amended Class Action Complaint on August 9, 2019 (ECF No. 121), Hudson's Bay filed a pre-motion letter (ECF No. 129) pointing out, among other things, the various ways in which Plaintiffs had failed to take into account the Court's *Rudolph* Opinion. In response, Plaintiffs requested permission to file another complaint "to correct certain deficiencies noted by Defendants" (ECF Nos. 133 & 134) and received permission from the Court to amend their Complaint yet again (ECF No. 135). Plaintiffs filed the Second Consolidated Complaint, at

4

issue here, on September 20, 2019 (ECF No. 137).  But, the Second Consolidated Complaint still contains claims this Court dismissed in the *Rudolph* Opinion.

## IV.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Marakova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  On a motion to dismiss under Rule 12(b)(1), a court may refer to evidence outside the pleadings.  *Id.*  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.*

### B.    Rule 12(b)(6)

On a motion to dismiss a complaint under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Indeed, a claim is facially plausible only when its factual allegations allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged.  *See id.*  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555-56.

### C.    Choice of Law

Although this case may eventually present complex choice of law questions, for purposes of this motion, there is no conflict among the relevant jurisdictions on the basic principles that require dismissal here.  This consolidated action formed from three actions originally filed in and transferred from federal courts in three separate jurisdictions:  California, Delaware, and Tennessee.  Determining the applicable law in cases involving transferred and consolidated actions

requires a complex analysis that courts generally do not undertake at this early stage in the litigation.  Where a case has been transferred from one federal court to another, "the transferee court generally adheres to the choice of law rules of the transferor court."  *Sissel v. Rehwaldt*, 519 F. App'x 13, 17 (2d Cir. 2013).  When transferred cases are consolidated, courts generally apply the choice of law principles of each transferor court.  *In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005) (at summary judgment, noting that the court declined to address choice of law earlier in case and stating, "[j]ust as transfers pursuant to Sections 1404 and 1407 do not affect the applicable choice of law rules, so too the next step in the streamlining process— namely consolidation into one proceeding of two or more actions initially filed in different states— does not affect them.").

For each original jurisdiction at issue here—California, Delaware and Tennessee—the first step in the choice-of-law process is determining whether there is a conflict between the laws of the states at issue.  *See Grodzitsky v. Am. Honda Motor Co. Inc.*, No. 2:12-CV-01142-SVW, 2014 WL 718431, at *7 (C.D. Cal. Feb. 19, 2014) ("First, the court must determine whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different."); *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 467 (D. Del. 2010) ("[T]he first step in applying Delaware's choice of law rules requires an examination of the competing laws proposed by the parties to determine whether an actual conflict exists."); *Montgomery v. Wyeth*, 540 F. Supp. 2d 933, 943 (E.D. Tenn. 2008), *aff'd*, 580 F.3d 455 (6th Cir. 2009) ("A court only needs to make a choice-of-law decision when there is a conflict between the laws of two states.").

As the case proceeds, potentially only as to Plaintiff Rudolph, it may be necessary to determine what happened where and to apply the laws of different states for the purported

nationwide class or the attempted state sub-classes.  But, that analysis is not needed at this stage because the result of this motion would be the same under any of the potential options for choice of law.

## V.     ARGUMENT

Plaintiffs have had multiple opportunities to cure the deficiencies in the Second Consolidated Complaint.  Their failure to cure these deficiencies despite being given numerous opportunities to do so requires dismissal with prejudice under Rules 12(b)(1) and 12(b)(6).

### A.     Plaintiffs' Allegations Deemed Inadequate in *Rudolph* Require Dismissal Pursuant to Rule 12(b)(1).

All Plaintiffs except Rudolph lack Article III standing to assert their claims because they do not adequately allege that they suffered an injury as a result of Hudson's Bay's alleged conduct. Their claims should be dismissed for lack of standing.  Before an Article III court may consider the merits of a case, the "party invoking the power of the court" must "have 'standing.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2659 (2013).  The "irreducible constitutional minimum" of standing in federal court includes the following three requirements: (1) the "plaintiff must have suffered an 'injury in fact;'" (2) the injury in fact is "fairly trace[able]" to the challenged conduct of the defendant; and (3) the injury is "likely to be redressed" by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 590 (1992).  Plaintiffs bear the burden of alleging facts satisfying each of these elements.

To satisfy the injury-in-fact requirement, a plaintiff must allege an invasion of a legally protected interest that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *John v. Whole Foods Mkt. Grp.*, 858 F.3d 732, 736 (2d Cir. 2017).[1]  The

---

[1] Where a case has been transferred pursuant to 28 U.S.C. § 1404(a), the transferee court applies its own case law

requirement that an injury be "actual or imminent"—the component of the injury-in-fact element that is at issue in this case—is understood in "temporal terms." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1298 (D.C. Cir. 2007) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).   Unlike an "actual" injury, an "imminent" injury is one that has not yet happened, but is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.").

Many Plaintiffs here make the very same allegations of injury that this Court rejected in *Rudolph*.   In analyzing Rudolph's claims, the Court observed that whether a plaintiff has sufficiently alleged injury turns on "facts unique to each case" and must be decided "on a case- and fact-specific basis." *Rudolph* Opinion at 6-7 (citing *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 746 (S.D.N.Y. 2017)).   In her Second Amended Complaint filed prior to consolidation of the consumer actions, Plaintiff Rudolph had alleged that she used her Bank of America Visa debit card at a Saks OFF 5TH store on November 23, 2017.   Months later, she alleged, she received an alert from Bank of America regarding attempted fraudulent activity on that same card.   Rudolph claimed that she needed to replace the card "immediately," causing her to drive to a Bank of America branch and to incur a gas expense of $4.68. *Rudolph* Compl. ¶ 22 (Dkt. No. 75).   The Court held that these claims satisfied the Article III requirements set forth in *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89 (2d Cir. 2017), because "Rudolph's complaint

---

on federal questions. *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).  As this Court recognized in *Rudolph*, the Second Circuit's case law on constitutional questions like Article III standing therefore controls this case.

offers a level of detail that was absent from *Whalen*" and describes an injury "based on the identifiable, already-incurred loss of time and money." *Rudolph* Opinion at 15.

Rudolph also claimed she would incur future harm and had lost the value of her information and the benefit of the bargain she made with Saks OFF 5TH. *Id.* This Court rejected as insufficient Rudolph's claims of: (a) future harm, in light of the fact that Rudolph's allegedly compromised card was cancelled and she therefore failed to allege a "substantial risk" of future harm; (b) lost value of personal information where the information is payment card data; (c) temporary inability to access funds because there were no underlying factual allegations; and (d) benefit of the bargain claims because they are "too tenuous" and there was no allegation that the items Rudolph purchased were defective. *Rudolph* Opinion at 9-17. Ignoring the Court's specific ruling, Plaintiffs continue to assert the same "diminution in value" theory on behalf of Plaintiffs Haggerty, Harris, Joseph, Dennis Meduri, Giorgina Meduri, Targum, without explaining *how* the security incident decreased the value of their data. SCC ¶¶ 13, 14, 15, 20, 21, 25; *see also id.* ¶ 29 ("The injuries suffered by Plaintiffs and Class [M]embers as a direct result of the Security Breach include one or more of the following: . . . damages to and diminution in value of their PI entrusted to Defendants for the sole purpose of purchasing products and services from Defendants."); *id.* ¶ 97 (same).

The Second Consolidated Complaint appears to allege diminution of value of personal information only for named Plaintiffs whose cards were not cancelled. These Plaintiffs claim that because their "payment card data is active and remains in the hands of criminals, a criminal marketplace exists for the data and [Plaintiffs have] lost the sales value of this data." *Id.* ¶¶ 13, 14, 15, 20, 21, 25. But this claim—repeated word-for-word for each Plaintiff—still does not include specific allegations that the value of their personal information was diminished by the data

security incident because Plaintiffs again fail to allege *how* the value of their data decreased because of the incident.  *See Rudolph* Opinion at 16; *see also, e.g., Whalen v. Michael Stores, Inc.*, 153 F. Supp. 3d. 577, 582 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017) ("[W]ithout allegations about how her cancelled card information lost value, [plaintiff] does not have standing on this ground."); *Khan v. Children's Nat'l Health Sys*., 188 F. Supp. 3d 524, 533 (D. Md. 2016) (rejecting claim based on the diminution in value of personally identifiable information because plaintiff cannot "explain how the hackers' possession of that information has diminished its value"); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015) ("Plaintiffs do not allege any facts explaining how their personal information became less valuable as a result of the breach or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the security breach.").  Accordingly, these allegations remain insufficient to establish Article III standing.

1. **This Court Previously Rejected Plaintiffs' Benefit of the Bargain Theory.**

All Plaintiffs, including Rudolph, continue to allege they would not have shopped at Hudson's Bay stores "had Defendants told [them] that they failed to maintain adequate computer systems and data security practices to safeguard [their] Private Information from theft."  SCC ¶¶ 12-26; *id.* ¶¶ 141-148 ("If Plaintiffs and Class members knew that Defendants would not secure their PI using adequate security, they would not have made purchases at Defendants' stores.").

"In data storage and collection cases, courts have consistently rejected as too tenuous to support an injury-in-fact claims that a defendant's failure to comply with the law, or to prevent an actual data breach, diminished the 'benefit-of-the-bargain.'"  *Rudolph* Opinion at 17 (quoting *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 499, 518 (S.D.N.Y.) (Koeltl, J.) (collecting cases), *vacated in part on other grounds*, 717 F. App'x 12 (2d Cir. 2017)).  In *Rudolph*, this Court

held that because Rudolph had not alleged that the items she purchased were deficient or otherwise did not meet expectations as a result of the breach, Rudolph's claimed "benefit of the bargain" injury could not confer Article III standing.  *Rudolph* Opinion at 17.   Likewise, here, the Second Consolidated Complaint is devoid of any allegations suggesting that Plaintiffs' purchases were deficient as a result of the data security incident.  Thus, Plaintiffs' claimed "benefit of the bargain" theory still does not support Article III standing.

> ## 2.   This Court Previously Rejected Certain Plaintiffs' Requests to Recover for Future Harm on Cancelled Cards.

Plaintiffs Carthan, Knight, Levitt-Raschella, Whitaker, Moss, Sacklow, and Wade seek to recover for future harm even though they admit their credit and debit cards were cancelled after the security incident.  *See* SCC ¶¶ 12, 16, 18, 19, 22, 24, 26, 27 & 97(f).  In *Rudolph*, the Court held that the risk of future harm on a cancelled payment card could not rise to the level required to assert Article III Standing.  *Rudolph* Opinion at 10-11.  The Court noted that because the "card number, the expiration date and the CVV security code of Rudolph's now-canceled card would appear to be worthless to anyone," Rudolph had "not identified any plausible, remaining risk."  *Id*.

Despite this guidance, in the Second Consolidated Complaint, seven named Plaintiffs seek to recover for future harm related to credit card information that lacks any value.  *See* SCC ¶ 27 ("Plaintiffs and the other Class members are also at risk of imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by their Private Information being stolen by criminals in the Security Breach and sold on the black market, including, but not limited to, the extent that Plaintiffs still have their credit or debit cards used at Defendants' stores."); *see also id.* ¶¶ 12, 16, 18, 19, 22, 24, 26 & 97(f).  Like the *Rudolph* complaint, the Second Consolidated Complaint here "does not plausibly describe any threat to [Plaintiffs] that continued after [their] card[s] w[ere] canceled."  *Rudolph* Opinion at 11.

Accordingly, to the extent Plaintiffs' claims are based on a substantial risk of future injury associated with canceled cards, Plaintiffs have not demonstrated Article III standing.

### 3. All Plaintiffs Fail to Allege Substantial Risk of Future Harm as Required by this Court.

The Court also found that Rudolph had not plausibly alleged any claims "premised on a substantial risk of future injury." *Rudolph* Opinion at 12. The Court wrote that "[a] plaintiff has Article III standing if she plausibly alleges future injury, provided that 'the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.'" *Rudolph* Opinion at 7 (quoting *Susan B. Anthony List*, 573 U.S. at 158). The Court recognized that this case involves only payment card data—not "more sensitive data" like a social security number—and therefore Rudolph's claimed losses for time and resources to monitor for future identity theft did not identify a "'substantial risk' of future harm sufficient to demonstrate injury and Article III standing.'" *Rudolph* Opinion at 12.

The claims in the Second Consolidated Complaint similarly fail to allege with specificity a substantial risk of future harm. Like Rudolph, each Plaintiff seeks to establish an Article III injury based on allegations of future time and resources monitoring for identity theft and fraud arising from the theft of their "Private Information." SCC ¶ 6. Plaintiffs define "Private Information" as "credit and debit card records including cardholder name, card number, expiration date, and internal verification code." *Id.* ¶ 1; *see also id.* ¶¶ 38, 41. Plaintiffs do not claim that more sensitive data like social security numbers, birth dates, or account passwords were stolen. The Second Consolidated Complaint states that "[o]nce the hackers obtained [] Private information, they then could leverage that information to additionally obtain personal information, including but not limited to [] address, social security number, and date of birth . . . which can be

used in a multitude of ways to commit additional fraud and identity theft." *Id.* ¶¶ 18, 26. This is merely unsupported speculation.

Put simply, "[t]he ongoing risks posed by access to more sensitive data like social security numbers, birth dates and account passwords are not described here." *Rudolph* Opinion at 12; *see also id.* (quoting *Clapper*, 133 S. Ct. at 1148) ("A 'subjective fear' or 'speculative threat' is not enough to identify injury."); *Sackin*, 278 F. Supp. 3d at 746-47 (distinguishing breach of information "including birth dates and social security numbers" from a breach of "all or a portion of a credit card number," because the former categories of information are "far more sensitive" and pose a heightened risk of identity theft).

Moreover, the Second Consolidated Complaint repeatedly alleges that, based on the theft of "Private Information," Plaintiffs are at risk of "identity theft." SCC ¶¶ 18, 22, 26, 27, 29, 79, 80, 92, 97, 99, 183. But "[a] complaint's use of the broad label 'identity theft' does not substitute for a plausible allegation of substantial risk of injury in the future." *Rudolph* Opinion at 12. The Court should again reject these superficial and conclusory allegations of risk of future injury.

### 4. Plaintiffs Who Fail to Plead Any Attempted Fraudulent Charges Lack Standing.

In *Rudolph*, the Court relied upon the Second Circuit's decision in *Whalen* for the proposition that a plaintiff lacks Article III standing if she neither paid nor was asked to pay for fraudulent charges and failed to allege with specificity the time and expense undertaken to monitor her financial data. *Rudolph* Opinion at 7-8 (citing *Whalen*, 689 F. App'x at 90-91). In *Whalen*, the Second Circuit affirmed the district court's dismissal of claims arising out of a data incident that exposed credit card information and rejected the plaintiff's attempt to establish standing based on attempted and potential future fraudulent purchases, noting that Whalen "never was either asked to pay, nor did pay, any fraudulent charge." *Whalen*, 689 F. App'x at 90.

Just like the plaintiff in *Whalen*, Plaintiffs Harris, Lefkowitz, Dennis Meduri, Giorgina Meduri, Sacklow, and Targum fail to allege any actual or attempted fraudulent charges on their payment cards. *See, e.g.*, SCC ¶ 14 (stating that Plaintiff Harris "expended time and energy" "conducting a personal investigation on the internet, and reviewing her charges at Lord & Taylor," but failing to describe any actual or attempted charges); *see also id.* ¶¶ 17, 20, 21, 24, 25. Nor do they allege that they spent time or money managing fraudulent charges stemming from the security incident. After Hudson's Bay noted this deficiency in its pre-motion letter dated September 9, 2019, Plaintiffs amended the complaint to add allegations about attempted fraudulent charges for two named Plaintiffs, but ***not*** for Plaintiffs Harris, Lefkowitz, Dennis Meduri, Giorgina Meduri, Sacklow and Targum. These Plaintiffs still fail to allege any injury whatsoever arising from the data security incident, instead alleging only that they used payment cards at an "affected" Hudson's Bay store. *See id.* Because these Plaintiffs "never [were] either asked to pay, nor did pay, any fraudulent charge," and have not alleged any time spent dealing with any such charge, they have not alleged a concrete and particular injury as required to establish Article III standing. *See Rudolph* Opinion at 8; *Whalen*, 689 F. App'x at 90.

### 5.   All Plaintiffs Other than Rudolph Fail to Allege Past Harm with the Specificity Required by the *Rudolph* Opinion.

This Court previously found that Rudolph's allegation that she spent $4.68 in gas to drive to Bank of America because she needed a replacement card immediately met *Whalen*'s requirement to plead "specifics" about time and effort expended as a result of a data security incident. *Rudolph* Opinion at 15. (citing *Whalen*, 689 F. App'x at 91).

No other Plaintiff has alleged past harm with the specificity required by the *Rudolph* Opinion. Despite Hudson's Bay identifying this shortcoming in its initial pre-motion letter, Plaintiffs amended their complaint to provide additional detail for only two additional Plaintiffs—

Whitaker and Wade.  But, neither Whitaker, Wade, nor any other Plaintiff alleges a loss of time and money with same the level of specificity as Rudolph does.  As noted above, many of them fail to allege any attempted fraudulent charges at all.  *See* SCC ¶¶ 14, 17, 20, 21, 24, 25.  Plaintiff Targum, for example, claims she previously purchased credit monitoring services, but fails to allege why she should be reimbursed for a service purchased before she even knew about the Hudson's Bay incident.  *Id.* ¶ 25.  Other Plaintiffs also claim damages based on purchasing credit monitoring services after the incident, *id.* ¶¶ 29, 97, but have not explained why the credit monitoring offered by Hudson's Bay for free was insufficient.  *Id.* ¶ 40 (acknowledging that Hudson's Bay offered credit monitoring to impacted individuals for free).

With regard to Plaintiffs Whitaker and Wade, they each fail to allege how their supposed injuries were not self-inflicted or avoidable.  Whitaker claims a fraudulent charge that was "not reimbursed," but fails to claim that she actually paid the charge.  She also provides no detail about any attempt to mitigate those alleged damages by simply contacting her credit card company to dispute the charge.  That would have resulted in the charge being removed from her bill and she would not have had to pay it.  Whitaker also alleges that she "spent time over the course of approximately 30 days and 200 miles in gas, collectively, travelling to the United States Post Office, the bank, and the library to make photocopies of and mail relevant documents, which resulted in Plaintiff Whitaker incurring a cost of approximately $450." SCC ¶ 19.  Likewise, Wade claims that he "spent approximately 42 hours driving over 2,246 miles from Las Vegas, Nevada to a TD Bank office in Jacksonville, Florida and back to Las Vegas to discuss the fraudulent withdrawal of funds and freezing and closing of his account with a TD Bank officer and incurred approximately $550 in costs and expenses for gas, food and other incidental expenses." *Id.* ¶ 26.  But it is not clear from their allegations *why* they had to travel hundreds—or, in Wade's case,

thousands—of miles to close their accounts, rather than receiving a new card in the mail or resolving the issue by phone or at a bank branch closer to their homes.  Rudolph could only get past the previous motion to dismiss because she alleged she needed a new card that day and had to make the drive.  There is no similar allegation for Whitaker or Wade.  Plaintiffs "cannot manufacture standing merely by inflicting harm" upon themselves in contemplation of a possible future harm that is not "certainly impending."  *Clapper*, 133 S. Ct. at 1151.  Accordingly, the claims of all Plaintiffs other than Rudolph should be dismissed for failure to meet the specificity standard set by *Rudolph* and *Whalen*.

### B.     Many Plaintiffs Fail to Plausibly Allege Causation and Damages Under *Twombly* and the Second Consolidated Complaint Must Be Dismissed Pursuant to Rule 12(b)(6).

Even if Plaintiffs could establish standing to sue, they must plead allegations of causation and damages that contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

With respect to Plaintiffs Carthan, Harris, Lefkowitz, Levitt-Raschella, Dennis Meduri, Giorgina Meduri and Wade, their causes of action in the relevant jurisdictions require them to plead an injury caused by Hudson's Bay.  This is true for all of the relevant causes of action.  *See, e.g.*, *Shafran v. Harley-Davidson, Inc.*, No. 07-1365, 2008 WL 763177, at *2 n.2 (S.D.N.Y. Mar. 20, 2008) ("Actual injury is an element of negligence.");[2] *Holmes v. Countrywide Fin. Corp.*, No. 5:08-cv-00205-R, 2012 WL 2873892, at *13 (W.D. Ky. July 12, 2012) (applying New Jersey law and dismissing contract claims in data security case because "[defendant's] actions did not cause

---

[2] *See also Royal Indem. Co. v. King*, 512 F. Supp. 2d 117, 132 (D. Conn. 2007) (Connecticut); *Whritenour v. Thompson*, 145 So. 3d 870, 873 (Fla. Ct. App. 2014) (Florida); *Gardner v. N.J. State Police*, No. 15-8982, 2016 WL 6138240, at *4 (D.N.J. Oct. 21, 2016) (New Jersey); *Calhoun v. Holloway*, No. 4:17-CV-1248, 2017 WL 4124830, at *6 (S.D. Tex. Sept. 18, 2017) (Texas).

any direct financial harm to [plaintiffs]");[3] *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 600 (2d Dep't 2002) (to state a cause of action for unjust enrichment in New York, "a plaintiff must allege that [she] conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating the plaintiff therefor.");[4] *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 150 F. Supp. 143, 159 (E.D. Tex. 1956), *aff'd*, 259 F.2d 398 (5th Cir. 1958) (elements of breach of confidence claim under Texas law include causation and injury);[5] *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (to establish a claim under GBL § 349, a plaintiff must plead that she "suffered injury as a result of the deceptive act").[6]

---

[3] *See also Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 293 (D. Conn. 2017) (Connecticut); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (Florida); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-6060, 2010 WL 2643307, at *11 (S.D.N.Y. June 25, 2010) (New York); *Thymes v. Gillman Companies*, No. CV H-17-2834, 2018 WL 1281852, at *2 (S.D. Tex. Mar. 9, 2018) (Texas).

[4] *See also Holeva v. M & Z Assocs., Inc.*, No. CVNH 97098403, 1998 WL 956359, at *1 (Conn. Super. Ct. Nov. 9, 1998) (Connecticut); *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006) (Florida); *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015) (New Jersey); *Ahmed v. Shah*, No. 01-13-00995-CV, 2015 WL 222171, at *5 (Tex. App. Jan. 15, 2015) (Texas).

[5] The tort of breach of confidence is rarely litigated. Those states that recognize the tort generally do so in the context of copyright infringement or a preexisting confidential relationship such as one between a physician and patient or a lawyer and client, neither of which exists here. *See, e.g., Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 625 (D.N.J. 1996) (in copyright action, dismissing breach of confidence claim for failure to allege a duty or breach); *Fedell v. Wierzbieniec*, 127 Misc. 2d 124, 126, 485 N.Y.S.2d 460, 462 (Sup. Ct. 1985), *aff'd*, 116 A.D.2d 990, 498 N.Y.S.2d 1013 (1986) ("In order to sustain a cause of action for breach of confidence, the court must find as a component, that there was a confidential relationship which had not been waived with respect to matters communicated by the physician."); *see also* Alan B. Vickery, Breach of Confidence: An Emerging Tort, 82 Colum. L. Rev. 1426, 1427–36 (1982) (collecting cases and noting existence of preexisting confidential relationship between the parties).

[6] *See also Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn.), *aff'd*, 666 F. App'x 84 (2d Cir. 2016) ("To state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce.") (Connecticut); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (to state a claim under the FDUTPA, a consumer must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.") (Florida); *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) ("To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff.") (New Jersey); *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 890, 894 (W.D. Tex. 2005) (to recover under the TDTPA, Plaintiffs must establish that: (1) they were a consumer of Hudson's Bay goods or services; (2) Hudson's Bay committed false, misleading, or deceptive acts in connection with the sale of goods or services; and (3) such acts caused actual injury) (Texas).

Moreover, Plaintiffs' own allegations emphasize the unique challenge involved in tying their alleged injury to Hudson's Bay, stating that "[a] number of data breaches have occurred at large retailers all over the country in recent years, including Target, Home Depot, Eddie Bauer, Sally Beauty, Harbor Freight Tool, and Kmart, among many others" and that "[e]ach of these massive data breaches involved malware placed on the merchant's POS system."   SCC ¶ 52. Plaintiffs do nothing to tie their alleged damages to this particular incident as opposed to another.

### 1.    Certain Plaintiffs Fail to Plausibly Allege Any Injury Caused by the Hudson's Bay Payment Card Security Incident.

Plaintiffs Harris, Lefkowitz, Dennis Meduri, Giorgina Meduri, Sacklow and Targum fail to plausibly allege any injury caused by the Hudson's Bay payment card security incident.  Courts in this District have dismissed complaints arising from data security incidents where causation and damages were not plausible.  *See, e.g.*, *Willey v. J.P. Morgan Chase, N.A.*, No. 09–CV-1397 (CM), 2009 WL 1938987, at *10 (S.D.N.Y. July 7, 2009) (concluding plaintiff failed to state a claim for negligence, negligence per se, or breach of implied contract because plaintiff "has not alleged that his or any class member's information has actually been misused. Willey's claims for expenses related to credit monitoring, anxiety, emotional distress, and loss of privacy all arise due to the probability that his data *might* have been misused.  Because this does not rise to the level of actual damages, the state law claims fail to allege actual damages and must be dismissed." (emphasis added)); *Shafran*, 2008 WL 763177, at *3 (dismissing plaintiff's tort claims pursuant to 12(b)(6) based on theft of personal information and stating,  "Plaintiff's alleged injuries are solely the result of a perceived and speculative risk of future injury that may never occur. . . .  As damages are an essential element of each of plaintiff's claims, plaintiff's claims fail as a matter of law.").

Plaintiffs Dennis Meduri and Giorgina Meduri allege only that they used credit and debit cards at Hudson's Bay's stores.  SCC ¶¶ 20, 21.  They do not allege any fraudulent charges or

attempted fraudulent charges on those cards, or any other injury whatsoever. *Id.* These bare bones allegations, without even an attempt to allege facts supporting some injury, fail to plausibly state a claim under *Twombly*.

Plaintiffs Harris, Lefkowitz, Sacklow and Targum similarly fail to allege any actual or attempted fraudulent charges. They instead allege they spent time monitoring their accounts or statements for fraudulent activity following the incident. *See, e.g., id.* ¶¶ 14, 17, 24, 25. As discussed above, these allegations are insufficient to allege standing, and they are also insufficient to allege the injury and causation elements of their claims. These plaintiffs' allegations are devoid of any facts connecting the need to monitor their accounts with the Hudson's Bay data security incident, and are especially inadequate in light of their allegations about the ubiquity of similar incidents. *Id.* ¶ 52. Although Plaintiff Targum alleges that she incurred a cost to renew her credit monitoring services, as discussed *supra* in Section V.A.6, she fails to explain why the credit monitoring offered by Hudson's Bay for free was insufficient.

These Plaintiffs, therefore, fail to allege sufficient facts linking their alleged injuries to the data security incident at Hudson's Bay or to show any resulting injury required to state a claim for any of their causes of action.

> ## 2. Plaintiffs Carthan and Wade Cannot Plausibly Allege They Suffered Harm Where They Experienced Fraud on Payment Cards Not Used at Hudson's Bay's Stores.

Plaintiffs Carthan and Wade fail to allege plausible facts connecting their injuries to the payment card security incident at Hudson's Bay, as opposed to any of the number of other breach incidents referenced in the Second Consolidated Complaint. Plaintiffs Carthan and Wade do not even allege that cards they replaced were used at the stores at issue here. *See* SCC ¶ 12 (alleging that Carthan used a TD Bank debit card at Saks and Lord & Taylor and seeking recovery for time she spent "contacting her banks and credit card companies" and "traveling to her banks"); *id.* ¶ 26

(alleging that Wade used a Bank of America debit card at Saks and Lord & Taylor and seeking recovery for alleged fraud on his TD Bank account and BBVA Compass account). Wade claims that, to address the withdrawal of money from his TD Bank account, he drove 2,246 miles from Las Vegas, Nevada to a TD Bank office in Jacksonville, Florida. *Id.* ¶ 26. The alleged compromise at Hudson's Bay stores of Wade's Bank of America debit card certainly had nothing to do with alleged fraud on his debit cards issued by TD Bank and BBVA Compass.

Plaintiffs Carthan and Wade, therefore, fail to assert a connection between the accounts on which they allegedly experienced fraud and the security incident at Hudson's Bay, or negate the possibility that these charges are related to another set of circumstances. It is not plausible that fraud relating to accounts not connected to a Hudson's Bay store was caused by the security incident, especially given the prevalence of data breaches at other retailers. *See id.* ¶ 52. Thus, these allegations cannot plausibly establish causation and damages.

### 3. Plaintiff Levitt-Raschella Attempts to Recover For Fraud That Could Not Possibly Have Been Caused by the Hudson's Bay Incident.

Plaintiff Levitt-Raschella seeks to recover for fraud that could not possibly have been caused by the Hudson's Bay incident. Levitt-Raschella alleges that she used a TD Bank Visa debit card at a Saks OFF 5TH store and a Lord & Taylor store, and that, later, an account at another bank, an AT&T account, and several credit cards were opened in her name using her social security number and birth date. SCC ¶ 18. She also alleges that her Instagram and Amazon accounts were compromised. *Id.* But the Second Consolidated Complaint sets forth no facts that would suggest that the security incident at Hudson's Bay could possibly have compromised her social security number, birthdate, or passwords for her Instagram or Amazon accounts. Instead, the Second Consolidated Complaint repeatedly states that the only information potentially compromised here was "cardholder name, card number, expiration date, and internal verification code." *Id.* ¶¶ 1, 41,

79. Levitt-Raschella alleges without detail that, once hackers have her personal information, they can "leverage that information to additionally obtain personal information, including but not limited to her address, social security number and date of birth," and claims without support that a hacker needs only "a billing address and the last four digits of a credit card number" to access an iCloud account. *Id.* ¶¶ 18, 80. But she fails to allege that she had an iCloud account that could be accessed with information compromised here or that there was any information in any such iCloud account. These wild allegations, which lack any factual basis whatsoever, are a far cry from the plausibility standard set forth in *Twombly*; as such, Plaintiff Levitt-Raschella fails to plausibly allege that these events were caused by the Hudson's Bay incident.

### 4. Certain Plaintiffs Cannot Plausibly Allege They Suffered Harm Due to Receipt of Fraudulent Emails.

Plaintiffs Carthan and Wade apparently seek to recover damages from Hudson's Bay based on receipt of "fraudulent emails seeking personal information since the Security Breach." SCC ¶¶ 12, 26. But these Plaintiffs plead no facts to distinguish these emails from everyday spam emails— let alone any facts linking the emails to the security incident. The Second Consolidated Complaint is devoid of any allegation that Carthan's or Wade's email addresses were compromised in the security incident, and Plaintiffs cannot explain how the security incident could have led to receipt of fraudulent email messages. Plaintiffs also do not plausibly plead cognizable damages from the receipt of fraudulent emails. These stray allegations fall far short of containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("Cherny has not pled sufficient injury to state a claim for relief based on receiving spam [emails].").

**C.** **Three of Plaintiffs' Statutory Causes of Action Must Be Dismissed Pursuant to Rule 12(b)(6).**

**1.** **The New Jersey Data Breach Notification Statute and Nevada Deceptive Trade Practices Act Do Not Permit a Private Right of Action and Should Be Dismissed Under Rule 12(b)(6).**

In Counts XII and XVI, Plaintiffs Carthan and Moss assert alleged violations of New Jersey's Consumer Security Breach Disclosure Act, N.J. Stat. Ann. § 56:8-163, et seq., and the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. Ann. § 598.0903, et seq., respectively.  SCC ¶¶ 227-33, 269-76.  However, neither statute provides a private right of action.  At least two federal courts have found that New Jersey's law does not create a private right of action.  *Holmes v. Countrywide Fin. Corp.*, No. 5:08-CV-00205-R, 2012 WL 2873892, at *13 (W.D. Ky. July 12, 2012) (dismissing plaintiffs' claim that defendant violated New Jersey's data breach notification law because "[i]nsofar as the Court can tell, § 56:8–163 does not provide a private right of action for citizens to enforce its provisions"); *Torres v. Wendy's Int'l, LLC*, No. 6:16-CV-210-ORL-40DCI, 2017 WL 8780453, at *6 (M.D. Fla. Mar. 21, 2017) (stating that "[a] statute does not give rise to a civil cause of action unless the language of the statute explicitly so provides, or it can be determined by clear implication," and concluding that N.J. Stat. Ann. § 56:8-163 "does not create a private right of action for citizens to enforce its provisions").  Similarly, there is no private right of action under the NDTPA.  *See, e.g.*, *Bayer Healthcare Pharm. Inc. v. Watson Pharm., Inc.*, No. 2:07-CV-01472-KJD-GWF, 2011 WL 13247564, at *1 (D. Nev. Mar. 31, 2011) (citation omitted) (dismissing NDTPA claim, holding that "there is no private right of action under the DTPA[.]").   Plaintiffs Carthan and Moss should not be permitted to create a private right of action where none exists and Counts XII and XVI must be dismissed.

##### 2. The Georgia Fair Business Practices Act Invoked by Plaintiffs Bars Class Actions and Should Be Dismissed Under Rule 12(b)(6).

In Count XVII, Plaintiff Whitaker asserts a claim for an alleged violation of the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390, *et seq*., on behalf of a putative Georgia subclass. SCC ¶¶ 277-89. However, the GFBPA prohibits class actions. *See* O.C.G.A. § 10-1-399 ("Any person who suffers injury or damages as a result of . . . consumer acts or practices in violation of this part. . . may bring an action individually, but not in a representative capacity. . . ."); *Honig v. Comcast of Georgia I, LLC*, 537 F. Supp. 2d 1277, 1289 (N.D. Ga. 2008) ("[T]he GFBPA expressly prohibits consumer class actions."). Courts have routinely found that claims brought under this subsection on behalf of a putative class must be dismissed. *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 993 (N.D. Cal. 2016) (dismissing GFBPA claims, holding that "[t]he GFBPA indisputably forecloses claims brought 'in a representative capacity.'") (citing Ga. Code. Ann. § 10–1–399(a)); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 799 (E.D. Mich. 2019) (same). Therefore, Plaintiffs' claims pursuant to the GFBPA should be dismissed.

## VI. CONCLUSION

For each of these reasons, the Court should dismiss Plaintiffs' Second Consolidated Complaint with prejudice as to all Plaintiffs but Rudolph, directing an amended Complaint that only includes claims of Plaintiff Rudolph that survived this Court's previous ruling.

Dated:  November 18, 2019

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Kenneth I. Schacter*
Kenneth I. Schacter
Jawad Muaddi
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

-and-

Gregory T. Parks (admitted pro hac vice)
Ezra D. Church (admitted pro hac vice)
Kristin M. Hadgis (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

*Attorneys for Defendants Hudson's Bay Company,*
*Saks Fifth Avenue LLC, Saks & Company LLC,*
*Saks Incorporated, and Lord & Taylor LLC*