**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HUDSON'S BAY COMPANY DATA SECURITY INCIDENT CONSUMER LITIGATION | Case No. 1:18-cv-08472 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

III.    TERMS OF THE PROPOSED SETTLEMENT ................................................. 6

        A.      The Class Definition ................................................................... 7

        B.      Monetary Relief .......................................................................... 7

        C.      Release Of Claims....................................................................... 8

        D.      Notice, Claims Process, And Settlement Administration ........................................................ 9

        E.      Costs, Fees, and Representative Awards ................................... 9

IV.     ARGUMENT ...................................................................................................... 9

        A.      The Proposed Settlement Is Fair, Reasonable, and Adequate ................................. 9

                1.      Standard for Preliminary Approval of Class Action Settlement.............. 10

                2.      The *Grinnell* and Amended Rule 23(e) Factors for Settlement Approval Are Satisfied................................................................... 12

                        a.      Procedural Fairness - Rule 23(e)(2)(A-B) ................................... 12

                        b.      Substantive Fairness - Rule 23(e)(2)(C-D) and Remaining *Grinnell* Factors................................................................... 13

                                i.      Rule 23(e)(2)(C)(i) / Grinnell Factors Nos. 1, 4, 5 and 6 - The Costs, Risks, and Delay of Trial and Appeal............. 14

                                ii.     Rule 23(e)(2)(C)(ii) - Effectiveness of Proposed Method of Distributing Relief .......................................... 16

                                iii.    Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees ............... 17

                                iv.     Rule 23(e)(2)(C)(iv) - There Are No Agreements Required To Be Identified Under Rule 23........................................ 18

                                v.      Rule 23(e)(2)(D) - Class Members Are Treated Equitably ....................................................................... 18

                                vi.     *Grinnell* Factor No. 2 - Settlement Class Members' Reaction Will Likely Be Positive ..................................... 18

i

vii.  *Grinnell* Factor No. 3 - The Stage of the Proceedings and the Amount of Discovery Completed Warrants Preliminary Approval ...................................................................... 18

viii. *Grinnell* Factor No. 7 - Whether Defendants Can Withstand A Substantially Greater Judgement .................................. 19

ix.  *Grinnell* Factor Nos. 8-9: Range of Reasonableness in Settlement Fund ................................................................ 20

B.  The Rule 23(a) Factors Are Met .......................................................... 21

1.  Joinder of All Members Is Impracticable ................................. 21

2.  Questions of Law or Fact Common to the Class Exist ............................ 21

3.  Plaintiffs' Claims Are Typical of the Claims of the Class........................ 22

4.  Plaintiffs Will Fairly and Adequately Protect Class Interests .................. 23

C.  Settlement Class Members Are Readily Identifiable and Ascertainable ............. 24

D.  The Settlement Class Satisfies Rule 23(b)(3) ...................................... 24

1.  Common Questions Predominate Over Individual Issues ........................ 25

2.  A Class Action Is Superior to Alternative Methods of Adjudication ....... 26

E.  The Proposed Class Notice and Notice Program Are Reasonable and the Best Notice Practicable ................................................................. 27

F.  Class Counsel Should Be Appointed As Settlement Class Counsel..................... 28

V.  CONCLUSION.......................................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                              **Page(s)**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
271 F. App'x 41 (2d Cir. 2008) .................................................................................27

*Adkins v. Facebook, Inc.*,
No. C 18-05982 WHA, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ................................21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ........................21

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................15

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) .....................................................................................25

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..............................................................................................25

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)...............................................................................21

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................19, 20

*In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*,
Case No. 1:17-cv-01035-WMR (N.D. Ga.), ECF Nos. 187-1 ...........................................20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)...........................................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000).......................................................................................23

*Baudin v. Res. Mktg. Corp., LLC*,
No. 1:19-cv-386, 2020 WL 4732083 (N.D.N.Y. Aug. 13, 2020).........................................23

*Bokelman v. FCH Enters., Inc.*,
Case No. 1:18-cv-00209-RJB-RLP (D. Haw.), ECF Nos. 56-2 ..........................................20

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ....................22, 24

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013)......................................................................................20

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................................................................11

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................16

*Dolmage v. Combined Ins. Co. of Am.*,
    No. 14 C 3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017) ..................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)............................11, 16

*In re Flag Telecom Holdings*, Ltd. Sec. Litig.,
    574 F.3d 29 (2d Cir. 2009)............................................................................................................22

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) .................................................................................16

*Heerwagen v. Clear Channel Commc'ns*,
    435 F.3d 219 (2d Cir. 2006)..........................................................................................................25

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)............................................................................................................24

*Jankowski v. Castaldi*,
    No. 01CV0164(SJF)(KAM), 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006) ...........................26

*Kelen v. World Fin. Network Nat'l Bank*,
    302 F.R.D. 56 (S.D.N.Y. 2014) .............................................................................................23, 27

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................................................................16

*McMorris v. Carlos Lopez & Assocs., LLC*,
    995 F.3d 295 (2d Cir. 2021)..........................................................................................................22

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)..........................................................................................................10

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)..........................................................................................13

*In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. Jan. 28, 2019).............................................................12, 18, 20, 24

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ..................................16

*Rapoport-Hecht v. Seventh Generation, Inc.*,
    No. 14-CV-9087 (KMK), 2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ..............................25

*Rosenfeld v. Lenich*,
    No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ................ *passim*

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) .........................................19

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Ci.v 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................26

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .................19, 24, 26

*Velez v. Novartis Pharm. Corp.*,
    No. 04 Civ. 09194(CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...............................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).........................................................10, 11

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).............................................16, 17

*Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)......................13

## Other Authorities

Fed. R. Civ. P. 23(a)(1) ...........................................................21

Fed. R. Civ. P. 23(a)(2) ...........................................................21

Fed. R. Civ. P. 23(a)(4) ...........................................................23

Fed. R. Civ. P. 23(b)(3) .........................................................24, 26

Fed. R. Civ. P. 23(c)(2)(B) ........................................................27

Fed. R. Civ. P. 23(e)(2) .........................................................10, 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) .....................................................17

Fed. R. Civ. P. 23(e)(2)(C)(iv).......................................................18

Fed. R. Civ. P. 23(e)(2)(D) ......................................................14, 18

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................................................28

Herbert B. Newberg, *Newberg on Class Actions* § 13.44 (5th ed. 2020) ...............................10, 11

Plaintiffs Debbie Carthan, Bernadette Beekman, Julia A. Harris, Cassondra Joseph, Margo Kyler Knight, Jane Lefkowitz, Leslie Levitt-Raschella, Kelly Whitaker (formerly known as Kelly McGurn), Dennis Meduri, Giorgina Meduri, Greta Moss, Alexandria Rudolph, Jeanne Sacklow, Erika Targum, and Mark Wade (collectively, "Plaintiffs") submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Motion").[1]

## I.   INTRODUCTION

Plaintiffs commenced this class action lawsuit against defendants Hudson's Bay Company ULC ("HBC") (formerly known as Hudson's Bay Company), Saks Incorporated, Saks Fifth Avenue LLC, Saks & Company LLC, and Lord & Taylor LLC (collectively, "Defendants") arising out of Defendants' alleged failure to prevent a breach of their customers' personal financial data including credit and debit card records (including cardholder name, card number, expiration date, and internal verification code) ("Personal Information").[2]

After almost three years of vigorous litigation, the Parties[3] have agreed to a settlement that provides substantial monetary benefits to the Settlement Class.  Settlement Class Members who provide sufficient proof of a Payment Card transaction during the Exposure Window and who spent time monitoring their Payment Card statements or took other steps in response to the Security Incident are entitled to a $30 payment.  *See* Settlement Agreement ¶ 2.1.2.  If Settlement Class Members have sufficiently documented unreimbursed additional out-of-pocket losses stemming from the Security Incident, they may be eligible for a payment capped at $5,000 (which includes

---

[1] On May 26, 2021, Plaintiffs filed a pending, unopposed motion seeking a five-page extension (ECF No. 172) to Plaintiffs' instantly-filed Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Memorandum"). If the Court grants the motion to add additional pages, the instantly-filed Memorandum would abide by the page requirement. If the Court decides to deny the motion seeking the page extension, Plaintiffs respectfully request leave to file the Memorandum in accordance with the Court's 25-page requirement.
[2] *See* Second Consolidated Amended Class Action Complaint ("SAC"), ECF No. 137.
[3] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement, attached as Exhibit A to the Joint Declaration of Janine L. Pollack and Timothy J. Peter (the "Joint Decl.") submitted herewith.

the $30 due for time spent dealing with the effects of the Security Incident). *See id.* ¶ 2.1.3. The maximum amount to be paid for all claims on behalf of Defendants is $2,000,000. *See id.* ¶ 2.2.5. In the event that the total amount of Approved Claims exceeds this amount, the payment for each Approved Claim will be reduced *pro rata*. *See id.* Furthermore, the costs of notice and administration up to $250,000,[4] and any Service Awards or attorneys' fees, costs, and expenses that may be awarded will be paid by HBC separately from the monetary refunds paid to Settlement Class Members. *See id.* ¶¶ 2.4, 8.1, 8.2, 8.4.[5] Taking all amounts into account that will be paid on behalf of Defendants upon approval by the Court, the Settlement amount is $3,665,000.

The Settlement Agreement also provides significant structural relief to better protect HBC's customers' Personal Information in the future. This includes HBC agreeing to, *inter alia*: (1) hire a qualified security assessor to assess compliance with data security standards on an annual basis; (2) conduct annual testing of potential vulnerabilities in protection of Payment Card information and remediate any such vulnerabilities; and (3) maintain written records of security programs, policies and procedures. *See id.* ¶ 2.5.

The proposed Settlement, which was reached with the assistance of the Honorable Diane Welsh (Ret.) as a mediator, is fair, reasonable, and falls within the range of permissible approval. The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. *See* Joint Decl. ¶¶ 13, 15 (defined below). Moreover, the Parties contested this Litigation vigorously for almost two years, engaging in motion practice and discovery, and have ample knowledge of the legal claims and defenses, the

---

[4] In the event the costs of Settlement Administration exceed $250,000, the excess costs will be borne by Plaintiffs' Counsel. *See id.* ¶ 2.4.

[5] The Settlement Agreement permits Plaintiffs to petition the Court for an award of reasonable attorneys' fees, costs, and expenses up to the amount of $1,400,000, *see id.* ¶ 8.2, as well as for a Service Award payment to each of the 15 Representative Plaintiffs in the amount of one thousand dollars ($1,000) per person, all of which is to be paid separately by Defendant HBC and not out of the monetary relief afforded to the Settlement Class. *See id.* ¶¶ 8.1, 8.4.

risks presented, and the value achieved by the proposed Settlement.  *See id.* ¶¶ 19, 22-24.  The Settlement Agreement is an exceptional result for the Settlement Class because, despite the significant risks of further litigation, Plaintiffs secured substantial monetary relief for the Settlement Class as well as structural relief that will protect Settlement Class Members and other HBC customers in the future.

Accordingly, Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate.  For the Court's review, Class Counsel has filed a true and correct copy of the Settlement Agreement, attached as Exhibit A to the Joint Decl., which includes a proposed Order Granting Preliminary Approval of Class Settlement (the "proposed Preliminary Approval Order"). *See* Settlement Agreement, Ex. E.  Entry of the proposed Preliminary Approval Order will, among other things: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class for settlement purposes only; (3) appoint Plaintiffs as Representative Plaintiffs; (4) appoint Timothy J. Peter of Faruqi & Faruqi, LLP and Janine L. Pollack of Calcaterra Pollack LLP as Settlement Class Counsel; (5) establish procedures for giving notice to members of the Class; (6) approve forms of notice to members of the Class; (7) mandate procedures and deadlines for class exclusion requests and objections; (8) appoint Analytics Consulting LLC as the Settlement Administrator; (9) enter a preliminary injunction prohibiting the Class from filing, prosecuting, continuing, intervening in, or participating (as class members or otherwise) in any other lawsuit or proceeding arising out of the Released Claims pending final approval of the Settlement Agreement; and (10) set a date, time, and place for a Final Approval Hearing.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 2018, the action styled *Beekman v. Lord & Taylor, LLC*, Case No. 1:18-cv-00521-was filed in the United States District Court for the District of Delaware (the "*Beekman* Action") against Lord & Taylor LLC.  On October 5, 2018, Lord & Taylor LLC filed its Motion

to Transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  The Motion to Transfer was granted on April 25, 2019, transferring the *Beekman* Action on May 9, 2019 as Case No. 1:19-cv-04199.  On April 11, 2018, the action styled *Sacklow, et al. v. Saks Incorporated*, Case No. 3:18-cv-00360 was filed in the United States District Court for the Middle District of Tennessee (the "*Sacklow* Action") against Saks Incorporated.  On November 6, 2018, Saks Incorporated filed its Motion to Transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  The Motion to Transfer was granted on May 6, 2019, transferring the *Sacklow* Action on May 9, 2019 as Case No. 1:19-cv-04186.  On June 8, 2018, the action styled *Rudolph v. Saks & Company LLC*, Case No. 2:18-cv-05107 was filed in the United States District Court for the Central District of California (the "*Rudolph* Action"), against Saks & Company LLC. Other cases against Defendants were filed as well.  On September 12, 2018, Plaintiff Alexandria Rudolph and Saks & Company LLC jointly stipulated to transfer the *Rudolph* Action to the Southern District of New York.  The joint stipulation was granted on September 13, 2018, transferring the *Rudolph* Action on September 18, 2018 as Case No. 1:18-cv-08472.  Defendants moved to dismiss the *Rudolph* Action, and the Court issued an order on May 7, 2019 granting in part and denying in part that motion.

On August 9, 2019, the plaintiffs in the *Beekman* Action, *Sacklow* Action, *Rudolph* Action, and all other similar data breach actions against Defendants filed a Consolidated Class Action Complaint in the Southern District of New York in the newly styled action *In re Hudson's Bay Company Data Security Incident Consumer Litigation*, Case No. 1:18-cv-08472 against Defendants (the "Litigation"), with the following plaintiffs: Bernadette Beekman, Debbie Carthan, John Cona, Wendy Haggarty, Julia A. Harris, Cassondra Joseph, Margo Kyler Knight, Jane Lefkowitz, Leslie Levitt-Raschella, Kelly Whitaker (formerly known as Kelly McGurn), Dennis

Meduri, Georgina Meduri, Greta Moss, Larry Payne, Alexandria Rudolph, Jeanne Sacklow, Hope Tafet, Erika Targum, Latusha Vains and Mark Wade.  The SAC was filed on September 20, 2019, removing plaintiffs Bernadette Beekman, John Cona, Hope Tafet, Latusha Vains, and Larry Payne.[6]  The SAC asserts claims against Defendants for negligence, breach of implied contract, unjust enrichment/quasi-contract, breach of confidence, and violations of a number of state consumer fraud acts[7] arising out of the "Security Incident" (defined below).

On November 18, 2019, Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  *See* ECF No. 148.  The parties fully briefed the motion to dismiss.  *See* ECF Nos. 151, 152.  Prior to the Court issuing a decision on the motion to dismiss, in November 2019, the parties agreed to attend a mediation session.  *See* Joint Decl. ¶ 12.  Prior to the mediation, Defendants produced, and Class Counsel reviewed, a substantial number of documents relating to the Security Incident, including a Payment Card Industry Forensic Investigation Report ("PFI Report"), which outlines Defendants' terminals affected by the malware according to the investigator; correspondence between Defendants and various financial institutions; internal communications of Defendants related to the incident and data security measures; and relevant insurance policies.  *See id*.  Plaintiffs also produced their pertinent documents.

On March 11, 2020, the Parties participated in a full-day, in-person mediation session with the Honorable Diane Welsh (Ret.).  *See id.* ¶ 13.  The mediation ended with a tentative agreement in principle that was later memorialized in a formal Memorandum of Understanding dated May 26, 2020.  As a result of those negotiations, the Parties agreed to settle pursuant to the terms set

---

[6] Plaintiff Beekman, removed from the SAC in error, is now included in the Settlement.

[7] The Arizona Consumer Fraud Act, California Unfair Competition Law, California Consumer Legal Remedies Act, California Customer Records Act, Connecticut's Unfair Trade Practices Act, Florida Deceptive and Unfair Trade Practices Act, Illinois Consumer Fraud Act, New Jersey Consumer Fraud Act, New Jersey Consumer Security Breach Disclosure Act, New York Consumer Law for Deceptive Acts and Practices, Texas Deceptive Trade Practices and Consumer Protection Act, Nevada Deceptive Trade Practices Act, and Georgia Fair Business Practices Act.

forth in the Settlement Agreement, which was negotiated for many months. *See id*. On April 21, 2020, the parties advised the Court of the agreement in principle and requested that the Court defer any ruling on the pending motion to dismiss. *See id*.; ECF No. 156.

On August 2, 2020, Le Tote, Inc., owners of Lord & Taylor, LLC, filed voluntary petitions for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia. This resulted in a stay of proceedings of the Litigation as Lord & Taylor, LLC was a defendant therein. By Order entered March 9, 2021, the Bankruptcy Court issued an Order lifting the stay for the purpose of permitting finalization of the instant Settlement. *See In re: Le Tote, Inc., et al.*, Case No. 20-33332 (KLP), ECF No. 1015 (E.D. Va. March 9, 2021). Thereafter, the Parties advised the Court that the stay had been lifted and they were prepared to proceed with the Settlement. By Order dated March 26, 2021, the Court ordered that the stay was lifted and the Parties should file their pre-motion letter to proceed with their motion for preliminary approval of the Settlement. *See* ECF No. 167. This Motion followed.

Throughout the Litigation, Plaintiffs, by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this case, including, but not limited to, a review and analysis of Defendants' documents and data, and extensive research and assessment of the claims at issue. *See id*. ¶¶ 12, 22. Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement, as it affects all Parties, including Settlement Class Members. *See id*. Plaintiffs and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable and adequate, and this Settlement is in the best interest of the Settlement Class. *See id*. ¶¶ 12, 22-24.

**III.   TERMS OF THE PROPOSED SETTLEMENT**

The Parties reached agreement on the proposed Settlement Agreement after spirited debate

by counsel over the legal and factual issues raised in the case, with the assistance of the Honorable Diane Welsh (Ret.), and then extensive arm's-length negotiations over some 11 months, including while the bankruptcy stay was pending, to finalize the formal Settlement Agreement and exhibits. *See id.* ¶ 13.  The key terms of the Settlement are as follows:

### A.    The Class Definition

The proposed Class consists of: All persons who used their credit, debit or prepaid debit card (other than a Saks First branded credit card) at a Saks, Saks OFF 5TH, or Lord & Taylor store in the United States and in U.S. territories from May 1, 2017 to April 1, 2018 (the "Exposure Window").[8]

### B.    Monetary Relief

If the Settlement is approved, Settlement Class Members will be eligible to receive a monetary payment depending on whether they elect to file a "Tier 1" or "Tier 2" claim:

- **Tier 1** - Settlement Class Members who submit a valid Tier 1 claim shall receive $30 if the Settlement Claim is determined to be an Approved Claim by the Settlement Administrator.  A Tier 1 claim requires the Settlement Class Member to submit a Claim Form that:

    (i) either (a) via online submission, provides proof of a Payment Card transaction (via receipt, Payment Card statement, or other proof of transaction) during the Exposure Window; or (b) by hard copy mail, provides a written statement under penalty of perjury that they made a transaction at a Saks, Saks OFF 5TH, or Lord & Taylor store in the U.S., or the U.S. territories, using a Payment Card during the Exposure Window together with the store location (city/state), the approximate date of the transaction, the last four digits of the Payment Card number used, and a general description of what they bought or returned; and

    (ii) indicates on the Claim Form in the space provided that they spent time monitoring Payment Card statement(s) or taking other steps to address the Security Incident[.]

---

[8] Excluded from the Class are Defendants, any of their parents or subsidiaries, any entities in which they have a controlling interest, as well as their current and former officers, directors, corporate affiliates, legal representatives, heirs, predecessors, successors, and assigns.  Also excluded are any judges to whom this case is assigned as well as his or her judicial staff and immediate family members.  *See* Settlement Agreement ¶ 1.6.

Tier 1 claimants shall receive $30 if the Settlement Claim is determined to be an Approved Claim by the Settlement Administrator.  Regardless of the number of affected Payment Cards for any given Settlement Class Member, only one (1) $30 payment will be issued per Settlement Class Member under Tier 1.

- **Tier 2** - Settlement Class Members can instead choose to submit a Tier 2 claim via online submission, which requires providing both proof of a Payment Card transaction at a Saks, Saks OFF 5TH, or Lord & Taylor store in the U.S., or the U.S. territories (via receipt or Payment Card statement or other proof of transaction) during the Exposure Window and documented proof of extraordinary out-of-pocket fraud costs that were not reimbursed, including: (1) costs and expenses spent addressing identity theft or fraud; (2) losses caused by restricted access to funds (e.g., costs of taking out a loan, ATM withdrawal fees); (3) late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees; (4) unauthorized charges on credit or debit cards; (5) unauthorized withdrawal of funds from bank accounts (e.g., checking, savings and money market); and (6) other documented losses that were not reimbursed.

  Tier 2 claimants shall receive the amount of those documented costs, plus $30 for time spent dealing with the effects of those costs, up to a cap of $5,000 if the Settlement Claim is determined to be an Approved Claim by the Settlement Administrator.  For Tier 2 only, Settlement Class Members may submit a Claim Form for each separate card included in the Class definition, but the total payment to any particular Settlement Class Member may not exceed $5,000.

*See* Settlement Agreement ¶¶ 2.1.2, 2.1.3.  Defendant HBC shall fund payments of the above Approved Claims up to $2,000,000 (the "Aggregate Cap").  *See id.* ¶ 2.2.5.  In the event that the total sum of the Approved Claims exceeds the Aggregate Cap, the amount of payment for each Approved Claim will be reduced by a *pro rata* percentage such that Defendant HBC's liability to fund payments under this paragraph does not exceed the Aggregate Cap.  *See id.*

### C.    Release Of Claims

In exchange for the foregoing relief, Settlement Class Members who do not opt out of the Settlement will release Defendants and all Released Persons from all Released Claims asserted in this Litigation.  *See id.* ¶¶ 1.21, 1.22.

### D.      Notice, Claims Process, And Settlement Administration

Defendants have agreed to bear the costs of the Settlement Administrator providing notice[9] and administration of the Settlement, including processing Claim Forms and requests for exclusion, up to $250,000.  *See id.* ¶ 2.4.  Any such costs in excess of $250,000, which are not anticipated, will be borne by Plaintiffs' Counsel.  *See id.*

### E.      Costs, Fees, and Representative Awards

Class Counsel will petition the Court for an award of reasonable attorneys' fees, costs, and expenses up to the amount of $1,400,000, as approved by the Court, the payment of which by Defendant HBC is separate from and in addition to the monetary relief afforded to the Settlement Class Members.  *See id.* ¶¶ 8.1, 8.2.  Similarly, Class Counsel will petition the Court for a Service Award to each of the 15 Representative Plaintiffs in the amount of one thousand dollars ($1,000) per person, for their service on behalf of the Settlement Class, all of which Service Awards are to be paid separately by Defendant HBC and not out of the monetary relief afforded to the Settlement Class.  *See id.* ¶¶ 8.1, 8.4.  As such, the full $2,000,000 will be available to the Settlement Class for Approved Claims.  The Settlement Agreement and Plaintiffs' support of the Settlement are not conditioned upon the Court's approval of the above amounts.  *See id.* ¶¶ 8.3, 8.5.

## IV.    ARGUMENT

### A.      The Proposed Settlement Is Fair, Reasonable, and Adequate

This Court should approve the Settlement.  The Settlement is the result of extensive arm's-length negotiations among the Parties and their counsel and was informed by the exchange of significant information through the settlement process and the assistance of an experienced

---

[9] Defendants have separately provided notification to the Attorney General of the United States, and to the attorneys general for all U.S. states, commonwealths, districts and territories in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b).  *See* ECF No. 171.

mediator, Honorable Diane M. Welsh (Ret.).  *See* Joint Decl. ¶¶ 13, 15.  The Settlement provides considerable monetary benefits to Class Members as well as favorable changes to Defendants' data security measures.  The Settlement compares favorably to previous data breach settlements in light of, *inter alia*, the monetary compensation obtained when weighed against the risks associated with continued litigation.  Prior to reaching a resolution, Class Counsel litigated this case by utilizing the advice of a leading data security expert as well as experienced class action attorneys, and in doing so, gathered ample information to assess the strengths and weaknesses of the Parties' positions.  Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2).  *See also* Joint Decl. ¶¶ 19, 22-24.

### 1.  Standard for Preliminary Approval of Class Action Settlement

Courts encourage, and public policy favors, the compromise and settlement of class actions.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *see also* Herbert B. Newberg, *Newberg on Class Actions* ("Newberg") § 13.44 (5th ed. 2020) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals . . . . This preference for settlement underscores the presumption, discussed in the succeeding section, that courts will presume a proposed settlement to be fair in the presence of certain factors.") (footnotes omitted).  It is within the Court's discretion to approve a proposed class action settlement upon determination that the proposed settlement is fair, reasonable, and adequate.  *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009).

Preliminary approval is the first step in the settlement process.  It may be granted if the court finds the agreement is fair, both procedurally and substantively, under Rule 23(e).  *See*

*Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021); *see also* Newberg § 13:13 (preliminary approval appropriate when it is "likely" that the proposed settlement is fair).  "A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Alongside the fairness inquiry, when evaluating the terms of a proposed class settlement, courts in this Circuit are guided by the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id*. at 463 (citations omitted). The Rule 23(e) fairness inquiry requires the Court to consider whether the settlement is "fair, reasonable, and adequate" after considering additional factors[10]

---

[10] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

which "clarify[] and supplement[] the *Grinnell* factors."  *Rosenfeld*, 2021 WL 508339, at *3; *see also In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. Jan. 28, 2019) (new Rule 23(e) factors "add to, rather than displace, the *Grinnell* factors.").

## 2. The *Grinnell* and Amended Rule 23(e) Factors for Settlement Approval Are Satisfied

The *Grinnell* and amended Rule 23(e) factors weigh in favor of granting preliminary approval.  Class Counsel will first demonstrate that the procedural and substantive Rule 23(e) factors have been met, and then will turn to the additional *Grinnell* factors which are not otherwise encompassed by the Rule 23(e) factors.

### a. Procedural Fairness - Rule 23(e)(2)(A-B)

"Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the procedural analysis of the fairness inquiry." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (internal quotations omitted).

As courts in this Circuit have recognized, a settlement "will enjoy a presumption of fairness" when, as here, a "Settlement is the product of arms-length negotiations conducted by experienced counsel, knowledgeable in complex class litigation."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  *See also, e.g., In re Payment Card*, 330 F.R.D. at 34-35 (same).

The Settlement here is the product of extensive arm's-length negotiations conducted by experienced counsel and a well-renowned mediator, all of whom are knowledgeable in complex consumer class actions.  The Settlement reflects the progress of over three years of litigating numerous cases, which were consolidated before this Court, reviewing substantial discovery,

briefing multiple rounds of motions to dismiss, and engaging a top data security expert to review Defendants' PFI Report and all technical aspects of this litigation, which led to substantial changes to Defendants' data security measures for the benefit of the Settlement Class Members and the general public.  *See* Joint Decl. ¶ 20.

The Parties were only able to reach the Settlement after a mediation with the assistance and close scrutiny of the Honorable Diane M. Welsh (Ret.), a mediator with extensive experience mediating class settlements, as well as 27 years of combined service as a JAMS neutral and a United States Magistrate Judge.  *See id.* ¶ 14.  During the mediation and even thereafter, the Parties engaged in hard-fought negotiations to reach agreement on the terms of the Settlement.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (involvement of experienced mediator "strong indicator of procedural fairness").

Plaintiffs' Counsel involved in the negotiations have considerable experience in handling consumer class actions and are clearly capable of assessing the strengths and weaknesses of their respective positions.  *See infra*, Section IV.A; Joint Decl. Exs. C-D.  Class Counsel at Faruqi & Faruqi and Calcaterra Pollack regularly engage in major complex litigation and have extensive experience in consumer class actions that are similar in size, scope, and complexity to this case.  *See* Joint Decl. ¶ 21.  The combined experience of the firms and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table.  *See Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014).

b.    **Substantive Fairness - Rule 23(e)(2)(C-D) and Remaining *Grinnell* Factors**

The substantive fairness inquiry of Rule 23 considers the following: (i): the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to

the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Additionally, Fed. R. Civ. P. 23(e)(2)(D) requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."

The Rule 23 factors subsume some of those required under *Grinnell*.[11]  The remaining *Grinnell* factors are independent from the Rule 23 inquiry.[12]  These factors, which support granting preliminary approval of the Settlement, are addressed in turn.

### i.  Rule 23(e)(2)(C)(i) / Grinnell Factors Nos. 1, 4, 5 and 6 - The Costs, Risks, and Delay of Trial and Appeal

As discussed above, Rule 23(e)(2)(C)'s first factor, the "costs, risks, and delay of trial and appeal, subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial."  *Rosenfeld*, 2021 WL 508339, at *5–6 (internal quotation marks omitted).  Class actions, like the instant action dealing with complex data security issues, have a "reputation as being most complex."  *Id.* at *5 (internal quotation marks omitted).

Indeed, absent the instant Settlement, Plaintiffs would have had to "to survive summary judgment, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages.  Moreover, they would also need to certify and maintain the class, over the [] Defendants' possible opposition."  *Id.* at *5.  Instead, the Parties were able to craft a settlement providing substantial monetary benefits to the Settlement Class and significant changes to Defendants' data

---

[11] Specifically, Rule 23(e)(2)(C)(i) subsumes the following *Grinnell* factors: (1) the complexity, expense and likely duration of the litigation; (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through the trial.  *See Rosenfeld*, 2021 WL 508339, at *5-6 (citing *In re Payment Card*, 330 F.R.D. at 36).

[12] These include (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

security practices while avoiding the expense and delay of continued litigation.  Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results.  *See Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty.").

This case is no exception.  Plaintiffs understand that proceeding to trial is a risky and labor-intensive undertaking.  Plaintiffs anticipate that Defendants would continue to contest the matter at every opportunity and on all fronts. Plaintiffs would have to establish that Defendants were negligent in maintaining adequate data security measures, which would involve a battle of the experts regarding highly complex technical issues surrounding the security of computer databases and cyberattacks.  *See, e.g., In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses.").  Indeed, while courts have granted class certification of data breach class actions in the past, others have declined to do so, highlighting the risks of continued litigation.  *See, e.g., Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *9 (N.D. Ill. May 3, 2017) (denying certification of data breach class action because, *inter alia*, case "will require individualized damages inquiries for each class member.").

While Plaintiffs are confident that the Litigation has merit and that they would ultimately prevail at trial, reaching this result would likely require years of litigation.  Any trial would likely last at least three weeks, and involve numerous fact witnesses, experts and the introduction of voluminous documentary evidence.  Compounding the risk of Plaintiffs proceeding to trial is the

fact that, based on Class Counsel's research, no data breach class action has been taken to verdict.

Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004). Instead, the Court "should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Litigation. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014). By settling, Plaintiffs avoid the expenditure of resources and risk associated with continuing litigation and guarantee a quicker recovery to the Class. The Settlement prudently "take[s] the bird in the hand instead of the prospective flock in the bush." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (internal quotation marks omitted).

### ii.  Rule 23(e)(2)(C)(ii) - Effectiveness of Proposed Method of Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should "consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." *Rosenfeld*, 2021 WL 508339, at *6 (internal quotation marks omitted). "[A] plan of allocation need not be perfect," *EVCI*, 2007 WL 2230177, at *11, and instead "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The plan of allocation here is straightforward and the result of extensive negotiation

between highly competent counsel, with the input of the Honorable Diane M. Welsh (Ret.).  As set forth in detail above (Section III), the Settlement proposes two tiers of monetary relief.  The first tier provides $30 to Settlement Class Members who do not have documentation of out-of-pocket fraud losses, while those with such documentation can obtain reimbursement up to $5,000. *See id.*  Thus, the Settlement not only compensates Settlement Class Members who have documentation of the losses they suffered as a result of the Security Incident, it also compensates those who have spent their valuable time responding to the breach.  Therefore, the allocation plan is effective and is "rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries."  *Rosenfeld*, 2021 WL 508339, at *6.

### iii.     Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees

The next factor under Rule 23 is the "terms of any proposed award of attorneys' fees, including timing of payment[.]"  Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Court need not consider this factor at this juncture given that the terms of the Settlement explicitly call for the agreement to be executed regardless of the Court's approval of Class Counsel's fee request.  See Settlement Agreement ¶ 8.3 ("The Court's rejection, non-approval or reduction of Class Counsel's request for an award of attorneys' fees, costs and expenses shall not serve as a basis to avoid or terminate this Settlement Agreement.").  For this reason, specific to this Settlement, this factor does not bear on what the Settlement Class is receiving.  Given that the fee award is "specifically reserved to the court's discretion, [it] pose[s] no obstacle to preliminary approval."  *Rosenfeld*, 2021 WL 508339, at *7.  Plaintiffs will provide a full analysis of their proposed attorneys' fee award and request for expenses in their Motion for Final Approval.  For these reasons, this factor does not pose a barrier to granting preliminary approval.

### iv.      Rule 23(e)(2)(C)(iv) - There Are No Agreements Required To Be Identified Under Rule 23

Next, the Court should consider whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv).  There are no such agreements, so this factor supports preliminary approval.  *See* Joint Decl. ¶ 26.

### v.      Rule 23(e)(2)(D) - Class Members Are Treated Equitably

The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  As detailed *supra*, Sections I, IV.A, the Settlement Agreement applies to all Settlement Class Members equally as they each receive the same payment based on the time they spent in regard to the Security Incident and whether they have documented proof of out-of-pocket expenses.  *See In re Payment Card*, 330 F.R.D. at 47 (because "scope of the release applies uniformly to putative class members," it "does not appear to affect the apportionment of the relief to class members"); *see also Rosenfeld*, 2021 WL 508339, at *7 (class members treated equitably where "agreement appropriately and fairly accounts for the key point of differentiation among class members' claims.")  For these reasons, the Settlement Class Members are treated equitably relative to each other by the Settlement Agreement.

### vi.      *Grinnell* Factor No. 2 - Settlement Class Members' Reaction Will Likely Be Positive

As the Settlement Class Members have not yet had an opportunity to react to the Settlement, it is premature to address this factor.  *See Rosenfeld*, 2021 WL 508339, at *4 n.2.

### vii.      *Grinnell* Factor No. 3 - The Stage of the Proceedings and the Amount of Discovery Completed Warrants Preliminary Approval

The next factor is "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants,

and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020).   There is no requirement that litigants even commence formal discovery.   Rather, "[c]ourts have approved settlements at all stages of the proceedings.   The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) (granting preliminary approval when "action did not proceed to formal discovery," but plaintiffs reviewed publicly available information and consulted with experts).   Here Plaintiffs obtained substantial discovery from Defendants, including both publicly available and proprietary information, such as Defendants' PFI Report.   Plaintiffs further consulted a top data security expert to review various documents, including the PFI Report, in order to assist in crafting meaningful injunctive relief for the Settlement Class Members.   *See* Joint Decl. ¶ 20.   Through these efforts, the Parties were able to reach the proposed Settlement which provides substantial monetary and injunctive benefits to Settlement Class Members.

### viii.        *Grinnell* Factor No. 7 - Whether Defendants Can Withstand A Substantially Greater Judgement

Under *Grinnell*, the Court should next consider a defendant's ability to withstand a greater judgment.   However, "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair." *AOL Time Warner*, 2006 WL 903236, at *12.   This factor strongly supports the reasonableness of the Settlement because one of the Defendants, Lord & Taylor, LLC, filed a voluntary petition for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia captioned *In re: Le Tote, Inc., et al.*, Case

No. 20-33332 (KLP).[13]  Defendants' economic hardship has only been exacerbated by COVID-19, which has greatly burdened retail businesses like Defendants.

### ix.  *Grinnell* Factor Nos. 8-9: Range of Reasonableness in Settlement Fund

The final *Grinnell* factors require the Court to consider both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).  *See also In re Payment Card*, 330 F.R.D. at 47-48 (these factors "are often combined for the purposes of analysis.").  In analyzing these factors, the Court should also consider the risks of litigation, as outlined above, as "[t]he range of reasonableness for a settlement is 'a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Rosenfeld*, 2021 WL 508339, at *8 (quoting *Wal-Mart Stores*, 396 F.3d at 119).

Given the nature of this litigation, it would be challenging to estimate the amount of possible recovery for the proposed Settlement Class Members.  According to Class Counsel's research, no data breach class action has yet to reach trial.  For this reason, Class Counsel compares the Settlement's benefits to those of other data breach class action settlements, demonstrating that the benefits to Settlement Class Members are similar to or exceed those approved by other courts.[14]

---

[13] *See AOL Time Warner*, 2006 WL 903236, at *12 ("This factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship.").

[14] *See, e.g., In re: Arby's Rest. Grp., Inc. Data Sec. Litig.*, Case No. 1:17-cv-01035-WMR (N.D. Ga.), ECF Nos. 187-1 at 8; 190 (approving settlement with a nearly identical two-tier reimbursement system, ranging between $30 to $5,000 depending on proof of out-of-pocket losses); *Bokelman v. FCH Enters., Inc.*, Case No. 1:18-cv-00209-RJB-RLP (D. Haw.), ECF Nos. 56-2 at 7-9; 59 (approving settlement which provides two tiers of reimbursements, ranging from $10 for class members without proof of out-of-pocket losses to $7,500 for those with proof); *see also In re Zappos Sec. Breach Litig.*, No. 12-cv-00325 (D. Nev.), ECF No. 418 at 2 (settlement provided "10% coupon" for Zappos goods); *Jackson, et al. v. Wendy's Int'l LLC*, Case No. 6:16-cv-00210-PGB-DCI (M.D. Fla.), ECF Nos. 152 at 5; 157 (approving settlement providing two tiers of reimbursements, ranging from $30 for class members without proof of out-of-pocket losses to $5,000 for those with proof); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, No. 11-md-02258-AJB-MDD (S.D. Cal.), ECF Nos. 204-1 at 8; 211 (data breach settling providing

Further, the Court should consider the added data security protections provided to Settlement Class Members and the general public brought by the proposed injunctive relief, which would substantially improve Defendants' data security measures.  *See supra*, Sections I, IV (detailing changes to Defendants' data security measures); Joint Decl. ¶ 18.  *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (settlement required defendant to change data security systems and policies to specifically "implement cybersecurity controls and reforms recommended by Plaintiffs' cybersecurity experts.").  The Settlement here requires the same, mandating changes to Defendants' data security measures based on the recommendations of Plaintiffs' data security expert.  *See, e.g., id.* ("This nonmonetary relief benefits millions of Settlement Class Members, including those who did not submit a claim form [and] weighs in favor of final approval.").  For these reasons, the non-monetary and monetary benefits provided by the Settlement exceed the range of reasonableness for similar class actions.

**B.      The Rule 23(a) Factors Are Met**

**1.      Joinder of All Members Is Impracticable**

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1).  Numerosity is satisfied here because Defendants' records indicate that there are several million Settlement Class members.  *See* Joint Decl. ¶ 27.

**2.      Questions of Law or Fact Common to the Class Exist**

Class certification requires there to be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  The requirement of commonality does not require identical claims and arguments.  "To satisfy commonality, 'even a single common question will do.'"  *In re Air Cargo*

---

benefit of class members' choice of one or two items from mix of Sony games, online display themes, or 3-month subscription to the Sony PlayStation service); *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086, at *2-3 (N.D. Cal. Nov. 15, 2020) (preliminarily approving data breach settlement providing only injunctive relief).

*Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Here, the criterion is satisfied because there are numerous issues of fact and law common to the Settlement Class, including, *inter alia*, whether: (a) Defendants had a duty to safeguard the Settlement Class Members' Personal Information; (b) Defendants were negligent in maintaining adequate data security protocols to safeguard Settlement Class Members' Personal Information; and (c) the Settlement Class Members were all injured by having their Personal Information stored on Defendants' systems stolen by unauthorized third parties. Indeed, a court has recently certified a consumer data breach class action, holding that these same questions are "common to every claim in [] the proposed Nationwide Class[.]" *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021); *see also McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-02 (2d Cir. 2021) (plaintiffs demonstrated Article III injury in data breach class action when data "has been compromised as the result of a targeted attack").

### 3.   Plaintiffs' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted). "The typicality requirement is not highly demanding, because the claims need only share the same essential characteristics and need not be identical." *Rosenfeld*, 2021 WL 508339, at *9 (internal quotation marks omitted). Here, each Settlement Class Members' claims and legal arguments "arise out of the same series of events, the Data Breach [], and all of their stolen information was posted on Joker Stash[.]" *Brinker*, 2021 WL 1405508, at *8 (typicality satisfied where "only difference between Named Plaintiffs and putative class members is the

amount of damages[.]").  Precisely the same event occurred here to the entire class.  *See* SAC ¶¶ 1-6.  Accordingly, typicality is satisfied.

### 4.    Plaintiffs Will Fairly and Adequately Protect Class Interests

Rule 23 also requires that representative plaintiffs "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other class members[.]"  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

The adequacy requirement is met here.  Plaintiffs' interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members.  *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 65 (S.D.N.Y. 2014) (plaintiff adequate where "no divergence of interests between Plaintiffs and the other class members has been identified").  Plaintiffs' claims are also co-extensive with those of the Settlement Class.  *See supra*, Section IV.B.2-3.  Therefore, Plaintiffs share a common interest with the Settlement Class Members in establishing liability and securing the maximum possible recovery.  Plaintiffs have taken their obligations to the Settlement Class seriously by engaging in the prosecution of this matter, consistently conferring with their counsel, reviewing the various pleadings, and consulting with their attorneys regarding the propriety of the Settlement.  *See* Joint Decl. ¶ 26; *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 WL 4732083, at *5 (N.D.N.Y. Aug. 13, 2020) (named plaintiffs adequate where no evidence interests of plaintiffs and Class Members at odds, and "record reflects that Plaintiffs and the Class Members have the same incentive to maximize their compensation for the past harm.").

Further, as set forth *supra*, Section IV.A.2.a, Class Counsel are highly experienced class action litigators and will (and have) adequately represented the Settlement Class Members.  *See*

Joint Decl. ¶ 21.  *See also, e.g., Vaccaro*, 2017 WL 6398636, at *3 (adequacy requirement met where class counsel "litigated dozens of class actions in the United States" and recovered substantial monetary relief for class members).  Accordingly, the adequacy requirement is met here.

### C.     Settlement Class Members Are Readily Identifiable and Ascertainable

Rule 23 also contains an "implied requirement of ascertainability[.]"  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).  "[T]he Second Circuit does not have a 'heightened' requirement of ascertainability — it only requires that a 'class be defined using objective criteria that establish a membership with definite boundaries,' and does not require 'administrative feasibility' of identifying each class member based on that objective criteria."  *In re Payment Card*, 330 F.R.D. at 54 (citing *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017)).

Here the Settlement Class Members are readily identifiable because the Settlement Class consists of all persons who used their payment cards at Defendants' stores within the timeframe of the Settlement Agreement.  *See generally* Settlement Agreement; *see also Brinker*, 2021 WL 1405508, at *6 (ascertainability requirement met when class defined as consumers who "have some injury in the form of out-of-pocket expenses or time spent to be a part of the class" based on defendant's data breach).  Because all Settlement Class Members are able to determine their membership in the Settlement Class through objective criteria, this requirement is met.

### D.     The Settlement Class Satisfies Rule 23(b)(3)

A class meets the certification requirements of Rule 23(b)(3) when it meets two criteria. First, common questions of law or fact must "predominate" over any purely individual questions. Fed. R. Civ. P. 23(b)(3).  Second, class treatment should be superior to other available methods for the fair and efficient adjudication of the controversy.  *See id.*  In the context of a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal

is that there be no trial." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted).  Instead, the Court must determine if the legal or factual questions in each class member's case "are sufficiently similar to yield a cohesive class."  *Id.*

### 1.  Common Questions Predominate Over Individual Issues

The predominance requirement under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  To meet this requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006).

Here, predominance is satisfied because the pertinent issues center on: (a) Defendants' duty to safeguard the Settlement Class Members' Personal Information; (b) Defendants' negligence in maintaining adequate data security protocols to safeguard Settlement Class Members' Personal Information, and (c) whether the Settlement Class Members were all injured by having their Personal Information stored on Defendants' systems stolen by unauthorized third parties.  Every Settlement Class Member's claim may be proven by the same common evidence regarding the Defendants' alleged duty and negligence in safeguarding this information.  As further discussed *supra*, Section IV.B.2-3, Settlement Class Members' claims all stem from the same event and involve identical legal and factual issues.  *See, e.g., Rosenfeld*, 2021 WL 508339, at *10 (predominance met when "claims of all potential class members involve identical legal and factual questions[.]").

Moreover, Plaintiffs' claim of unjust enrichment on behalf of a nationwide class has been held by courts in this District and others to offer sufficient cohesion for the certification of a nationwide settlement class in a consumer fraud action.  *See, e.g., Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-CV-9087 (KMK), 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017)

(citing *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-CV-7493, 2013 WL 4080946, at *21 (S.D.N.Y. May 30, 2013)) (certifying nationwide settlement class raising, among others, claims for unjust enrichment); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Ci.v 5173(RPP), 2008 WL 1956267, at *13 (S.D.N.Y. May 1, 2008) (same).  Accordingly, Rule 23(b)(3) has been satisfied.

### 2.   A Class Action Is Superior to Alternative Methods of Adjudication

Rule 23(b)(3) requires class treatment to be superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  Class treatment is appropriate where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims."  *Jankowski v. Castaldi*, No. 01CV0164(SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (internal quotation marks omitted).

The only method to ensure the fair and efficient adjudication of this Action is through a class action, particularly because it would be extremely burdensome for even individual Settlement Class Members who have suffered out-of-pocket losses to pursue their claims on an individual basis.  A class action will allow individual Settlement Class Members to bring together claims that would be economically infeasible to litigate otherwise.  *See, e.g., Vaccaro*, 2017 WL 6398636, at *3 (class action superior to other methods "for fairly and efficiently adjudicating these claims because it spares Plaintiffs costly individual litigation.").  Class treatment here is further superior to individual suits given that it facilitates the favorable resolution of all Settlement Class Members' claims while conserving judicial resources that have been strained by COVID-19.  For these and other reasons, the superiority requirement is satisfied here.

**E.     The Proposed Class Notice and Notice Program Are Reasonable and the Best Notice Practicable**

The Notice to the Settlement Class satisfies the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). However, the "best practicable" notice standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008) (fact that some class members may not actually receive timely notice does not render notice inadequate if notice reasonably calculated to reach all class members) (quoting *Weigner v. New York*, 852 F.2d 646, 649 (2d Cir. 1988)) ("[F]or due process to be satisfied, not every class member need receive actual notice, as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'")).  The proposed forms of notice should "fairly apprise" the class "of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement."  *Kelen*, 302 F.R.D. at 69 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

The proposed forms of notice, attached as Exhibits B, C, and D to the Settlement Agreement, and discussed at Section 4 of the Settlement Agreement, satisfy the criteria in Rule 23(c)(2)(B) and contain all necessary information.[15]  Pursuant to the Settlement Agreement, notice will be sent in multiple formats consisting of: (1) Internet banner ads, with embedded hyperlinks to the Settlement Website, directed towards the Target Audience determined by the Settlement

---

[15] This includes: (1) a summary of the action and the claims asserted; (2) a plain definition of the Settlement Class; (3) a clear and concise description of the terms of the Settlement; (4) information regarding the claim criteria and instructions on how to make a claim; (5) disclosure of the release of claims by Class Members who do not opt out of the Settlement; (6) an explanation of opt-out rights and information on how to do so; (7) instructions on objecting to the Settlement; (8) the date, time and location of the final approval hearing; (9) the address for the Settlement Website; and (10) the names and contact information for Class Counsel representing the Settlement Class.

Administrator to likely include Class Members, *see id.*, Ex. D, ¶ 15; (2) a dedicated case-specific Settlement Website where the Notices and other court filings will be posted;[16] (3) an informational press release issued to more than 12,000 traditional media outlets (print, TV, and radio) and 2,500 online outlets, *see id.*, Ex. D ¶ 18; and (4) a toll-free number at which Class Members can call the Settlement Administrator to obtain information about the Settlement.  *See id.*, Ex. D, ¶¶ 23-26. The aforementioned notice provides information to the Settlement Class Members concerning, among other things: (1) terms of the Settlement; (2) instructions on submitting a claim; (3) objection and opt-out rights; and (4) the date, time, and location of the final approval hearing.

In sum, the proposed notices are clear and straightforward.  Further, the Notice Program, designed by an expert in providing effective class notice, is calibrated to provide broad and effective dissemination of the Notice to individuals likely to be members of the Class.  *See* Settlement Agreement, Ex. D, ¶¶ 15-17.  Therefore, the content of the notices and the Notice Program satisfy the requirement under Rule 23.

### F.      Class Counsel Should Be Appointed As Settlement Class Counsel

Rule 23(g) requires a court to appoint class counsel when certifying a class.  In doing so, the court considers several factors: (1) work done by counsel in identification or investigation of the claims in the action; (2) counsel's experience; (3) counsel's knowledge of the applicable law; and (4) counsel's resources committed to representing the proposed class.  *See* Fed. R. Civ. P. 23(g)(1)(A).  All of these factors militate in favor of appointing Timothy J. Peter of Faruqi & Faruqi, LLP and Janine L. Pollack of Calcaterra Pollack LLP as Settlement Class Counsel.

---

[16] The Settlement Website, which will be established within 60 days of preliminary approval of the Settlement, will provide (among other information): documents and information concerning the Settlement and the litigation, electronic or printable versions of the Claim Form, instructions for filing a claim, opting out of the Settlement, or objecting to the Settlement, deadlines related to the Settlement, and other information as agreed to by the Parties. *See id.*, Ex. D, ¶¶ 27-31.

First, the proposed Class Counsel spent a significant amount of time identifying and investigating Plaintiffs' claims before filing these cases. *See* Joint Decl. ¶¶ 10, 22. Second, proposed Class Counsel has extensive experience in class action litigation, including data breach actions like the instant Litigation. *See id.*, Exs. C-D (Firm Resumes of Co-Lead Counsel). In negotiating this Settlement, proposed Class Counsel had the benefit of years of relevant experience and a familiarity with the facts of this case and the substantive case law at issue. *See id.* ¶¶ 19-21. Finally, both proposed Class Counsel have devoted substantial resources to representing the Class. *See id.* ¶ 21. Therefore, the Court should appoint Timothy J. Peter of Faruqi & Faruqi, LLP and Janine L. Pollack of Calcaterra Pollack LLP to act as Settlement Class Counsel.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class for settlement purposes only; (3) appoint Plaintiffs as Representative Plaintiffs; (4) appoint Timothy J. Peter of Faruqi & Faruqi, LLP and Janine L. Pollack of Calcaterra Pollack LLP as Settlement Class Counsel; (5) establish procedures for giving notice to members of the Class; (6) approve forms of notice to members of the Class; (7) mandate procedures and deadlines for class exclusion requests and objections; (8) appoint Analytics Consulting LLC as the Settlement Administrator; (9) enter a preliminary injunction prohibiting the Class from filing, prosecuting, continuing, intervening in, or participating (as class members or otherwise) in any other lawsuit or proceeding arising out of the Released Claims pending final approval of the Settlement Agreement; and (10) set a date, time, and place for a Final Approval Hearing.

DATED:  May 27, 2020                                    */s/ Timothy J. Peter*
                                                                        Timothy J. Peter

                                                                        **FARUQI & FARUQI, LLP**
                                                                        1617 JFK Boulevard, Ste. 1550

Philadelphia, PA  19103
Tel: (215) 277-5770
Fax: (215) 277-5771
tpeter@faruqilaw.com

Janine L. Pollack
Michael Liskow
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th Floor
New York, NY 10036-5803
Tel: (212) 899-1761
Fax: (332) 206-2073
jpollack@calcaterrapollack.com
mliskow@calcaterrapollack.com

**Interim Co-Lead Counsel for
Plaintiffs and the Class**


Charles J. Hecht
**BALESTRIERE FARIELLO LLP**
225 Broadway, 29th Floor
New York, New York 10007
Tel.: (212) 374-5400
Fax: (212) 208-2613
charles.hecht@balestrierefariello.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
a.parkhill@barnowlaw.com

Melissa R. Emert
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
Tel: (866) 896-0935
memert@kgglaw.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, LPA**
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Gary Mason
**MASON LIETZ & KLINGER, LLP**
5101 Wisconsin Avenue NW
Suite 305
Washington, DC 20016
Tel: (202) 640-1168
Fax: (202) 429-2294
gmason@masonllp.com

Laurence D. King
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687 7714
lking@kaplanfox.com

John A. Yanchunis
Ryan Mcgee
**MORGAN & MORGAN**
**COMPLEX LITIGATIO GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505
Fax:  (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com

Jean Sutton Martin
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Tel: (813) 559-4908
Fax: (813) 222-4795
jeanmartin@forthepeople.com

Mark Rifkin
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
rifkin@whafh.com

Lynda J. Grant
**THE GRANT LAW FIRM**, **PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com

Ralph N. Sianni
**ANDERSON SLEATER SIANNI, LLC**
2 Mill Road
Suite 202
Wilmington, DE 19806
Tel: (302) 510-8528
Fax: (302) 595-9321
rsianni@andersensleater.com

Kevin H. Sharp
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street
Suite 3100
Nashville, TN 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com

Aaron Brody
**STULL, STULL & BRODY**
6 East 45th Street
Fifth Floor
New York, New York 10017
Tel: (212) 687-7230
abrody@ssbny.com

Jason P. Sultzer
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza,
Suite 200
Poughkeepsie, NY 12601
Tel: (845) 244-5595
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**Counsel for Plaintiffs and the Class**