**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HUDSON'S BAY COMPANY DATA SECURITY INCIDENT CONSUMER LITIGATION | Case No. 1:18-cv-08472 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................... 1

II.   BACKGROUND ........................................................................................... 3

    A.   Procedural History and Settlement Negotiations ................................... 3

III.   TERMS OF THE PROPOSED SETTLEMENT ........................................... 6

    A.   The Class Definition ............................................................................. 6

    B.   Monetary Relief ................................................................................... 7

    C.   Injunctive Relief................................................................................... 8

    D.   Release Of Claims................................................................................ 9

    E.   Notice, Claims Process, And Settlement Administration ....................... 9

    F.   Costs, Fees, and Representative Awards ............................................... 9

    G.   Notice Provided to the Settlement Class.............................................. 10

IV.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE ...... 11

    A.   The Requirements of Rule 23(a) Are Met ........................................... 12

        1.   Numerosity............................................................................ 12

        2.   Commonality.......................................................................... 12

        3.   Typicality............................................................................... 13

        4.   Adequacy ............................................................................... 13

    B.   The Settlement Class Meets the Requirements of Rule 23(b)(3) ......................... 14

        1.   Common Questions Predominate .............................................. 14

        2.   A Class Action Is A Superior Mechanism For Adjudication .................. 15

V.   THE NOTICE PLAN SATISFIES DUE PROCESS........................................ 15

VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...... 17

        1.   Standard for Final Approval of Class Action Settlement ......................... 17

      2.    The *Grinnell* and Rule 23(e) Factors for Settlement Approval Are
Satisfied.................................................................................................. 18

VII.    CONCLUSION..................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
    271 F. App'x 41 (2d Cir. 2008) .......................................................................................17

*Adkins v. Facebook, Inc.*,
    No. C 18-05982 WHA, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ...............................23

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) .......................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012) .................................................................................................14

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................................15

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .........................................................................................25

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...............................25

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche
    Bank*, 236 F.3d 78 (2d Cir. 2001) ........................................................................................19

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ...................................................................................................13

*Baudin v. Res. Mktg. Corp.*,
    LLC, No. 1:19-cv-386, 2020 WL 4732083 (N.D.N.Y. Aug. 13, 2020) ..........................20, 24

*In re Brinker Data Incident Litig.*,
    No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........................13

*Bryant v. Potbelly Sandwich Works, LLC*,
    No. 1:17-CV-07638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ....................24

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) .................................................................................................25

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................19, 23

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)...................................................................................... *passim*

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,
 No. 18-CV-06012-JSW, 2020 WL 10505229 (N.D. Cal. May 22, 2020) .............................23

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995)..........................................................................................12

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974).....................................................................................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009)..........................................................................................13

*In re Grana Y Montero S.A.A. Sec. Litig.*,
 No. 17-CV-01105 (LDH) (ST), 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ...................24

*Heerwagen v. Clear Channel Commc'ns*,
 435 F.3d 219 (2d Cir. 2006).........................................................................................15

*Jankowski v. Castaldi*,
 No. 01CV0164(SJF)(KAM), 2006 WL 118973 (E.D.N.Y. Jan. 13, 2006) ...........................15

*Kelen v. World Fin. Network Nat'l Bank*,
 302 F.R.D. 56 (S.D.N.Y. 2014) ....................................................................................14

*In re: Le Tote, Inc., et al.*,
 Case No. 20-33332 (KLP), ECF No. 1015 (E.D. Va. Mar. 9, 2021)................................6, 25

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997)..........................................................................................11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009). Notice............................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment
 Card II*),
 330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................19, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment
 Card III*),
 No. 05-MD-1720 (MKB)(JO), 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .....18, 19, 21, 22

*Rosenfeld v. Lenich*,
 No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) .......15, 20, 21, 23

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)....................................................................................15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019)....................................21

*Story v. SEFCU*,
   No. 1:18-CV-764, 2021 WL 736962 (N.D.N.Y. Feb. 25, 2021)..........................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................16

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005).......................................................................21

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008).......................................................................24

**Statutes**

28 U.S.C. § 1404(a) ..............................................................................................3

Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) .................................................9

**Other Authorities**

FED. JUDICIAL CTR., *Judges' Class Action Notice and Claims Process Checklist
   and Plain Language Guide* 3 (2010) .......................................................................17

Fed. R. Civ. P. 12(b)(1) and (b)(6) ...........................................................................4

Fed. R. Civ. P.  23(a) ...........................................................................................11

Fed. R. Civ. P. 23(a)(1)........................................................................................12

Fed. R. Civ. P. 23(a)(2)....................................................................................12, 15

Fed. R. Civ. P. 23(a)(4).........................................................................................13

Fed. R. Civ. P. 23(b)(3)................................................................................11, 14, 15

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................16

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................22

Fed. R. Civ. P. 23(e)(2)(C)(iii)................................................................................22

Fed. R. Civ. P. 23(e)(2)(C)(iv)................................................................................22

On July 22, 2021, this Court issued its Order Certifying A Settlement Class, Preliminarily Approving Class Action Settlement, and Directing Notice To The Class (ECF No. 180) ("Order").[1] Plaintiffs Debbie Carthan, Bernadette Beekman, Julia A. Harris, Cassondra Joseph, Margo Kyler Knight, Jane Lefkowitz, Leslie Levitt-Raschella, Kelly Whitaker (formerly known as Kelly McGurn), Dennis Meduri, Giorgina Meduri, Greta Moss, Alexandria Rudolph, Jeanne Sacklow, Erika Targum, and Mark Wade (collectively, "Plaintiffs") now move this Court, individually and on behalf of all others similarly situated, for final approval of the settlement and for certification of the Settlement Class (the "Motion").

## I.    INTRODUCTION

This proposed class action settlement is an excellent result for the Settlement Class and should receive final approval.  The Settlement provides significant economic relief which compensates customers of defendants Hudson's Bay Company ULC ("HBC") (formerly known as Hudson's Bay Company), Saks Incorporated, Saks Fifth Avenue LLC, Saks & Company LLC, and Lord & Taylor LLC (collectively, "Defendants") for the time and money spent, and expenses incurred, arising out of the Security Incident.  Specifically, Settlement Class Members who submit valid Claim Forms and sufficient proof of a valid transaction are entitled to a $30 payment for time spent monitoring their Payment Card statements or taking other steps in response to the Security Incident.  In addition, Settlement Class Members who sufficiently document unreimbursed additional out-of-pocket losses stemming from the Security Incident may be eligible for a payment capped at $5,000.  Collectively, Settlement Class Members can receive up to $2,000,000 from the Settlement.

---

[1] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement, attached as Exhibit A to the Joint Declaration of Janine L. Pollack and Timothy J. Peter in support of Preliminary Approval.  *See* ECF No. 177-1 ("Settlement Agreement").

The Settlement Agreement also provides significant structural relief to better protect HBC's customers' Personal Information in the future. This includes HBC agreeing to, *inter alia*: (1) hire a qualified security assessor to assess compliance with data security standards on an annual basis; (2) conduct annual testing of potential vulnerabilities in protection of Payment Card information and remediate any such vulnerabilities; and (3) operate a system that is designed to encrypt or tokenize Payment Card information at the pin pad level of the point of sale terminals in stores or otherwise renders payment card information unreadable at the pin pad level using a method like encryption or tokenization that is approved under PCI standards. *See* Settlement Agreement, ¶ 2.5.[2] These meaningful changes to HBC's data security measures provide tangible benefits to Settlement Class Members, dramatically reducing the risk of future fraud and identity theft. Notably, according to HBC, the value of this relief is in excess of $20 million for these important security measures.

The settlement administrator, Analytics LLC ("Analytics") has implemented the Court-approved notice plan and notice has reached at least 70% of the certified Settlement Class, with 22,149,773 total impressions (*i.e.*, the number of times the content (notice) was displayed). The reaction from the Class has been overwhelmingly positive to date. Specifically, zero Settlement Class members have objected. In addition, zero Settlement Class Members have requested to be excluded from the Settlement.

As recognized in its Order, the Settlement Agreement, which was the product of extensive arm's-length negotiations between experienced attorneys and the assistance of a highly respected and experienced class action mediator, the Honorable Diane Welsh (Ret.), satisfied the standards set forth by the Second Circuit for weighing the procedural and substantive fairness of

---

[2] Additionally, pursuant to the Settlement Agreement, Defendants provided written confirmation to Class Counsel that the items in the PFI report related to the Security Incident were completed and have not been reversed. *See id.*

a class settlement, including in *Grinnell*, as well as the factors enumerated by Federal Rule of Civil Procedure 23(e)(2). These factors weigh strongly in favor of final approval of the Settlement. None of the circumstances which caused the Court to find that these factors weigh in favor of granting preliminary approval have changed. Further, the reaction of the Class to the Settlement has been unanimously positive to date, with no Settlement Class Members objecting or opting out of the Settlement. Thus, the Settlement remains fair, reasonable, and adequate, and warrants this Court's final approval.

## II.   BACKGROUND

### A.   Procedural History and Settlement Negotiations

On April 5, 2018, the action styled *Beekman v. Lord & Taylor, LLC*, Case No. 1:18-cv-00521 was filed in the United States District Court for the District of Delaware (the "*Beekman* Action") against Lord & Taylor LLC. On October 5, 2018, Lord & Taylor LLC filed its Motion to Transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). The Motion to Transfer was granted on April 25, 2019, transferring the *Beekman* Action on May 9, 2019 as Case No. 1:19-cv-04199. On April 11, 2018, the action styled *Sacklow, et al. v. Saks Incorporated*, Case No. 3:18-cv-00360 was filed in the United States District Court for the Middle District of Tennessee (the "*Sacklow* Action") against Saks Incorporated. On November 6, 2018, Saks Incorporated filed its Motion to Transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). The Motion to Transfer was granted on May 6, 2019, transferring the *Sacklow* Action on May 9, 2019 as Case No. 1:19-cv-04186. On June 8, 2018, the action styled *Rudolph v. Saks & Company LLC*, Case No. 2:18-cv-05107 was filed in the United States District Court for the Central District of California (the "*Rudolph* Action"), against Saks & Company LLC. Other cases against Defendants were filed as well. On September 12, 2018, Plaintiff Alexandria Rudolph and Saks & Company LLC jointly stipulated to transfer the *Rudolph* Action to the

Southern District of New York.  The joint stipulation was granted on September 13, 2018, transferring the *Rudolph* Action on September 18, 2018 as Case No. 1:18-cv-08472.  Defendants moved to dismiss the *Rudolph* Action, and the Court issued an order on May 7, 2019 granting in part and denying in part that motion.

On August 9, 2019, the plaintiffs in the *Beekman* Action, *Sacklow* Action, *Rudolph* Action, and all other similar data breach actions against Defendants filed a Consolidated Class Action Complaint in the Southern District of New York in the newly styled action *In re Hudson's Bay Company Data Security Incident Consumer Litigation*, Case No. 1:18-cv-08472 against Defendants (the "Litigation"), with the following plaintiffs: Bernadette Beekman, Debbie Carthan, John Cona, Wendy Haggarty, Julia A. Harris, Cassondra Joseph, Margo Kyler Knight, Jane Lefkowitz, Leslie Levitt-Raschella, Kelly Whitaker (formerly known as Kelly McGurn), Dennis Meduri, Georgina Meduri, Greta Moss, Larry Payne, Alexandria Rudolph, Jeanne Sacklow, Hope Tafet, Erika Targum, Latusha Vains and Mark Wade.  The Second Consolidated Amended Class Action Complaint ("SAC") (ECF No. 137) was filed on September 20, 2019, removing plaintiffs Bernadette Beekman,[3] John Cona, Hope Tafet, Latusha Vains, and Larry Payne.  The SAC asserts claims against Defendants for negligence, breach of implied contract, unjust enrichment/quasi-contract, breach of confidence, and violations of a number of state consumer fraud acts[4] arising out of the "Security Incident."

On November 18, 2019, Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  *See* ECF No. 148.  The parties fully briefed the motion to dismiss.  *See* ECF

---

[3] Plaintiff Beekman, who was removed from the SAC in error, is now included in the Settlement.
[4] The Arizona Consumer Fraud Act, California Unfair Competition Law, California Consumers Legal Remedies Act, California Customer Records Act, Connecticut's Unfair Trade Practices Act, Florida Deceptive and Unfair Trade Practices Act, Illinois Consumer Fraud Act, New Jersey Consumer Fraud Act, New Jersey Consumer Security Breach Disclosure Act, New York Consumer Law for Deceptive Acts and Practices, Texas Deceptive Trade Practices and Consumer Protection Act, Nevada Deceptive Trade Practices Act, and Georgia Fair Business Practices Act.

Nos. 151, 152.  Prior to the Court issuing a decision on the motion to dismiss, in November 2019, the parties agreed to attend a mediation session.  *See* Joint Declaration of Janine L. Pollack and Timothy J. Peter in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Joint Decl.") at ¶ 12.  Prior to the mediation, Defendants produced, and Class Counsel reviewed, a substantial number of documents relating to the Security Incident, including a Payment Card Industry Forensic Investigation Report ("PFI Report"), which outlines Defendants' terminals affected by the malware according to the investigator; correspondence between Defendants and various financial institutions; internal communications of Defendants related to the incident and data security measures; and relevant insurance policies.  *See id*.  Plaintiffs also produced their pertinent documents.  *See id.*, ¶ 12.

On March 11, 2020, the Parties participated in a full-day, in-person mediation session with the Honorable Diane Welsh (Ret.).  *See id.* ¶ 13.  The mediation ended with a tentative agreement in principle that was later memorialized in a formal Memorandum of Understanding dated May 26, 2020.  As a result of those negotiations, the Parties agreed to settle pursuant to the terms set forth in the Settlement Agreement, which was negotiated for many months.  *See id*.  Negotiations were prolonged due to complications arising from the COVID-19 Pandemic.  *See id*.  On April 21, 2020, the parties advised the Court of the agreement in principle and requested that the Court defer any ruling on the pending motion to dismiss.  *See id*.; *see also* ECF No. 156.

Throughout the Litigation, Plaintiffs, by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this case, including, but not limited to, a review and analysis of Defendants' documents and data, and extensive research and assessment of the claims at issue.  *See* Joint Decl., ¶¶ 12, 22.  Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement, as it affects all

Parties, including Settlement Class Members. *See id.* Plaintiffs and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable and adequate, and this Settlement is in the best interest of the Settlement Class. *See id.* ¶¶ 12, 22-24.

On August 2, 2020, Le Tote, Inc., owners of Lord & Taylor, LLC, filed voluntary petitions for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia. This resulted in a stay of proceedings of the Litigation as Lord & Taylor, LLC was a defendant therein. By Order entered March 9, 2021, the Bankruptcy Court issued an Order lifting the stay for the purpose of permitting finalization of the instant Settlement. *See In re: Le Tote, Inc., et al.*, Case No. 20-33332 (KLP), ECF No. 1015 (E.D. Va. Mar. 9, 2021). Thereafter, the Parties advised the Court that the stay had been lifted and they were prepared to proceed with the Settlement. By Order, dated March 26, 2021, the Court ordered that the stay was lifted and the Parties should file their pre-motion letter to proceed with their motion for preliminary approval of the Settlement. *See* ECF No. 167.

On May 27, 2021, in accordance with the March 26, 2021 order, Plaintiffs filed their Motion for Preliminary Approval. *See* ECF No. 176 ("PA Motion"). On July 22, 2021, this Court issued its Order, certifying a settlement class, ordering notice to be directed to the class, preliminarily approving the Settlement, and requiring Class Counsel to file the motion for final approval now before the Court. As discussed below, Class Counsel proceeded with the notice plan approved by the Court, and now seek final approval of the Settlement.

## III.   TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement are as follows:

### A.   The Class Definition

As part of preliminary approval, the Court conditionally certified a class for settlement

purposes of: All persons who used their credit, debit or prepaid debit card (other than a Saks First branded credit card) at a Saks, Saks OFF 5TH, or Lord & Taylor store in the United States and in U.S. territories from May 1, 2017 to April 1, 2018 (the "Exposure Window").[5]

**B.     Monetary Relief**

Pursuant to the Settlement, Settlement Class Members will receive a monetary payment depending on whether they elect to file a "Tier 1" or "Tier 2" claim:

- **<u>Tier 1</u>** - Settlement Class Members who submit a valid Tier 1 claim shall receive $30 if the Settlement Claim is determined to be an Approved Claim by the Settlement Administrator.  A Tier 1 claim requires the Settlement Class Member to submit a Claim Form that:

    (i) either (a) via online submission, provides proof of a Payment Card transaction (via receipt, Payment Card statement, or other proof of transaction) during the Exposure Window; or (b) by hard copy mail, provides a written statement under penalty of perjury that they made a transaction at a Saks, Saks OFF 5TH, or Lord & Taylor store in the U.S., or the U.S. territories, using a Payment Card during the Exposure Window together with the store location (city/state), the approximate date of the transaction, the last four digits of the Payment Card number used, and a general description of what they bought or returned; and

    (ii) indicates on the Claim Form in the space provided that they spent time monitoring Payment Card statement(s) or taking other steps to address the Security Incident[.]

    Tier 1 claimants shall receive $30 if the Settlement Claim is determined to be an Approved Claim by the Settlement Administrator.  Regardless of the number of affected Payment Cards for any given Settlement Class Member, only one (1) $30 payment will be issued per Settlement Class Member under Tier 1.

- **<u>Tier 2</u>** - Settlement Class Members can instead choose to submit a Tier 2 claim via online submission, which requires providing both proof of a Payment Card transaction at a Saks, Saks OFF 5TH, or Lord & Taylor store in the U.S., or the U.S. territories (via receipt or Payment Card statement or other proof of transaction) during the Exposure Window and documented proof of extraordinary out-of-pocket fraud costs that were not reimbursed, including:

---

[5] Excluded from the Class are Defendants, any of their parents or subsidiaries, any entities in which they have a controlling interest, as well as their current and former officers, directors, corporate affiliates, legal representatives, heirs, predecessors, successors, and assigns.  Also excluded are any judges to whom this case is assigned as well as his or her judicial staff and immediate family members.  *See* Settlement Agreement, ¶ 1.6.

(1) costs and expenses spent addressing identity theft or fraud; (2) losses caused by restricted access to funds (e.g., costs of taking out a loan, ATM withdrawal fees); (3) late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, and/or card cancellation or replacement fees; (4) unauthorized charges on credit or debit cards; (5) unauthorized withdrawal of funds from bank accounts (e.g., checking, savings and money market); and (6) other documented losses that were not reimbursed.

> Tier 2 claimants shall receive the amount of those documented costs, plus $30 for time spent dealing with the effects of those costs, up to a cap of $5,000 if the Settlement Claim is determined to be an Approved Claim by the Settlement Administrator.  For Tier 2 only, Settlement Class Members may submit a Claim Form for each separate card included in the Class definition, but the total payment to any particular Settlement Class Member may not exceed $5,000.

*See* Settlement Agreement ¶¶ 2.1.2, 2.1.3.  Defendant HBC shall fund payments of the above Approved Claims up to $2,000,000 (the "Aggregate Cap").  *See id.* ¶ 2.2.5.  In the event that the total sum of the Approved Claims exceeds the Aggregate Cap, the amount of payment for each Approved Claim will be reduced by a *pro rata* percentage such that Defendant HBC's liability to fund payments under this paragraph does not exceed the Aggregate Cap.  *See id.*

C.     **Injunctive Relief**

The Settlement Agreement also requires HBC to implement significant data security improvements to better protect HBC's customers' Personal Information in the future.  This includes HBC agreeing to, *inter alia*: (a) hire a qualified security assessor to assess compliance with data security standards on an annual basis; (b) conduct annual testing of potential vulnerabilities in protection of Payment Card information and remediate any such vulnerabilities; (c) operate a system that is designed to encrypt or tokenize Payment Card information at the pin pad level of the point of sale terminals in stores or otherwise renders payment card information unreadable at the pin pad level using a method like encryption or tokenization that is approved under Payment Card Industry standards; and (d) maintain written records of security programs, policies and procedures.  *See id.* ¶ 2.5.  These structural changes to Defendants' data security

measures were negotiated in consultation with a top data security expert.  Based on Defendants' investigation of these structural changes to their data security measures, Defendants believe that "[t]he full value of this relief" is "in excess of $20 million."  *See* Joint Decl., ¶18, Ex. A.

These changes to Defendants' data security measures dramatically reduce the risk of identity theft and fraud to Settlement Class Members who continue to shop at Saks and Lord & Taylor stores (as well as new customers).  Thus, the data security improvements provide a tangible benefit to the Settlement Class Members, preventing future time spent and money lost that could have been lost absent these changes.

### D.    Release Of Claims

In exchange for the foregoing relief, Settlement Class Members who do not opt out of the Settlement will release Defendants and all Released Persons from all Released Claims asserted in this Litigation.  *See id.* ¶¶ 1.21, 1.22.

### E.    Notice, Claims Process, And Settlement Administration

Defendants have paid, and will continue to pay, all costs of providing notice[6] and administration of the Settlement.  *Id.* ¶ 2.4.  Any such costs in excess of $250,000, which are not anticipated, will be borne by Plaintiffs' Counsel.  *See id.*

### F.    Costs, Fees, and Representative Awards

In recognition of their efforts on behalf of the Settlement Class, Defendants have agreed to not oppose a request to this Court that each of the 15 Plaintiffs may receive incentive awards of $1,000 each, all of which Service Awards are to be paid separately by Defendant HBC and not out of the monetary relief afforded to the Settlement Class.  *See id.* ¶¶ 8.1, 8.4.  Submitted as a

---

[6] Defendants have separately provided notification of the Settlement to the Attorney General of the United States, and the Attorneys General of each state or territory in which a Settlement Class Member resides in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).  *See* ECF Nos. 345 & 346.

part of Plaintiffs' concurrently filed petition for attorneys' fees, each of the Plaintiffs has also

provided a declaration itemizing their efforts conducted on behalf of the Settlement Class.

Defendants have also agreed to not oppose a petition by Class Counsel for fees, costs, and

expenses not to exceed $1,400,000, as approved by the Court, the payment of which by

Defendant HBC is separate from and in addition to the monetary relief afforded to the Settlement

Class Members.  *See id.* ¶¶ 8.1, 8.2.  The Settlement Agreement and Plaintiffs' support of the

Settlement are not conditioned upon the Court's approval of the above amounts.  *See id.* ¶¶ 8.3,

8.5.  As such, the full $2,000,000 will be available to the Settlement Class for Approved Claims.

### G.     Notice Provided to the Settlement Class

At preliminary approval, the Court approved the proposed Notice, finding it met the

requirements of Rule 23 and Due Process.  *See* Order at 8.  The Notice has now been fully

carried out by professional settlement administrator Analytics Consulting LLC ("Analytics").

The Settlement Class received notice in various ways through the robust Notice Plan developed

and implemented by Analytics.  *See* Supplemental Declaration of Richard W. Simmons ("Supp.

Simmons Decl.").

Specifically, Analytics included: (1) paid advertisements using internet banner notice ads

to directly target Class Members regarding the Settlement; (2) a nationwide press release via PR

Newswire's distribution to more than 12,000 traditional media outlets (Print, TV, and radio) and

2,500 online outlets;[7] (3) a dedicated settlement website, www.hbcsettlement.com, where Class

Members can file claims and receive other Court documents;[8] and (4) a monitored email address

---

[7] As of October 27, 2020, a total of 122 news outlets picked up the notice of the Settlement from the press release, for a potential audience of approximately 132,000,000 individuals.  *See* .Supp. Simmons Decl. at ¶ 10.

[8] Recognizing the increasingly mobile nature of advertising and communications, the Website was mobile optimized, meaning it can be clearly read and used by Class Members visiting the Website via smart phone or tablet.  Over 64% visited this website on a mobile device (smart phone or tablet).  *See id.* at ¶ 5.

and dedicated toll-free support line for Class Members' inquiries (together, the "Notice Plan").

*See id.* ¶¶4, 7.  The Notice Plan has reached at least 70% of the certified Settlement Class, with

22,149,773 total impressions (compared to intended 22,100,000 impressions).  *See id.* ¶ 15.

Further, the reaction from the Class has been overwhelmingly positive to date.

Specifically, <u>zero</u> Settlement Class members have objected.  *See id.* ¶ 17.  Further, <u>zero</u>

Settlement Class Members have requested to be excluded from the Settlement.  *See id.* ¶ 16.

## IV.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order conditionally certified a class for settlement

purposes. *See* Order at 4. Under Federal Rule of Civil Procedure 23, a class action may be

maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ.

P. 23(a).  Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficient adjudication of the

controversy."  Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "Rule 23 is given liberal rather

than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class

certification.  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

The Court should now grant final certification because the Settlement Class meets all of

the requirements of Rule 23.  In its Order, this Court found that these elements were readily met.

*See generally* Order.  The circumstances under which the Court provisionally found that class

certification was warranted have not changed.  Thus, the Court should find that class certification

11

is warranted for the purposes of final approval of the settlement.

### A. The Requirements of Rule 23(a) Are Met

#### 1. Numerosity

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]"[9]  Fed. R. Civ. P. 23(a)(1).  Here, numerosity is readily met given that Defendants have produced information indicating that the lowest possible number of affected payment cards is likely three million.  Joint Decl. at ¶ 12.  Given the number and geographic dispersion of potential Class Members, joinder would be impracticable.  Order at 4 (finding that "the Class is so numerous that joinder of all Class Members would be impracticable.").

#### 2. Commonality

To be certified as a class action, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The requirement of commonality does not require identical claims and arguments.  "To satisfy commonality, 'even a single common question will do.'"  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

The Court previously recognized that "there are issues of law and fact common to the Class."  Order at 4.  These issues include Defendants' duty to safeguard customers' Personal Information, Defendants' alleged negligence in that regard, and injury stemming from the theft of this Personal Information.  *See In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (certifying a consumer data breach class action, holding that these same questions are "common to every claim in [] the proposed Nationwide Class[.]").  Thus, there are common question of law and fact for the Settlement Class.

---

[9] *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

### 3.     Typicality

Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted).  This Court found that "the claims of the Plaintiffs are typical of and arise from the same operative facts and seek similar relief as the claims of the Class Members."  Order at 4.  This fact has not changed, as each of Settlement Class Members' claims and legal arguments "arise out of the same series of events, the Data Breach [], and all of their stolen information was posted on Joker Stash[.]" *Brinker*, 2021 WL 1405508, at *8 (typicality satisfied where "only difference between Named Plaintiffs and putative class members is the amount of damages[.]"); SAC ¶¶ 1-6 (alleging theft of stolen information posted on Joker Stash).  Accordingly, typicality is satisfied.

### 4.     Adequacy

Rule 23 also requires that representative plaintiffs "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other class members[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

This Court has previously found Plaintiffs and Class Counsel to be adequate under Rule 23.  *See* Order at 4-5.  Plaintiffs' interests remain consistent with, and are not antagonistic to, the interests of other Settlement Class Members.  Thus, no new developments render Plaintiffs or Class Counsel inadequate.  *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 65 (S.D.N.Y. 2014) (plaintiff adequate where "no divergence of interests between Plaintiffs and the other class members has been identified"); *see also supra*, Section IV.A.3 (demonstrating that Plaintiffs' claims are also co-extensive with those of the Settlement Class).

Indeed, Plaintiffs have taken their obligations to the Settlement Class seriously by engaging in the prosecution of this matter, consistently conferring with their counsel, reviewing the various pleadings, and consulting with their attorneys regarding the propriety of the Settlement.  *See* Joint Decl. ¶ 27.  Plaintiffs' declarations, which more fully set forth Plaintiffs' efforts on behalf of the Settlement Class, are attached to Plaintiffs' concurrently filed petition for attorneys' fees. Accordingly, the adequacy requirement is met here.

**B.     The Settlement Class Meets the Requirements of Rule 23(b)(3)**

To qualify for certification under Rule 23(b)(3), the class must meet two criteria.  First, common questions of law or fact must "predominate" over any purely individual questions.  Fed. R. Civ. P. 23(b)(3).  Second, the class must demonstrate that class treatment is superior to other available methods of adjudication.  *See id.*  In the context of a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial."  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted).  Instead, the court must determine the legal or factual questions in each class member's case "are sufficiently similar to yield a cohesive class."  *Id.*  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1.     Common Questions Predominate**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  To meet this requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof."  *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006).

As this Court recognized, "questions of law or fact common to Class Members

14

predominate over any questions affecting only individual members." Order at 5. The same common questions relevant to the Rule 23(a)(2) analysis (*i.e.*, whether Defendants owed a duty to their customers and whether that duty was breached) predominate. *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *10 (E.D.N.Y. Feb. 11, 2021) (predominance met when "claims of all potential class members involve identical legal and factual questions[.]").

### 2.    A Class Action Is A Superior Mechanism For Adjudication

For certification under Rule 23(b)(3), the court must determine that class treatment is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). Class treatment is appropriate where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue [and] there is reason to believe that class members may lack familiarity with the legal system, discouraging them from pursuing individual claims." *Jankowski v. Castaldi*, No. 01CV0164(SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (internal quotation marks omitted).

The Court recognized this element was satisfied in its Order. *See* Order at 5 ("[A] class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy."). Given that each Class Member's claim, individually, is of a relatively low value, individual Class Members will likely have little incentive to pursue their claims on an individual basis. Therefore, a class action is a superior mechanism for adjudication.

## V.    THE NOTICE PLAN SATISFIES DUE PROCESS

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted).

At preliminary approval, the Court approved the proposed Notice, finding it met the requirements of Rule 23 and due process. Order at 8. The Notice has now been fully carried out by Analytics. Specifically, Analytics has executed the Notice Plan discussed at length in Section III.G. The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class. FED. JUDICIAL CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010). The notice plan here meets these standards, as it has an estimated reach of at least 70%. Simmons Decl., ¶¶ 15.

Given the broad reach of the Notice, and the comprehensive information provided to the Settlement Class, the requirements of due process and Rule 23 are easily met. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) ("It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'") (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).

## VI.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Court should grant final approval of the Settlement for the reasons it preliminarily approved the Settlement, in addition to the subsequent, successful notice process and the positive reaction of the Settlement Class to date.  As previously discussed, the Settlement is the result of extensive arm's-length negotiations among the Parties and their counsel and was informed by the exchange of significant information through the settlement process and the assistance of an experienced mediator.  *See* Joint Decl. ¶¶ 13, 15.  The Settlement provides considerable monetary benefits to Class Members as well as meaningful changes to Defendants' data security measures which will provide Settlement Class Members with significant protection from attempted identity theft.

The Settlement compares favorably to previous data breach settlements in light of, *inter alia*, the monetary compensation and injunctive relief obtained when weighed against the risks associated with continued litigation.  Prior to reaching a resolution, Class Counsel litigated this case by utilizing the advice of a leading data security expert as well as experienced class action attorneys and, in doing so, gathered ample information to assess the strengths and weaknesses of the Parties' positions.  Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).  *See also* Joint Decl. ¶¶ 19, 22-24.

### 1.   Standard for Final Approval of Class Action Settlement

Under Rule 23(e), a court may grant final approval of a proposed settlement "'only after a hearing and only on finding that it is *fair, reasonable, and adequate* after considering' the Rule 23(e)(2) factors,"[10] which were previously discussed in Plaintiffs' PA Motion.  *In re Payment Card*

---

[10] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may

*Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card III*), No. 05-MD-1720 (MKB)(JO), 2019 WL 6875472, at *13 (E.D.N.Y. Dec. 16, 2019) (emphasis in original). "Paragraphs (A) and (B) [of Rule 23(e)(2)] constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.' […] Paragraphs (C) and (D) constitute the "substantive" analysis factors, and examine "[t]he relief that the settlement is expected to provide to class members." *See id.* The Court should also consider the *Grinnell* factors[11] previously analyzed in the PA Motion. *See id.* at *14.

As the Court considered the Rule 23(e)(2) and *Grinnell* factors and weighed them in favor of granting preliminary approval, Plaintiffs will refer to the Order and Plaintiffs' PA Motion generally and touch on these factors again as necessary to the extent the circumstances in this case warrant discussion. *See id.* at *15 (explaining because "Court engaged in a lengthy and robust analysis of the class settlement and class certification factors at the preliminary approval stage," a "detailed analysis already exists for many [Rule 23 and *Grinnell*] factors and to avoid duplicity, the Court at times refers to its reasoning as set forth in the Preliminary Approval Order[.]").

> ### 2. The *Grinnell* and Rule 23(e) Factors for Settlement Approval Are Satisfied

Given that no circumstances relating to the *Grinnell* and Rule 23(e) factors have substantively changed since the Court granted preliminary approval, granting final approval is

---

approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

[11] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]" *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

warranted.  Furthermore, no class member has objected to final approval on these (or any) grounds.  Class Counsel will first demonstrate that the procedural and substantive Rule 23(e) factors have been met, and then will turn to the additional *Grinnell* factors which are not otherwise encompassed by the Rule 23(e) factors.

### a. Procedural Fairness - Rule 23(e)(2)(A-B)

"Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the procedural analysis of the fairness inquiry." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (internal quotations omitted).  As recognized by courts in this Circuit, settlements "enjoy a presumption of fairness" when, as here, it "is the product of arms-length negotiations conducted by experienced counsel, knowledgeable in complex class litigation." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  *See also, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card II)*, 330 F.R.D. 11, 34-35 (E.D.N.Y. 2019).

This Court has previously found that this Settlement passed the fairness inquiry.  *See* Order at 6; *see also* PA Motion at 12-13.  These circumstances, such as Class Counsel's investigations into the facts and laws at issue in this case, and the arms'-length negotiations conducted by experienced counsel and a well-renowned mediator, have not changed.  *See* Joint Decl., ¶¶ 10-15, 20; *Baudin v. Res. Mktg. Corp.*, LLC, No. 1:19-cv-386 (MAD/CFH), 2020 WL 4732083, at *6 (N.D.N.Y. Aug. 13, 2020) (granting final approval where "settlement was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  Plaintiffs' counsel conducted a thorough investigation, engaged in substantial informal discovery, and participated in extensive settlement negotiations with Defendant.").  Thus, the procedural fairness inquiry warrants granting final approval.

**b. Substantive Fairness - Rule 23(e)(2)(C-D) and Remaining *Grinnell* Factors**

The substantive fairness inquiry of Rule 23 considers the following: (i): the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Additionally, Fed. R. Civ. P. 23(e)(2)(D) requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other."

The Rule 23 factors subsume some of those required under *Grinnell*.[12]  The remaining *Grinnell* factors are independent from the Rule 23 inquiry.[13]  These factors, which support granting final approval of the Settlement, are addressed in turn.

**i.    Rule 23(e)(2)(C)(i) / Grinnell Factors Nos. 1, 4, 5 and 6 - The Costs, Risks, and Delay of Trial and Appeal**

As discussed above, Rule 23(e)(2)(C)'s first factor, the "costs, risks, and delay of trial and appeal, subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial."  *Rosenfeld*, 2021 WL 508339, at *5-6 (internal quotation marks omitted).  Class actions, like the instant action dealing with highly technical data security issues, have a "reputation as being most complex."  *Id.* at *5 (internal quotation marks omitted); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at

---

[12] Specifically, Rule 23(e)(2)(C)(i) subsumes the following *Grinnell* factors: (1) the complexity, expense and likely duration of the litigation; (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through the trial.  *See Rosenfeld*, 2021 WL 508339, at *5-6 (citing *In re Payment Card II*, 330 F.R.D. at 36).

[13] These include (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").

The considerations surrounding these factors have not changed from the time the Court granted preliminary approval. *See* PA Motion at 14-16 (detailing risks of litigation and the complexity of the factual and legal issues). Thus, this factor remains in favor of granting approval. *See In re Payment Card*, 2019 WL 6875472, at *19 (holding "that these factors weigh in favor of final approval" when the court weighed them in favor of granting preliminary approval, "and because no class member has objected to final approval on these bases[.]").

### ii.   Rule 23(e)(2)(C)(ii) - Effectiveness of Proposed Method of Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should "consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." *Rosenfeld*, 2021 WL 508339, at *6 (internal quotation marks omitted). "[A] plan of allocation need not be perfect," *EVCI*, 2007 WL 2230177, at *11, and instead "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The Court preliminarily approved the two-tier plan of allocation which compensates Settlement Class Members equally based on time spent and documentation of losses. *See* Order at 11 (approving of the "Distribution Plan" described in the Settlement Agreement). The Distribution Plan has not changed. Thus, this factor weighs in favor of granting final approval.

### iii.   Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees

The next factor under Rule 23 is the "terms of any proposed award of attorneys' fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). For the reasons set forth in Plaintiffs' concurrently filed petition for attorneys' fees, Plaintiffs respectfully request that the Court grant the proposed attorneys' fee award. *See In re Payment Card*, 2019 WL 6875472, at *22

(relying on fee motion, and the approval of the preliminary approval order, to weigh this factor in favor of final approval). Regardless, the Court should grant final approval as the terms of the Settlement explicitly call for the agreement to be implemented regardless of the Court's approval of Class Counsel's fee request. *See* Settlement Agreement, ¶ 8.3. For this reason, specific to this Settlement, this factor does not bear on what the Settlement Class is receiving. Thus, this factor does not pose a barrier to granting final approval.

**iv.     Rule 23(e)(2)(C)(iv) - There Are No Agreements Required To Be Identified Under Rule 23**

Next, the Court should consider whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). There are no such agreements, so this factor supports final approval. *See* Joint Decl. ¶ 28.

**v.     Rule 23(e)(2)(D) - Class Members Are Treated Equitably**

The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As detailed *supra*, Sections II and III, the Settlement Agreement applies to all Settlement Class Members equally as they each receive the same payment based on the time they spent in regard to the Security Incident and whether they have documented proof of out-of-pocket expenses. *See Rosenfeld*, 2021 WL 508339, at *6 ("This allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries."); *Christine Asia Co. v. Yun Ma*, No. 1:15-MD-2631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro rata share" of the settlement fund).

Furthermore, given that the Settlement "provides for uniform injunctive relief" through improvements to Defendants' data security measures, "the proposal treats class members equitably

22

relative to each other." *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086, at *2 (N.D. Cal. Nov. 15, 2020) (approving settlement where injunctive relief comprised of improvements to data security measures following a breach of Facebook users' personal information); *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, No. 18-CV-06012-JSW, 2020 WL 10505229, at *4 (N.D. Cal. May 22, 2020) (granting final approval and holding that under Fed. R. Civ. P. 23(e)(2)(D) class members are treated equitably when the "Settlement Class will receive exactly the same injunctive relief."). For these reasons, the Settlement Agreement treats Settlement Class Members equitably relative to each other.

> ### vi. *Grinnell* Factor No. 2 - Settlement Class Members' Reaction Has Been Positive

Next, the Court should consider the reaction of the Settlement Class to the settlement. To date, there have been no objections or opt-outs to the Settlement, strongly weighing this factor in favor of final approval. *See* Simmons Decl. ¶¶ 16-17; *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *8 (N.D.N.Y. Feb. 25, 2021) ("To date, six Class Members have opted out of the settlement and there have been no objections […] As such, this factor favors final approval."); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness); *Baudin*, 2020 WL 4732083, at *7 ("The lack of class member objections 'may itself be taken as evidencing the fairness of a settlement.'") (citation omitted); *Bryant v. Potbelly Sandwich Works, LLC*, No. 1:17-CV-07638 (CM) (HBP), 2020 WL 563804, at *3 (S.D.N.Y. Feb. 4, 2020) (holding that when "[t]he settlement was [] approved by 100% of the eligible settlement participants," the "positive response to the settlement strongly favors judicial approval.").

The claims process is ongoing, with the deadline for opt-outs and objections is November 19, 2021, while the last day for Settlement Class Members to file claims is January 31, 2022. *See*

Order at 14.  Class Counsel anticipates that the reaction of the Settlement Class will remain overwhelmingly positive.

> ### vii.    *Grinnell* Factor No. 3 - The Stage of the Proceedings and the Amount of Discovery Completed Warrants Final Approval

The next factor is whether the stage of the proceedings and the amount of discovery completed favors the proposed settlement.  Notably, "the parties need not have engaged in extensive discovery," but rather enough to "to afford the Court the opportunity to 'intelligently make ... an appraisal of the Settlement[.]'"  *In re Grana Y Montero S.A.A. Sec. Litig.*, No. 17-CV-01105 (LDH) (ST), 2021 WL 4173684, at *13 (E.D.N.Y. Aug. 13, 2021) (internal quotations and citations omitted) (granting final approval after the defendants "filed multiple motions to dismiss" despite that "[t]he parties ha[d] not engaged in formal discovery[.]").  The Court previously granted preliminary approval based on the stage of the proceedings and the substantial discovery obtained from Defendants and discovery provided by Plaintiffs.  *See* Joint Decl. ¶ 20.  Thus, this factor also weighs in favor of final approval.

> ### viii.    *Grinnell* Factor No. 7 - Whether Defendants Can Withstand A Substantially Greater Judgment

As previously discussed, this factor strongly supports the reasonableness of the Settlement given the detrimental effects of COVID-19 on retail business like Defendants, and considering that one of the Defendants, Lord & Taylor, LLC, filed a voluntary Chapter 11 petition for relief in the action captioned *In re: Le Tote, Inc., et al.*, Case No. 20-33332 (KLP).  Regardless, "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair."  *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006).  Thus, this factor weighs in favor of granting final approval.

ix.     ***Grinnell*** **Factor Nos. 8-9: Range of Reasonableness in Settlement Fund**

The final *Grinnell* factors require the Court to consider both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).

Plaintiffs previously provided the Court with a number of other data breach class action settlements, demonstrating that the benefits to Settlement Class Members are similar to or exceed those approved by other courts. *See* PA Motion at 20-21. In addition, the changes to Defendants' data security measures, which was reached through the recommendations of Plaintiffs' data security expert, provide tremendous benefits to Settlement Class Members, even those who did not submit a claim form. *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) (holding that settlement which required defendant to "implement cybersecurity controls and reforms recommended by Plaintiffs' cybersecurity experts […] benefits millions of Settlement Class Members, including those who did not submit a claim form [and] weighs in favor of final approval."). For these reasons, the non-monetary and monetary benefits provided by the Settlement exceed the range of reasonableness for similar class actions.

**VII.   CONCLUSION**

For the reasons above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval and enter the Final Approval Order in the form submitted herewith.

DATED:  October 29, 2021

/s/ Timothy J. Peter
Timothy J. Peter (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
1617 JFK Boulevard, Ste. 1550
Philadelphia, PA  19103
Tel: (215) 277-5770

Fax: (215) 277-5771
tpeter@faruqilaw.com


Janine L. Pollack
Michael Liskow
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas, 9th
Floor
New York, NY 10036-5803
Tel: (212) 899-1761
Fax: (332) 206-2073
jpollack@calcaterrapollack.com
mliskow@calcaterrapollack.com

**Interim Co-Lead Counsel for
Plaintiffs and the Class**

**FARUQI & FARUQI, LLP**
Nina Varindani (NV-1090)
685 Third Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: nvarindani@faruqilaw.com

Charles J. Hecht
**CHARLES HECHT P.C.**
45 East 66th Street-Unit 5E
New York, New York 10065
Tel: (917) 533-4442
cjhecht1@aol.com

Anthony Parkhill
**BARNOW AND ASSOCIATES,
P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
a.parkhill@barnowlaw.com

26

Melissa R. Emert
**KANTROWITZ,  GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
Tel: (866) 896-0935
memert@kgglaw.com


Charles E. Schaffer
**LEVIN SEDRAN & BERMAN,
LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com


Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER,
LPA**
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com


Gary Mason
**MASON LIETZ & KLINGER,
LLP**
5101 Wisconsin Avenue NW
Suite 305
Washington, DC 20016
Tel: (202) 640-1168
Fax: (202) 429-2294
gmason@masonllp.com


Laurence D. King
**KAPLAN FOX & KILSHEIMER
LLP**
850 Third Avenue
New York, New York 10022
Tel: (212) 687-1980

Fax: (212) 687 7714
lking@kaplanfox.com


John A. Yanchunis
Ryan Mcgee
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505
Fax:  (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com


Jean Sutton Martin
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Tel: (813) 559-4908
Fax: (813) 222-4795
jeanmartin@forthepeople.com


Mark Rifkin
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
rifkin@whafh.com


Lynda J. Grant
**THE GRANT LAW FIRM,**
**PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com


Ralph N. Sianni
**ANDERSON SLEATER SIANNI,**
**LLC**
2 Mill Road
Suite 202

Wilmington, DE 19806
Tel: (302) 510-8528
Fax: (302) 595-9321
rsianni@andersensleater.com

Kevin H. Sharp
**SANFORD HEISLER SHARP,
LLP**
611 Commerce Street
Suite 3100
Nashville, TN 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com

Aaron L. Brody
**STULL, STULL & BRODY**
6 East 45th Street
Fifth Floor
New York, New York 10017
abrody@ssbny.com

Jason P. Sultzer
**THE SULTZER LAW GROUP,
P.C.**
85 Civic Center Plaza,
Suite 200
Poughkeepsie, NY 12601
Tel: (845) 244-5595
Fax: (888) 749-7747

**Counsel for Plaintiffs and
the Class**