**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HUDSON'S BAY COMPANY DATA SECURITY INCIDENT CONSUMER LITIGATION | Case No. 1:18-cv-08472 (PKC) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS
REASONABLE ................................................................................................... 3

    A.    The Percentage Method, with a Lodestar Cross-Check, is the Typical Method
for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit ..... 6

    B.    The *Goldberger* Factors Support the Proposed Attorneys' Fees Award ............... 7

        1.    Plaintiffs' Counsel's Time and Labor ........................................................ 7

        2.    The Magnitude and Complexity of the Litigation .................................... 12

        3.    The Risk of the Litigation ....................................................................... 14

        4.    The Quality of Representation ................................................................. 15

        5.    The Requested Fee in Relation to the Settlement ..................................... 16

        6.    Public Policy Considerations Favor the Requested Fee Award ................ 17

        7.    The Absence of Objections to the Fee Request Further Support It Is
Reasonable ............................................................................................. 18

    C.    The Lodestar Cross Check Further Supports the Requested Fee Award ............. 19

        1.    Class Counsel's Negative Lodestar Multiplier is Well Within the
Range Routinely Approved by Courts ...................................................... 20

        2.    The Time Expended by Class Counsel is Reasonable .............................. 21

        3.    Plaintiffs' Counsel's Rates are Reasonable Market Rates ........................ 21

III.    PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD
BE REIMBURSED ............................................................................................ 22

IV.    PLAINTIFFS' REQUESTED SERVICE AWARD IS REASONABLE AND
APPROPRIATE ................................................................................................. 23

V.    CONCLUSION ................................................................................................. 24

## **TABLE OF AUTHORITIES**

**Cases**                                                                          **Page(s)**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    MDL No. 1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) .................................22

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................12

*Babcock v. C. Tech Collections, Inc.*,
    No. 1:14-CV-3124 (MDG), 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) ...........................13

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .........................................................16, 18, 20, 21

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
    No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) .........................4

*Bitzko v. Weltman, Weinberg & Reis Co., LPA*,
    No. 1:17-cv-00458, 2021 WL 3514663 (N.D.N.Y. Aug. 10, 2021) .........................4

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ....................................................................3

*Bryant v. Potbelly Sandwich Works, LLC*,
    No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) .................19, 20

*Castagna v. Madison Square Garden, L.P.*,
    No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) .......................13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ...........................................................6

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...........................................................14

*In re Dental Supplies Antitrust Litig.*,
    No. 1:16-cv-00696-BMC-GRB, ECF No. 350 (E.D.N.Y. June 25, 2019) .............................17

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ....................................................................18

*Ebbert v. Nassau Cty.*,
    No. CV 05-5445(AKT), 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ...............................12

*Esposito v. Deatrick & Spies, P.S.C.*,
    No. 7:13-CV-1416, 2015 WL 390392 (N.D.N.Y. Jan. 28, 2015) ...........................24

*Fleisher v. Phx. Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................5, 14, 15, 17

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
104 F. Supp. 3d 290 (E.D.N.Y. 2015) .....................................................................................6

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).........................................................................................18

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
No. 09-CV-486 ETB, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) ......................................20

*Gay v. Tri-Wire Eng'g Solutions, Inc.*,
No. 12-cv-2231 (KAM)(JO), 2014 WL 28640 (E.D.N.Y. Jan. 2, 2014)................................23

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)..............................................................................................................12

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)......................................................................................2, 3, 14, 19

*Grice v. Pepsi Bevs. Co.*,
363 F. Supp. 3d 401 (S.D.N.Y. 2019)....................................................................................24

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...............6, 18, 19, 20

*Guippone v. BH S&B Holdings LLC*,
No. 09 Civ. 01029(CM), 2021 WL 5811888 (S.D.N.Y. Sept. 23, 2016) ...............................24

*Henry v. Little Mint, Inc.*,
No. 12 Civ. 3996(CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014)....................................6

*Hicks v. Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................16

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ................................................................................................17

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................................................22

*Jermyn v. Best Buy Stores, L.P.*,
No. 08 Civ. 214 (CM), 2012 WL 2505644 (S.D.N.Y. June 27, 2012)............................15, 18

*In re: Le Tote, Inc., et al.*,
Case No. 20-33332 (KLP), ECF No. 1015 (Bankr. E.D. Va. March 9, 2021) .......................10

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007)...........................................................................................4

*Mayhew, et al. v. KAS Direct, LLC, et al.*,
    No. 7:16-cv-06981-VB, ECF No. 149 (S.D.N.Y. Nov. 30, 2018)...........................17

*McDaniel v. Cty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)...........................................................................................6

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................................14, 15

*Meyer v. United Microelectronics Corp.*,
    No. 19-cv-2304-VM, 2021 U.S. Dist. LEXIS 84216 (S.D.N.Y. Apr. 30, 2021)....................24

*Park v. FDM Grp., Inc.*,
    No. 16-CV-1520 (LTS)(SN), 2021 WL 227339 (S.D.N.Y. Jan. 22, 2021)............................4

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)..............................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................5

*Puglisi v. TD Bank, N.A.*,
    No. 13 Civ. 637(GRB), 2015 WL 4608655 (E.D.N.Y. July 30, 2015) ................................20

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) ............................................................................7, 17

*Rapoport-Hecht v. Seventh Generation, Inc.*,
    No. 14-CV-9087 (KMK), 2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ..............................17

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997)................................................................................19

*Rosenfeld v. Lenich*,
    No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ........................14

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)................3, 7, 19

*Silberblatt v. Morgan Stanley*,
    524 F. Supp. 2d 425 (S.D.N.Y. 2007)..........................................................................23

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
    No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019).....................................14

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ..........................................................................20

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999).......................................................................17

*Times v. Target Corp.*,
    No. 18 Civ. 02993, 2019 WL 5616867 (S.D.N.Y. Oct. 29, 2019) ..........................23

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013) ...........................................................................7, 17

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
    No. 12 Civ. 9412 (PAE), 2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ...............22

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ....................................................................18

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
    No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018).............................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................6, 14

*Zink v. First Niagara Bank, N.A.*,
    No. 13-CV-01076-JJM, 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016)...................4

Plaintiffs Debbie Carthan, Bernadette Beekman, Julia A. Harris, Cassondra Joseph, Margo Kyler Knight, Jane Lefkowitz, Leslie Levitt-Raschella, Kelly Whitaker (formerly known as Kelly McGurn), Dennis Meduri, Giorgina Meduri, Greta Moss, Alexandria Rudolph, Jeanne Sacklow, Erika Targum, and Mark Wade (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

## I.      INTRODUCTION

The proposed Settlement Agreement[1] between Plaintiffs and Hudson's Bay Company ULC ("HBC") (formerly known as Hudson's Bay Company), Saks Incorporated, Saks Fifth Avenue LLC, Saks & Company LLC, and Lord & Taylor LLC (collectively, "Defendants") provides the outstanding result of: (1) providing substantial monetary benefits to the Settlement Class; and (2) requiring Defendants to make costly and wide ranging changes to their data security practices that will benefit the Settlement Class and the public.  The Settlement is a fair, adequate, and reasonable resolution of this Litigation, as detailed in the Settlement Motion, and Plaintiffs urge its final approval by the Court.[2]

For the efforts of Plaintiffs' Counsel and the Plaintiffs as putative Class Representatives, the Settlement Agreement permits Plaintiffs' Counsel to seek an award of reasonable attorneys' fees and expenses up to $1,400,000, as well as seek a Service Award payment to each of the Plaintiffs in the amount of one thousand dollars ($1,000) per person, all of which is to be paid separately by Defendant HBC and not out of the monetary relief afforded to the Settlement Class

---

[1] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement.  *See* ECF No. 177-1.  References to "¶ _" are to sections in the Settlement Agreement.

[2] For a detailed account of the factual and procedural background of this case, and the terms of the Settlement Agreement, Class Counsel refers the Court to the concurrently-filed Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Motion for Final Approval").

(described in the Motion for Final Approval).  *See* ¶¶ 8.1, 8.2, 8.4.  In light of the extensive work performed by Plaintiffs' Counsel and the successful result obtained, Class Counsel requests an award of $1,346,799.40 for attorneys' fees as well as $53,200.60 for Plaintiffs' Counsel's reasonable out-of-pocket expenses incurred in successfully prosecuting this action, as detailed herein and to be paid by Defendants.  Plaintiffs also seek modest Service Awards of $1,000 each (totaling $15,000) for their time and effort expended in assisting the prosecution of the Litigation, as well as for bringing their claim and acting as Plaintiffs on behalf of the Settlement Class Members.

As discussed herein, Class Counsel's attorneys' fee request satisfies each of the six criteria set out by *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), the standard in this Circuit for evaluating the reasonableness of such requests.  Plaintiffs have also more than earned their requested $1,000 Service Awards through their significant participation in this Litigation, including by reviewing the numerous complaints filed and other case materials, engaging in extensive communications with Plaintiffs' Counsel regarding the status of the case, keeping Plaintiffs' Counsel up to date on the status of the ongoing data breach-related fraudulent activities affecting their financial information, and reviewing and approving the settlement.  *See* Plaintiffs' Declarations.  Plaintiffs' Counsel's and Plaintiffs' efforts to date have been without compensation, and their entitlement to any recovery has been wholly contingent upon the result achieved, as discussed in the concurrently-filed Joint Declaration of Janine L. Pollack and Timothy J. Peter in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards (the "Final Joint Decl.") ¶ 23.

For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees

and reimbursements for expenses sought are fair and reasonable under the applicable legal standards, as are Plaintiffs' requested Service Awards, and should be granted in light of the contingency risk undertaken and the significant result achieved.

## II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

The Supreme Court, and the courts of this Circuit, have consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  *See also Goldberger*, 209 F.3d at 47 ("The rationale for the [common fund] doctrine is an equitable one:  it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost.").  Payment of fees from funds made available in a class action settlement is also supported by public policy, as "[c]ompensating plaintiffs' counsel for their risks is crucial, because such actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class*." In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *45 (S.D.N.Y. July 21, 2020) (internal quotation marks and brackets omitted).

Although the Settlement Agreement does not create a traditional "common fund," the total maximum amount to be paid by Defendants upon approval by the Court is $3,665,000.  This includes: (1) the $2,000,000 maximum amount to be paid for all Settlement Class Member claims, *see* ¶ 2.2.5; (2) the costs of notice and administration up to $250,000, *see* ¶ 2.4;[3] (3) the $1,400,000 requested for attorneys' fees and reasonable expenses; *see* ¶ 8.2; and (4) the $15,000 in total requested Service Awards for the Plaintiffs.  *See* ¶ 8.4.

---

[3] In the event the costs of Settlement Administration exceed $250,000, the excess costs will be borne by Plaintiffs' Counsel.  *See* ¶ 2.4.

In calculating the $3,665,000 settlement value, the entire $2,000,000 made available for Settlement Class Member claims should be considered.  *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding the "entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and therefore fees should be allocated based on "total funds made available, *whether claimed or not*") (emphasis added); *see also Park v. FDM Grp., Inc.*, No. 16-CV-1520 (LTS)(SN), 2021 WL 227339, at *1 (S.D.N.Y. Jan. 22, 2021) (same); *see also Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 WL 7473278, at *8-9 (W.D.N.Y. Dec. 29, 2016) (in "claims-made" settlement, fees based on percentage of total fees made available to class, even if not claimed); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906, at *2 (S.D.N.Y. July 9, 2015) ("This is a claims made settlement, meaning the amount paid to the class will depend on the number of claims submitted by class members.  Nevertheless, awarding attorneys' fees based on a percentage of the settlement amount rather than the amount paid is proper.") (citing *Masters*, 473 F.3d at 437).[4]  Moreover, despite the fact that Defendants have agreed to pay attorneys' fees and expenses awarded by this Court directly, and not as part of a common fund, this amount must be considered as part of the $3,665,000 settlement value as well, because these sums would otherwise normally be paid by class members from a common fund.  *See, e.g., Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 1:17-cv-00458 (BKS/DJS), 2021 WL 3514663, at *8 n.6 (N.D.N.Y. Aug. 10, 2021) ("Because attorneys' fees are part of the recovery in a typical common fund case, in cases where, as here, the award of attorneys' fees is separate from, and does not deplete, the common settlement fund, courts have found it appropriate to use the separate

---

[4] The claims process is still ongoing, and the deadline for filing claims is January 31, 2022, which is after the January 11, 2022 Final Approval Hearing.  Prior to that Hearing, Plaintiffs will provide the Court with an estimate of the verified, submitted claims as of that time.

attorneys' fees as part of the denominator in the calculation of the percentage.") (internal quotation marks omitted).  Accordingly, Class Counsel's request for $1,346,799.40 for attorneys' fees  (not counting the $53,200.60 in expenses) amounts to 36.7% of the total funds made available by Defendants.

Importantly, the $3,665,000 does not take into consideration the extensive and costly security improvements Defendants have agreed to make as part of the Settlement Agreement.  *See* Settlement Agreement ¶ 2.5.  These changes include: (1) hiring a qualified security assessor on an annual basis to assess compliance with PCI Data Security Standard requirements and achieving a Report on Compliance that evidences compliance with all such requirements; (2) conducting annual PCI penetration testing of the cardholder environment in compliance with PCI DSS Section 11.3, and remediating all critical vulnerabilities where feasibly possible; (3) operating a system that is designed to encrypt or tokenize Payment Card information at the pin pad level of the point of sale terminals in stores or otherwise renders payment card information unreadable at the pin pad level using a method like encryption or tokenization that is approved under PCI standards; and (4) maintaining written information security programs, policies and procedures.  *See* Final Joint Decl., ¶ 18, Ex. A.  These changes will provide a great benefit to the Class and the public, and Defendants' counsel has informed Class Counsel that the cost of these changes over the next three years will be in excess of $20 million.  *Id*.  The value of this injunctive relief should be taken into account in considering the total settlement value and in evaluating the fee request.  *See Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at \*17 (S.D.N.Y. Sept. 9, 2015) ("The substantial injunctive relief is a major factor in favor of the fee request . . . ."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 49 (E.D.N.Y. 2019) ("the value of . . . injunctive relief cannot be ignored in assessing the range of reasonableness of this

settlement.").

**A.    The Percentage Method, with a Lodestar Cross-Check, is the Typical Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit**

There are two methods for determining the appropriate award of attorneys' fees from a common fund, the "percentage of the fund" method and the "lodestar" method. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Under the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Under the lodestar method, the court assesses the number of hours reasonably billed and then multiplies them by an appropriate hourly rate. *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 309 (E.D.N.Y. 2015).

In this case, as is common practice in this Circuit, the percentage method with a lodestar cross-check is the appropriate tool for determining the propriety of the requested fee award. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) ("As a 'cross-check' to a percentage award, courts in this Circuit use the lodestar method.") (quoting *Goldberger*, 209 F.3d at 50); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) ("The trend among district courts in the Second Circuit is to award fees using the percentage method.") (internal quotation marks and brackets omitted). The percentage method also provides a strong incentive for attorneys to resolve litigation as expeditiously as possible. *See, e.g., Henry v. Little Mint, Inc.*, No. 12 Civ. 3996(CM), 2014 WL 2199427, at *12 (S.D.N.Y. May 23, 2014) (the percentage method "removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.") (citing *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 (2d Cir. 1999)). "The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up

their hours, and 'compels district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (quoting *Wal-Mart*, 396 F.3d at 121).  *See also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 4 (2d Cir. 2013) (courts evaluating fee requests "need not, and indeed should not, become green-eyeshade accountants.") (internal quotation marks omitted).

**B.    The *Goldberger* Factors Support the Proposed Attorneys' Fees Award**

Regardless of the method utilized by the Court, the reasonableness of fees requested from a common fund or total settlement value should be analyzed using the six factors set out by the Second Circuit in *Goldberger*:  "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Signet*, 2020 WL 4196468, at *18 (quoting *Goldberger*, 209 F.3d at 50).  Each of these factors supports the reasonableness of Plaintiffs' fee application.

**1.    Plaintiffs' Counsel's Time and Labor**

Plaintiffs' Counsel have devoted considerable time and effort to the investigation, prosecution, and settlement of this highly technical, complex class action, spending a total of 4,666.03 hours.  *See* Plaintiffs' Counsel's Declarations, filed concurrently as separate docket entries with Plaintiffs' Motion for Award of Attorneys' Fees. This work began in 2018 with the investigations by Class Counsel and Plaintiffs' Counsel of the Security Incident and the potential claims stemming from the Security Incident.  *See* Joint Declaration of Janine L. Pollack and Timothy J. Peter in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Prelim. Joint Decl.," ECF No. 177) ¶ 10; Plaintiffs' Counsel's Declarations.

Following these extensive investigations, on April 5, 2018, the action *Beekman v. Lord &*

*Taylor, LLC*, Case No. 1:18-cv-00521-MN, was filed in the United States District Court for the District of Delaware (the "*Beekman* Action") against Lord & Taylor LLC.  On October 5, 2018, Lord & Taylor LLC filed its Motion to Transfer the *Beekman* action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  The Motion to Transfer was granted on April 25, 2019, transferring the *Beekman* Action on May 9, 2019 as Case No. 1:19-cv-04199.

On April 11, 2018, the action styled *Sacklow, et al. v. Saks Incorporated*, Case No. 3:18-cv-00360, was filed in the United States District Court for the Middle District of Tennessee (the "*Sacklow* Action") against Saks Incorporated.  On November 6, 2018, Saks Incorporated filed its Motion to Transfer the *Sacklow* action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  The Motion to Transfer was granted on May 6, 2019, transferring the *Sacklow* Action on May 9, 2019 as Case No. 1:19-cv-04186.

On June 8, 2018, the action styled *Rudolph v. Saks & Company LLC*, Case No. 2:18-cv-05107-JFW-SS, was filed in the United States District Court for the Central District of California (the "*Rudolph* Action"), against Saks & Company LLC.  Other cases against Defendants were filed as well.  On September 12, 2018, Plaintiff Alexandria Rudolph and Saks & Company LLC jointly stipulated to transfer the *Rudolph* Action to the Southern District of New York.  The joint stipulation was granted on September 13, 2018, transferring the *Rudolph* Action on September 18, 2018 as Case No. 1:18-cv-08472.  Defendants moved to dismiss the *Rudolph* Action, and the Court issued an order on May 7, 2019 granting in part and denying in part that motion.

On August 2, 2019, the Court ordered the consolidation of the *Beekman*, *Sacklow*, and *Rudolph* Actions and appointed Janine L. Pollack and Timothy J. Peter Interim Co-Lead Counsel.  *See* ECF No. 117.  On August 9, 2019, Plaintiffs and others filed a Consolidated Amended Class Action Complaint in the Southern District of New York in the newly styled action *In re Hudson's*

*Bay Company Data Security Incident Consumer Litigation*, Case No. 1:18-cv-08472, against Defendants.  On September 20, 2019, the Second Consolidated Amended Class Action Complaint ("SAC") was filed, removing certain plaintiffs.[5]  *See* ECF No. 137.  The SAC alleges claims against Defendants for negligence, breach of implied contract, unjust enrichment/quasi-contract, breach of confidence, and violations of a number of state consumer fraud acts arising out of the Security Incident.

In November 2019, Class Counsel served Defendants with various discovery requests and notices of intent to serve third-party subpoenas.  *See* Prelim. Joint Decl. ¶ 11.  In response, Defendants produced a substantial number of documents, including third-party documents from payment card brands related to the Security Incident, which allowed Class Counsel to have a robust understanding of the factual and legal issues in the case.  *See id.*

On November 18, 2019, Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  *See* ECF No. 148.  The Parties fully briefed the motion to dismiss.  *See* ECF Nos. 151, 152.  In November 2019, prior to the Court issuing a decision on the motion to dismiss, the Parties agreed to attend a mediation session.  *See* Prelim. Joint Decl. ¶ 12.  Prior to the mediation, Defendants produced, and Class Counsel reviewed, a substantial number of documents relating to the Security Incident, including a Payment Card Industry Forensic Investigation Report ("PFI Report"), which outlines Defendants' terminals affected by the malware according to the investigator; correspondence between Defendants and various financial institutions; internal communications of Defendants related to the incident and data security measures; and relevant insurance policies.  *See id.*  In light of the highly technical nature of the documents related to the Security Incident, Plaintiffs retained the services of a top security expert to assist in obtaining a

---

[5] Plaintiff Beekman, who was removed from the SAC in error, is now included in the Settlement.

comprehensive understanding of the documents and Security Incident.  *See id.*  Plaintiffs also produced their own pertinent documents.  *See id.*

On March 11, 2020, the Parties participated in a full-day, in-person mediation session with the Honorable Diane Welsh (Ret.), a mediator with extensive experience mediating class settlements as well as 27 years of combined service as a JAMS neutral and a United States Magistrate Judge.  *See id.* ¶ 13.  The mediation ended with a tentative agreement in principle that was later memorialized in a formal Memorandum of Understanding dated May 26, 2020.  *See id.* As a result of those arm's-length negotiations, the Parties agreed to settle pursuant to the terms set forth in the Settlement Agreement, which was negotiated for many months.  *See id.*  On April 21, 2020, the Parties advised the Court of the agreement in principle and requested that the Court defer any ruling on the pending motion to dismiss.  *See* ECF No. 156.

On August 2, 2020, Le Tote, Inc., owners of Lord & Taylor, LLC, filed voluntary petitions for relief under chapter 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia.  *See* Prelim. Joint Decl. ¶ 14.  This resulted in a stay of proceedings of the Litigation as Lord & Taylor, LLC was a defendant therein.  *See id.*  By Order entered March 9, 2021, the Bankruptcy Court issued an Order lifting the stay for the purpose of permitting finalization of the instant Settlement.  *See In re: Le Tote, Inc., et al.*, Case No. 20-33332 (KLP), ECF No. 1015 (Bankr. E.D. Va. March 9, 2021).  Thereafter, the Parties advised the Court that the stay had been lifted and they were prepared to proceed with the Settlement.  *See* Prelim. Joint Decl. ¶ 14.  By Order dated March 26, 2021, the Court ordered that the stay was lifted and the Parties should file their pre-motion letter to proceed with their motion for preliminary approval of the Settlement.  *See* ECF No. 167.

On April 29, 2021, the Parties executed the Settlement Agreement.  *See* Prelim. Joint Decl.

¶ 15.   The Settlement Agreement was the result of over a year of vigorous arm's-length negotiations.  *See id.*

On May 27, 2021, Class Counsel petitioned the Court for preliminary approval of the Settlement Agreement.  *See* ECF No. 175.  On July 22, 2021, the Court preliminarily approved the Settlement Agreement and scheduled the deadlines for further motions (including the present motion) as well as the Final Approval Hearing.  *See* ECF No. 181.

In performing these and other tasks, Plaintiffs' Counsel has expended over 4,666.03 hours of attorney time.  *See* Plaintiffs' Counsel's Declarations.  This amount of hours is reasonable for complex class actions of this type and was compiled from contemporaneous time records maintained by each individual attorney or paraprofessional who performed work on the case.  *See id.*  The requested fee award is also meant to compensate for work still to be performed in the future.  Following submission of this motion, Plaintiffs' Counsel will still need to, *inter alia*: (1) prepare for and attend the Final Approval Hearing before the Court; (2) address any objections that may be raised to the Settlement; (3) communicate with Settlement Class members to answer any questions they may have or address any issues with the claims process; and (4) if the Settlement is approved, continue to work with the Settlement Administrator to ensure that the Settlement is fully implemented and all claims are timely and accurately paid.  *See* Final Joint Decl. ¶ 22; *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").  Accordingly, this factor strongly supports the requested fee award.

### 2.    The Magnitude and Complexity of the Litigation

The magnitude and complexity of the Litigation support the fee award sought by Plaintiffs. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no different, where successfully litigating the case to a judgment providing classwide relief would require that Plaintiffs, *inter alia*, succeed in defeating the pending motion to dismiss and any future motions for summary judgment, prevail in their motion for class certification, and ultimately obtain a class judgment following trial. This process, as with any class action litigation, will be fraught with risks at every stage. And at the end of the day, while Plaintiffs believe that they would be able to vindicate their claims at trial, Defendants take the opposite view, and a jury might agree with either Plaintiffs or Defendants. *See* Prelim. Joint Decl. ¶ 22.

An additional challenge is the calculation of classwide damages stemming from the Security Incident, which would be a complicated and costly process. *See, e.g., Ebbert v. Nassau Cty.*, No. CV 05-5445(AKT), 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) ("On liability and damages, this case likely would have ended up in a classic 'battle of the experts.' With that comes the inherent risk that a jury could be swayed by an expert for the Defendants who could minimize the amount of the Plaintiffs' losses."). While Plaintiffs are confident that they could establish the damages incurred by the Settlement Class to the Court's satisfaction, the Settlement eliminates this complexity and risk. *See* Prelim. Joint Decl., ¶¶ 22-23. And even if Plaintiffs were successful in obtaining certification of a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.").

The Settlement Agreement's substantial and immediate injunctive relief, whereby Defendants have already improved or committed to improve their data security practices at great cost, *see* Final Joint Decl. ¶ 18, also compares favorably to the relief that Plaintiffs would seek— but that would not be guaranteed—if and until the case were to proceed to trial and beyond. *See* SAC, ¶¶ 209, 218, 231, 286.

This case's complexity is not diminished by the fact that Plaintiffs' Counsel was able to reach a prompt and efficient settlement. In order to do so on terms that provide significant monetary and injunctive relief to Plaintiffs and the Settlement Class members, Plaintiffs' Counsel were required to conduct prolonged settlement negotiations for more than a year, including while the bankruptcy stay was pending. *See* Prelim. Joint Decl. ¶¶ 13-15. At a minimum, absent settlement, litigation (and potential appellate review) of these issues would likely continue for years before Plaintiffs or the Settlement Class would obtain any recovery, which might then be diminished by immense costs and expenses. By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs and the Settlement Class members avoid significant expense and delay, and instead ensure a fair recovery for the Settlement Class and the immediate implementation of crucial measures to protect sensitive data stored and collected by Defendants. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 WL 1155767, at *6 (E.D.N.Y. Mar. 27, 2017) ("the settlement provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members."); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending parties for negotiating early settlement). Accordingly, this factor supports the requested fee award.

### 3. The Risk of the Litigation

The significant risks of continuing to litigate this case through trial strongly support the requested fee award. This factor is often cited as the "first, and most important, *Goldberger* factor." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (internal quotation marks omitted). Plaintiffs' Counsel took the substantial risk of prosecuting this Litigation on a full contingency basis, without charging Plaintiffs or any Settlement Class members for fees or expenses. *See* Final Joint Decl. ¶ 23; *see also Goldberger*, 209 F.3d at 53 ("(o)f course contingency risk . . . must be considered in setting a reasonable fee."); *Fleisher*, 2015 WL 10847814, at *21 n.16 ("Contingency risk is the principal, though not exclusive factor, courts should consider in their determination of attorneys' fees.") (internal quotation marks omitted).[6]

According to Class Counsel's research, no data breach class action has reached trial, further demonstrating the unpredictable outcome if this Action were to be tried. Class action suits "have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021) (internal quotation marks omitted); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").

Settlements resolve any inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116. The Parties disagree about the merits of Plaintiffs' claims and there is substantial uncertainty about the ultimate outcome of this Litigation. Assuming that the Litigation was to proceed, the hurdles that Plaintiffs would face prior to certification and trial, as discussed *supra*, Section II.B.2, are significant.

---

[6] In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, the Second Circuit observed that "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."

In pursuing the investigation and Litigation against Defendants, Plaintiffs' Counsel were aware that resolution of the case in Plaintiffs' favor might take years, with the possibility that Plaintiffs' claims would never be vindicated.  *See* Final Joint Decl. ¶¶ 23-25.  Despite this, Plaintiffs' Counsel vigorously investigated, negotiated and litigated this case without any assurance that they would ever be compensated.  All of these risks were apparent when Plaintiffs' Counsel began this action, further justifying the requested fee award.

### 4.     The Quality of Representation

Courts "have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation."  *Fleisher*, 2015 WL 10847814, at *21.  Courts also account for the quality of opposing counsel.  *See, e.g., MetLife Demutualization*, 689 F. Supp. 2d at 362.

Here the high quality of Plaintiffs' Counsel's representation comes into focus when considering the results Plaintiffs' Counsel have attained.  The primary goals of the Litigation were to provide monetary compensation for the Settlement Class members for losses stemming from the Security Incident, and to require Defendants to take measures to better protect sensitive data in their possession.  Plaintiffs' Counsel's efforts in the Litigation achieved those significant goals. Plaintiffs' Counsel's substantial prior experience in prosecuting complex class action cases on behalf of consumers, including numerous data breach class actions, was an important factor in achieving those goals.  *See* ECF Nos. 177-3, 177-4; Plaintiffs' Counsel's Declarations.  And Class Counsel obtained these results while facing opposing counsel of significant skill and reputation. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214 (CM), 2012 WL 2505644, at *11 (S.D.N.Y. June 27, 2012) ("Class Counsel achieved a positive result in this case while facing well-resourced and experienced defense counsel.").  Accordingly, this factor weighs strongly in favor of the reasonableness of the requested fee award.

15

### 5.    The Requested Fee in Relation to the Settlement

"[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (internal quotation marks omitted).  Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement . . . ."); *see also Beckman*, 293 F.R.D. at 481 (a 33% fee is not excessive "because the requested amount is 'consistent with the norms of class litigation in this circuit'").

Plaintiffs' Counsel seek $1,346,799.40 in attorneys' fees.  This amount is set against the total value of the Settlement, which can be calculated based on two components.  The first component is the $3,665,000 made available by Defendants for: (1) payment of Settlement Class Member claims up to $2,000,000; (2) costs of notice and administration up to $250,000 to be paid separately by Defendants; (3) the $1,400,000 requested for attorneys' fees and reasonable expenses, to be paid separately by Defendants; and (4) the $15,000 in total requested Service Awards for the Plaintiffs ($1,000 to each Representative Plaintiff), to be paid separately by Defendants.  *See supra*, Section II.  The second component is the complex and costly security improvements Defendants have agreed to make or already made as part of the Settlement Agreement, for which Defendants will incur costs in excess of $20 million to implement over the next three years.  *See* Final Joint Decl. ¶ 18, Ex. A.

Class Counsel's request of $1,346,799.40, or 36.7% of the funds made available to the Settlement Class before taking into account any of the $20 million in injunctive relief value, is eminently reasonable as the amount of attorneys' fees awarded under the percentage methodology

in this Circuit is often one-third of the settlement value or higher.  *See, e.g., Torres*, 519 F. App'x at 5-6 (noting one-third of common fund is benchmark in Second Circuit and affirming higher percentage – 52.2% – of settlement value for attorneys' fees and expenses); *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-CV-9087 (KMK), ECF No. 60 at 1-2 & 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017) (awarding 33.3% of $4.5 million settlement fund); *Raniere*, 310 F.R.D. at 216, 220–22 (approving one-third of $4,650,000 settlement as fees); *Mayhew, et al. v. KAS Direct, LLC, et al.*, No. 7:16-cv-06981-VB, ECF Nos. 133 at 1-2 & 149 at 6 (S.D.N.Y. Nov. 30, 2018) (33.3% of $2,215,000 settlement fund); *In re Dental Supplies Antitrust Litig.*, No. 1:16-cv-00696-BMC-GRB, ECF Nos. 328 at 1, 350 at 28 (E.D.N.Y. June 25, 2019) (awarding one-third of $80,000,000 settlement fund); *see also, e.g., Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (finding 38% of fund as reasonable). An award here slightly in excess of one-third of the settlement value (*i.e.*, 36.7%) is further justified by the valuable injunctive relief secured by Plaintiffs and their counsel. *See Fleisher*, 2015 WL 10847814, at *15.  Accordingly, the relation of the fee request to the value of the Settlement supports approval of the requested fee award.  *See Torres*, 519 F. App'x at 5 (award of 52.2% of settlement value "does not constitute an abuse of discretion simply because it deviates materially from the percentage usually awarded in similar cases") (internal quotation marks omitted).

### 6.    Public Policy Considerations Favor the Requested Fee Award

Public policy considerations weigh in favor of granting Class Counsel's requested fees.  In awarding attorneys' fees, the Second Circuit "take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future

misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Beckman*, 293 F.R.D. at 477.  This class action on behalf of the Settlement Class has "resulted in a settlement that will improve the experiences of customers . . . ."  *Jermyn*, 2012 WL 2505644, at *12.  Moreover, through this action, Plaintiffs have operated as private attorneys general to police the fallout from the alleged Security Incident.  Only Plaintiffs' and Plaintiffs' Counsel's willingness to bring this Litigation has secured the Settlement Class with significant compensation for their injuries stemming from the Security Incident, and secured Defendants' commitment to immediately improve their data security practices at great cost.

An award of attorneys' fees helps to ensure that "plaintiffs' claims [will] . . . be heard." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.; see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003), *aff'd sub nom, Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (class action fee awards "must . . . serve as an inducement for lawyers to make similar efforts in the future").  This and the other *Goldberger* factors support approval of the attorneys' fees requested.

### 7.     The Absence of Objections to the Fee Request Further Support It Is Reasonable

An additional factor in favor of the reasonableness of a request for attorneys' fees is the extent to which the class has raised any objections to the request.  *See, e.g., Guevoura Fund Ltd.*, 2019 WL 6889901, at *22 (absence of objections to fee request at time of final approval hearing, despite deadline for objections having not yet occurred, "militates in favor of approval of the Fees as requested.").  The deadline for objections in the Litigation is November 19, 2021.  *See* ECF No. 180.  As of the date of the filing of this Motion, no objections to the fee request have been received. Supplemental Declaration of Richard W. Simmons, at ¶ 17.  Accordingly, this factor weighs in

favor of approval of the attorneys' fees requested.

### C. The Lodestar Cross Check Further Supports the Requested Fee Award

Following *Goldberger*, courts in the Second Circuit have tended to apply the percentage method and use the lodestar method as a "baseline" or as a "cross check[.]" *Id.* at 50. As part of the cross check, the lodestar is determined by "multiplying the hours spent by each attorney and paraprofessional . . . by their current hourly rates[.]" *Signet*, 2020 WL 4196468, at *16. In reviewing the lodestar, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id*. Once a court has made the initial computation, it may, in its discretion, increase the lodestar by applying a multiplier. *See id.* at 47; *see also, e.g.*, *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197-98 (S.D.N.Y. 1997) (awarding a 5.5 multiplier).

Here, Plaintiffs' Counsel have spent 4,666.03 hours investigating, litigating and settling this matter to date. *See* Plaintiffs' Counsel's Declarations. The hours worked by Plaintiffs' Counsel, when billed at Plaintiffs' Counsel's current hourly rates, results in a lodestar of $3,161,778.36. *See id*. Class Counsel's request for a negative multiplier of 0.44 times this lodestar is reasonable, particularly in light of the excellent and expeditious result achieved for the Settlement Class. *See, e.g., Guevoura Fund Ltd.*, 2019 WL 6889901, at *18 ("Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, the percentage fee would represent a *negative multiplier* of the lodestar.") (internal quotation marks omitted) (emphasis added) (collecting cases). *See also Bryant v. Potbelly Sandwich Works, LLC*, No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804, at *7 (S.D.N.Y. Feb. 4, 2020) ("Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of

overcompensation.'") (quoting *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009)).

### 1.    Class Counsel's Negative Lodestar Multiplier is Well Within the Range Routinely Approved by Courts

Class Counsel's request for $1,346,799.40, 36.7% of the funds made available by Defendants, is approximately 0.44 times Plaintiffs' Counsel's "lodestar," (*i.e.*, a "negative multiplier") and is thus far less than the range of multipliers that courts have permitted in this Circuit and elsewhere.  "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."  *Beckman*, 293 F.R.D. at 481-82 (granting 6.3 multiplier); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-CV-486 ETB, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012) ("Courts regularly award lodestar multipliers from two to six times lodestar.") (collecting cases); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637(GRB), ECF No. 89 at 24 & 2015 WL 4608655, at *1-2 (E.D.N.Y. July 30, 2015) (court granted multiplier of 4.86); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed").  Given that Plaintiffs' Counsel seek attorneys' fees of significantly less than their lodestar and effectively no multiplier (in fact, a negative multiplier), they respectfully submit that the request is fair and reasonable to compensate them for the excellent results achieved.  *See Guevoura Fund Ltd.*, 2019 WL 6889901, at *18 ("Courts have repeatedly recognized that the reasonableness of the fee request under the percentage method is reinforced where, as here, the percentage fee would represent a *negative multiplier* of the lodestar.") (internal quotation marks omitted) (emphasis added) (collecting cases); *Bryant*, 2020 WL 563804, at *7.

Furthermore, because Plaintiffs' Counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the negative

multiplier will be even greater because the award includes not only time spent prior to the award, but after, in enforcing the settlement. *See Beckman*, 293 F.R.D. at 482.  The negative multiplier that Class Counsel seeks thus will grow greater over time as Plaintiffs' Counsel completes their outstanding tasks, including, among other things: (1) preparing for and attending the Final Approval Hearing before the Court; (2) addressing any objections that may be raised to the Settlement; (3) communicating with Settlement Class members to answer any questions they may have or address any issues with the claims process; and (4) if the Settlement is approved, continuing to work with the Settlement Administrator to assure that the Settlement is fully implemented.  *See* Final Joint Decl. ¶ 22.  In light of this fact, Class Counsel's request is "even more reasonable than it appears at first glance."  *Beckman*, 293 F.R.D. at 482.

### 2.    The Time Expended by Class Counsel is Reasonable

As detailed *supra*, Section II.B.1, the number of hours expended in this case by Plaintiffs' Counsel is reasonable when considering the complexity of the Litigation and the result obtained. Plaintiffs' Counsel made every effort to prosecute the Litigation as efficiently as possible while doing everything necessary to achieve the best possible result for Plaintiffs and the Settlement Class.  *See* Final Joint Decl. ¶¶ 22-26; Plaintiffs' Counsel's Declarations.  And as discussed above, going forward Plaintiffs' Counsel will have to invest considerable additional time, and incur additional expenses by completing future necessary tasks.  *See id.*

### 3.    Plaintiffs' Counsel's Rates are Reasonable Market Rates

The hourly rates charged by Plaintiffs' Counsel in this Litigation are reasonable.  This is demonstrated by the declarations provided by Plaintiffs' Counsel detailing, *inter alia*, examples of hourly rates approved in other similar cases, descriptions of Plaintiffs' Counsel's experience, and evidence of median hourly rates for attorneys in this District and Plaintiffs' Counsel's home jurisdictions.  *See* Plaintiffs' Counsel's Declarations.  Plaintiffs' Counsel's attorneys' hourly rates,

set forth in their respective declarations, are within the range of what has been found reasonable for this jurisdiction.  *See, e.g., Vista Outdoor, Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding reasonable hourly partner rates between $1,165 and $1,260 and hourly associate rates between $569.02 and $753.42) (citing *MSC Mediterranean Shipping Co. Holdings S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017)); *see also U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("[P]artner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation.") (internal quotation marks omitted).

## III.  PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

Class Counsel requests reimbursement of $53,200.60 in out-of-pocket expenses incurred by Plaintiffs' Counsel, to be paid from the $1,400,000 that Plaintiffs are seeking and that will be paid entirely by Defendants.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2015 WL 5918273, at *7 (E.D.N.Y. Oct. 9, 2015) ("Lawyers are generally entitled to reimbursement for reasonable out-of-pocket expenses.").  Here, Plaintiffs' Counsel's expenses of $53,200.60 were integral to the prosecution of this case.  *See* Final Joint Decl. ¶ 22; Plaintiffs' Counsel's Declarations.  These expenses, which included, among other things, the costs of mediation and consultation with experts, were typical and reasonable and should be reimbursed to Plaintiffs' Counsel.

## IV.   PLAINTIFFS' REQUESTED SERVICE AWARD IS REASONABLE AND APPROPRIATE

Plaintiffs also request that the Court grant them modest Service Awards of $1,000 each (totaling $15,000) in recognition of the services rendered to the Settlement Class and to be paid entirely by Defendants.  Whether Plaintiffs should receive a service award is within the Court's discretion.  *See Gay v. Tri-Wire Eng'g Solutions, Inc.*, No. 12-cv-2231 (KAM)(JO), 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014) (internal citation omitted).  "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a named plaintiff, and any other burdens sustained by the plaintiffs."  *Times v. Target Corp.*, No. 18 Civ. 02993, 2019 WL 5616867, at *5 (S.D.N.Y. Oct. 29, 2019).  Service awards "may be appropriate in order to make the class representative whole.  The representative plaintiff may have lost wages, vacation time or commissions from sales because of time spent at depositions or other proceedings."  *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) (granting $2,760 service award to plaintiff).

Here, each Representative Plaintiff has submitted a declaration breaking down by category the number of hours spent in working with Plaintiffs' Counsel to represent the Settlement Class, above and beyond what they would have faced as absent class members.  The nature of a data breach is that it is an on-going fraud in that it requires continuous vigilance of financial information because of personal data that has been stolen and can be used by thieves at any time to commit identity theft.  In other words, the fraud does not end at the time of the actual breach.  If Plaintiffs had been deposed, it is a certainty that Defendants would have questioned them on their diligence in monitoring their financial information and reporting any issues to Plaintiffs' Counsel.  As such, they had continuing obligations to do so, which they fulfilled.  As support for the requested Service

Award of $1,000 each, Plaintiffs have itemized the time spent in connection with this Litigation and made attempts to quantify the monetary value of time lost, where possible.  Plaintiffs' actions have benefitted the Settlement Class to a significant degree (including by culminating in the Settlement).  Accordingly, Plaintiffs respectfully request that the Court approve a $1,000 Service Award for each Representative Plaintiff, which is reasonable in light of the total funds made available to the Settlement Class, and in comparison to other Service Awards granted in this District.  *See, e.g., Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (granting plaintiff $5,000 service award); *Meyer v. United Microelectronics Corp.*, No. 19-cv-2304-VM, 2021 U.S. Dist. LEXIS 84216, at *10 (S.D.N.Y. Apr. 30, 2021) (same); *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 01029(CM), 2021 WL 5811888, at *8 (S.D.N.Y. Sept. 23, 2016) ("Courts in this Circuit have approved service awards for much more than the $2,000 requested here . . . .") (collecting cases).

Importantly, to the extent granted by the Court, Defendants are paying for the cost of the Service Awards such that it will not reduce the amount of money made available to the Class.  *See, e.g., Esposito v. Deatrick & Spies, P.S.C.*, No. 7:13-CV-1416 (GLS/TWD), 2015 WL 390392, at *4 (N.D.N.Y. Jan. 28, 2015) (granting service award of $1,000 paid by defendant).

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant approval of $1,400,000 in fees and expenses ($1,346,799.40 for attorneys' fees as well as $53,200.60 for Plaintiffs' Counsel's reasonable out-of-pocket expenses), and a $1,000 Service Award to each of the Plaintiffs.

DATED:  October 29, 2021

*/s/ Timothy J. Peter*
Timothy J. Peter (admitted *pro hac*

*vice*)
**FARUQI & FARUQI, LLP**
1617 JFK Boulevard, Ste. 1550
Philadelphia, PA  19103
Tel: (215) 277-5770
Fax: (215) 277-5771
tpeter@faruqilaw.com


Janine L. Pollack
Michael Liskow
**CALCATERRA POLLACK
LLP**
1140 Avenue of the Americas, 9th
Floor
New York, NY 10036-5803
Tel: (212) 899-1761
Fax: (332) 206-2073
jpollack@calcaterrapollack.com
mliskow@calcaterrapollack.com

**Interim Co-Lead Counsel for
Plaintiffs and the Class**

**FARUQI & FARUQI, LLP**
Nina Varindani (NV-1090)
685 Third Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331
Email: nvarindani@faruqilaw.com

Charles J. Hecht
**Charles Hecht P.C.**
45 East 66th Street-Unit 5E
New York, New York 10065
Tel: (917) 533-4442
cjhecht1@aol.com

Anthony Parkhill
**BARNOW AND ASSOCIATES,
P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5704

a.parkhill@barnowlaw.com

Melissa R. Emert
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
Tel: (866) 896-0935
memert@kgglaw.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN,
LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER,
LPA**
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Tel: (513) 345-8297
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Gary Mason
**MASON LIETZ & KLINGER,
LLP**
5101 Wisconsin Avenue NW
Suite 305
Washington, DC 20016
Tel: (202) 640-1168
Fax: (202) 429-2294
gmason@masonllp.com

Laurence D. King
**KAPLAN FOX & KILSHEIMER
LLP**
850 Third Avenue

New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687 7714
lking@kaplanfox.com


John A. Yanchunis
Ryan Mcgee
**MORGAN & MORGAN
COMPLEX LITIGATION
GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505
Fax:  (813) 222-4736
jyanchunis@forthepeople.com
rmcgee@forthepeople.com


Jean Sutton Martin
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
2018 Eastwood Road Suite 225
Wilmington, NC 28403
Tel: (813) 559-4908
Fax: (813) 222-4795
jeanmartin@forthepeople.com


Mark Rifkin
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
rifkin@whafh.com


Lynda J. Grant
**THE GRANT LAW FIRM**,
**PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com


Ralph N. Sianni
**ANDERSON SLEATER SIANNI,**

27

**LLC**
2 Mill Road
Suite 202
Wilmington, DE 19806
Tel: (302) 510-8528
Fax: (302) 595-9321
rsianni@andersensleater.com

Kevin H. Sharp
**SANFORD HEISLER SHARP,
LLP**
611 Commerce Street
Suite 3100
Nashville, TN 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com

Aaron L. Brody
**STULL, STULL & BRODY**
6 East 45th Street
Fifth Floor
New York, New York 10017
abrody@ssbny.com

Jason P. Sultzer
**THE SULTZER LAW GROUP,
P.C.**
85 Civic Center Plaza,
Suite 200
Poughkeepsie, NY 12601
Tel: (845) 244-5595
Fax: (888) 749-7747

**Counsel for Plaintiffs and
the Class**